1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  BRADFORD N. BARNHARDT, #328705
   bbarnhardt@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt
5  Irvine, CA 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Chapter 7 Trustee,
   JERRY NAMBA
8

9              UNITED STATES BANKRUPTCY COURT

10        CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

11 | In re                          | Case No. 9:20-bk-11123-DS

12 | PETER JAMES COMPTON,           | Chapter 7

13 |              Debtor.           | CHAPTER 7 TRUSTEE'S MOTION TO
   |                                | APPROVE COMPROMISE AND
14 |                                | SUBORDINATION AGREEMENT WITH
   |                                | SIMPLOT; MEMORANDUM OF POINTS
15 |                                | AND AUTHORITIES; DECLARATION OF
   |                                | JERRY NAMBA IN SUPPORT
16

17                                   Date:       December 7, 2021
                                     Time:       11:30 a.m.
18                                   Courtroom:  201
                                     Location:   1415 State Street
19                                               Santa Barbara, Ca 93101

20 TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE,

21 THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

22        JERRY NAMBA ("Namba"), in his capacity as Chapter 7 Trustee ("Trustee") of the

23 Bankruptcy Estate ("Estate") of Peter James Compton ("Debtor"), has entered into a proposed

24 settlement and subordination agreement ("Agreement") with Simplot AB Retail, Inc. ("Simplot"),

25 (Trustee and Simplot are collectively referred to as the "Parties"). Trustee seeks court approval of

26 the Agreement as being in the best interest of the estate. Pursuant to the Agreement, Simplot is

27 subordinating a portion of its deed of trust recorded against Debtor's commercial real property for

28 the benefit of the Estate.

                                    1

# 1.    Summary of Argument

A bankruptcy court can approve settlements that are fair and equitable and in the best interests of the estate. In this case, Debtor owns the commercial real property located at 1124 Tama Lane, Santa Maria, CA 93455 ("Property"). The property is used by Debtor's corporation, Valley Farm Supply, Inc. which is in its own Chapter 11 bankruptcy case pending before this Court.

Trustee believes that the Property is worth in excess of $1.5 million. Simplot holds a third-in-priority deed of trust recorded against the Property securing its claim of approximately $4.6 million. Liens senior to Simplot total approximately $895,000. In consideration of Trustee's release of claims against Simplot, it has agreed to partially subordinate its secured claim and transfer the lien securing the subordinated portion of its claim to the Estate.

Specifically, Simplot agrees to subordinate its claim in an amount equal to all costs of sale including commissions plus the following amounts:

A.    If the Property sells for $1.4 million or less, the Simplot Claim will be further subordinated in an amount equal to 50% of the remaining net sales proceeds otherwise subject to its lien;

B.    If the Property sells between $1.4 to $1.7 million, the Simplot Claim will be further subordinated in an amount equal to 25% of the remaining net sales proceeds after payment of the amounts set forth above; and

C.    If the Property sells for more than $1.7 million, the Simplot Claim will be further subordinated in an amount equal to 15% of the remaining net sales proceeds after payment of the amounts set forth above.

Approval of the Agreement will provide a benefit to creditors from administration of the Property where none would otherwise exist. This Court must decide whether to approve the Agreement a true and correct copy of which is attached to the Declaration of Jerry Namba ("Namba Declaration") as **Exhibit 1**.

/ / /

/ / /

/ / /

## 2.      Statement of Facts

On September 14, 2020, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code commencing Case No. 9:20-bk-11123-DS ("Bankruptcy Case"). Dk. No. 1. On the same day, Sandra McBeth ("Trustee McBeth") was appointed as the Chapter 7 trustee of the Estate. On September 15, 2020, Trustee McBeth filed a notice of non-acceptance of appointment. Dk. No. 5. On September 18, 2020, Jerry Namba was appointed as Chapter 7 Trustee of the Estate. Dk. No. 12. Trustee Namba accepted his appointment and became the case trustee under 11 U.S.C. § 702(d). *Id.*

In his Schedule A/B, Debtor included a fee simple interest in commercial real property located at 1124 Tama Lane, Santa Maria, CA 93455 ("Property").[1] Dk. No. 23 at 4. Debtor scheduled the value of the Property as $1,490,000. *Id.*

Debtor's Schedule D reflects that the Property is encumbered by the following secured claims:

- First-priority deed of trust held by Community Bank of Santa Maria to secure a claim of $587,330 ("Community Bank Lien");
- Second-priority deed of trust held by Wells Fargo Bank to secure a small business administration loan/claim of $360,000 ("Wells Fargo Lien")[2]; and
- Third-priority deed of trust held by Simplot AB Retail ("Simplot Lien") to secure a claim of $3,707,491.35.

*See*, Dk. No. 23 at 13-16.

On July 27, 2021, Community Bank filed a secured proof of claim assigned No. 5-1 in the amount of $556,326. As such, the amount secured by the first-in-priority deed of trust is less than the amount scheduled by debtor. Trustee is in the process of obtaining a payoff demand from Wells Fargo Bank.

On March 19, 2021, Simplot filed Proof of Claim No. 2 asserting a secured claim of $4,637,099.30 ("Simplot Claim").

---

[1] The Debtor also scheduled a 100% interest in Valley Farm Supply, Inc., Docket #23 at 7, which currently has a chapter 11 case pending before this Court, *In re Valley Farm Supply, Inc.*, 9:20-bk-11072-SK ("VFS Case"). In its amended petition, VFS gave its principal place of business as 1124 Tama Lane, Santa Maria, CA 93455. VFS Case Docket #39. Although the Debtor's Schedule A/B references a claim for "Back rent owed by Valley Farm Supply, Inc. for $149,84.94 [sic]," his Schedule G does not list any unexpired leases. Docket #23 at 9, 23. Likewise, there is no lease between the Estate and VFS regarding the Property.

[2] As of 7/31/21, the amount owed is believed to be $306,000.

**3.    Details of Compromise/Subordination Agreement**

The following is a summary of the substantive terms of the Agreement.[3] Subject to Bankruptcy Court approval, the Parties agree as follows:

3.1    The Trustee shall employ a broker to sell the Property as soon as practicable, but no later than one year from the date of the Agreement ("Sale Deadline"). If escrow is opened and/or pending on the Sale Deadline, then the Trustee will have an additional sixty (60) days to close. Simplot consents to the Trustee's sale of the Property free and clear of its lien pursuant to 11 U.S.C. § 363(f)(2) with its lien against the Property to attach to the proceeds from the sale of the Property as set forth in the Agreement. Simplot's consent to the Trustee's sale of the Property free and clear of its lien and the partial subordination of the Simplot Claim as set forth below shall be withdrawn if the Property has not been sold by the Sale Deadline.

3.2.1    If the Property sells for $1.4 million or less, the Simplot Claim will be partially subordinated under 11 U.S.C. § 510(c)(1) in an amount equal to: (a) costs of sale including commissions, and (b) 50% of the remaining net sales proceeds after payment of all costs of sale and senior liens including real property taxes, the Community Bank Lien, and the Wells Fargo Lien.

3.2.2    If the Property sells between $1,400,000.01 to $1,700,000, the Simplot Claim will be further partially subordinated under 11 U.S.C. § 510(c)(1) in an amount equal to 25% of the remaining net sales proceeds after payment of the amounts set forth in ¶ 3.2.1.

3.2.3    If the Property sells for more than $1,700,000, the Simplot Claim will be further partially subordinated under 11 U.S.C. § 510(c)(1) in an amount equal to 15% of the remaining net sales proceeds after payment of the amounts set forth in ¶¶ 3.2.1 and 3.2.2.

---

[3] All interested parties are advised to consult the Agreement for all terms and conditions. The statements contained herein are a summary of the material terms and conditions only.

4879-1903-7696,v.4                    MOTION TO APPROVE COMPROMISE

3.3     Pursuant to 11 U.S.C. § 510(c)(2), the lien securing the subordinated portion(s) of the Simplot Claim against the Property shall be transferred to the Estate upon the close of escrow for the sale of the Property with the Estate receiving all associated lien rights formerly held by Simplot as to the subordinated portion of the claim. The balance of the non-subordinated portion of the Simplot Claim will be retained by Simplot as an allowed secured claim. The balance of the Simplot Claim not paid from the sale of the Property will be allowed as a general unsecured claim in the Debtor's case.

3.4     Payments from Escrow. The Parties shall provide a copy of the Agreement to any escrow company involved with any sale of the Property. The proceeds of sale subject to the Simplot Lien will be distributed by escrow to Simplot and the Estate in accordance with the terms of the Agreement.

3.5     Release of Estate Claim. In consideration of the partial subordination provisions of the Agreement, the Estate releases Simplot, its officers, directors, shareholders, representatives, employees, lawyers, including the law firm of McCormick Barstow LLP and its attorneys, shareholders, officers, directors, and employees, of any liability arising out of or related to the alleged Simplot Claim and Simplot Lien.

3.6     Limited Mutual Release. Except for the rights and obligations of the Parties arising out of this Agreement, the Parties release, acquit, and forever discharge each other as well as their respective past and present directors, officers, shareholders, subsidiaries, parents, affiliates, divisions, agents, servants employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law), and predecessors in interest from any and all past, present, and future claims of every kind, type and description, known or unknown, direct or consequential, foreseen or unforeseen, which have been, could have been, or may be asserted by and between the Parties with regard to the Simplot Claim and the validity and perfection of the Simplot Lien.

4879-1903-7696,v.4

MOTION TO APPROVE COMPROMISE

In summary, the Agreement provides that a portion of the Simplot third-in-priority deed of trust will be transferred to the Estate. In the absence of this Agreement, Trustee likely would need to abandon the Property since the recorded liens far exceed its value. If approved, Trustee will be able to sell the Property and realize the benefits of the transferred lien.

## 4.    Legal Argument

### A.    Approval of the Agreement is in the best interest of the Estate.

Under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP"), the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. Proc. 9019. A compromise should be approved if it is in the best interest of the estate and is "fair and equitable" for the creditors. *Wells Fargo Bank, N.A. v. Guy F. Atkinson Co. (In re Guy F. Atkinson Co.)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate."); *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997). The standards to be applied to the approval of a settlement include:

1) the probability of success in the litigation;
2) the difficulties, if any, to be encountered in the matter of collection;
3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189 (1986).

Under the Agreement, the Parties intend to compromise and fully resolve all issues, disputes, liabilities, and claims existing between them regarding the Simplot Claim. The Parties have agreed that the Trustee shall employ a broker to sell the Property as soon as practicable. *See*, Namba Dec., Ex. 1, ¶3.1. Simplot consents to the Trustee's sale of the Property free and clear of its lien pursuant to 11 U.S.C. §363(f)(2) with its lien against the Property to attach to the proceeds from the sale of the Property as set forth in the Agreement. *Id*. The Parties have further agreed to partial subordination of the Simplot Claim, as described above and in the Agreement. *Id*. at ¶3.2. The

MOTION TO APPROVE COMPROMISE

portion of the lien that had secured the subordinated portion of the claim is being transferred to the Estate. The Trustee believes the Agreement is fair, equitable and in the best interest of the Estate and should be approved. Namba Dec., ¶11.

### i.    Probability of success

The probability of success factor weighs in favor of approving the Agreement. According to Debtor's Schedule A/B, the Property value is $1,490,000, and per Schedule D and Simplot's proof of claim, the following liens encumber it:

| Secured Claim | Amount of Claim |
|---|---|
| Community Bank Lien | $ 587,330.00 |
| Wells Fargo Lien | $ 360,000.00 |
| Simplot Claim | $ 4,637,099.30 |
| | |
| TOTAL | $ 5,584,429.30 |

*See*, Dk. No. 23 at 4, 13-16; POC #2.

Based on these amounts, the Property is overencumbered. Moreover, Trustee believes that his chances of disallowing the Simplot Claim to the point that equity would exist in the Property are slim. As such, the compromise which provides the estate with 50%, 25%, and 15% of funds otherwise subject to Simplot's claim and lien is likely a better outcome than can be achieved with litigation. Because the Agreement will allow for a distribution to the unsecured creditors from the proceeds of the sale of the Property where no distribution would otherwise occur, the first factor supports approval of the Agreement. *See In re B.Y.O.B. Inc.*, 2012 Bankr.LEXIS 3537, at *10 (Bankr. D. Mont. Aug. 1, 2012) (finding that the first factor weighed heavily in favor of approval of a settlement agreement where the estate had no reasonable probability of success in litigation).

### ii.    Difficulties in collection

In terms of collection against Simplot, this factor is neutral. To the extent Trustee could be successful in disallowing or subordinating Simplot's claim through litigation, Trustee would either produce equity in the Property or obtain a transfer of Simplot's lien. Thus, to the extent that there is value in the Property, it would not be difficult to realize the benefit of the avoided or subordinated lien through a sale.

MOTION TO APPROVE COMPROMISE

### iii.    Complexity

Trustee also believes that any claims to disallow or subordinate Simplot's claim would be complex, difficult, and subject to significant litigation. As such, the Agreement which provides a sure benefit without the risks of litigation weighs in favor of approving the Agreement.

### iv.    Paramount interest of creditors/Expense, inconvenience or delay

Absent approval of the Agreement, unsecured creditors likely will receive no benefit from the Property which is otherwise over-encumbered. As such, the Agreement provides a sure benefit to unsecured creditors without the attendant costs and risks of litigation. Furthermore, Simplot's consent to the sale of the Property free and clear of its lien will reduce administrative expenses in selling the Property, leaving more proceeds for unsecured creditors. Accordingly, this factor strongly favors approving the Agreement.

## B.    The Subordination Provisions of the Agreement Provide Substantial Benefits to the Estate

Trustee does not believe that the subordination provision set forth in the Agreement constitutes a "carve-out." Instead, it's an agreement to partially subordinate a claim in exchange for releases. To the extent the Court, however, determines that the subordination provisions of the agreement constitute a carve-out, the requirements for approval of such a carve-out are met here.

In *In re KVN Corp., Inc.*, the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") held that courts should consider the following factors in deciding whether to approve a carve-out agreement between a Chapter 7 trustee and a secured lender: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;" (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *In re KVN Corp., Inc.*, 514 B.R. 1, 8 (9th Cir. BAP 2014). In sum, courts should scrutinize carve-out agreements to ensure that the agreement provides a benefit to unsecured creditors and is not merely an opportunity for the trustee to receive a commission for making a distribution to a secured creditor who could foreclose on the security interest itself. *Id.* at 7.

/ / /

8

In this case, Trustee has fulfilled his basic duties by analyzing the issues surrounding Simplot's lien and evaluating the prospects of disallowing it. Second, there is a significant benefit to the Estate if the compromise is approved in that the Estate receives sufficient funds to cover all costs of sale including commissions plus 50% of net sale proceeds otherwise subject to Simplot's lien at a sale price of $1.4 million or less, 25% of additional net sales proceeds attributable from a sale between $1.4 and $1.7 million, and 15% of any additional funds generated from a sale in excess of $1.7 million. Lastly, Trustee has fully disclosed all terms of the Agreement and seeks approval of the Agreement by this Motion. Trustee has met all requirements for approval of a carve-out.

## C.    The Agreement is Reasonable and Should be Approved

Trustee believes that the proposed settlement is fair and reasonable and in the best interest of the Estate for at least the following reasons:

1.    The settlement provides a benefit to unsecured creditors from the sale of the Property when none would otherwise likely exist;

2.    The compromise facilitates Trustee's sale of the Property given Simplot's consent to a sale free and clear of its lien pursuant to 11 U.S.C. § 363(f)(2);

3.    The settlement is reasonable based on Trustee's assessment that litigation likely would not produce a better result; and

4.    The Agreement avoids substantial administrative costs and the risks of litigation.

Trustee, therefore, has determined through the exercise of his business judgment, that the proposed Agreement is fair and equitable and in the best interest of the Estate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MOTION TO APPROVE COMPROMISE

1

## 5.    Conclusion

2    Because approval of the Agreement provides a sure benefit to the Estate when none would

3  otherwise likely not exist, Trustee respectfully requests that this Court enter an order:

4        1.        Granting the Motion;

5        2.        Approving the Agreement attached as **Exhibit 1** to the Namba Declaration;

6        3.        Authorizing the Trustee to execute the Agreement and implement its terms; and

7        4.        For such other relief as the Court deems just and proper.

8

9    Dated: November  16 , 2021                MARSHACK HAYS LLP

10

11                                          By:   */s/ Laila Masud*
                                                _____
12                                              D. EDWARD HAYS
                                                LAILA MASUD
13                                              BRADFORD N. BARNHARDT
                                                Attorneys for Chapter 7 Trustee,
14                                              JERRY NAMBA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4879-1903-7696,v.4                MOTION TO APPROVE COMPROMISE

# Declaration of Jerry Namba

I, JERRY NAMBA, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am the duly appointed Chapter 7 Trustee of the bankruptcy estate ("Estate") of Peter James Compton ("Debtor").

4.      The facts set forth below are true of my personal knowledge.

5.      On September 14, 2020, Debtor filed a voluntary chapter 7 petition commencing Case No. 9:20-bk-11123-DS ("Bankruptcy Case"). On the same day, Sandra McBeth ("McBeth") was appointed as the Chapter 7 trustee of the Estate. On September 15, 2020, McBeth filed a notice of non-acceptance of appointment. On September 18, 2020, I was appointed as Chapter 7 Trustee of the Estate.

6.      In his Schedule A/B, Debtor scheduled a fee simple interest in commercial real property at 1124 Tama Lane, Santa Maria, CA 93455 ("Property")[4] with a value of $1,490,000.

7.      Debtor's Schedule D reflects that the Property is encumbered by the following secured claims:

- •      First-priority deed of trust held by Community Bank of Santa Maria to secure a claim of $587,330 ("Community Bank Lien");
- •      Second-priority deed of trust held by Wells Fargo Bank to secure a small business administration loan/claim of $360,000[5] ("Wells Fargo Lien"); and
- •      Third-priority deed of trust held by Simplot AB Retail ("Simplot Lien") to secure a claim of $3,707,491.35.

*See*, Dk. No. 23 at 13-16.

---

[4] The Debtor also scheduled a 100% interest in Valley Farm Supply, Inc., Docket #23 at 7, which currently has a chapter 11 case pending before this Court, *In re Valley Farm Supply, Inc.*, 9:20-bk-11072-SK ("VFS Case"). In its amended petition, VFS gave its principal place of business as 1124 Tama Lane, Santa Maria, CA 93455. VFS Case Docket #39. Although the Debtor's Schedule A/B references a claim for "Back rent owed by Valley Farm Supply, Inc. for $149,84.94 [sic]," his Schedule G does not list any unexpired leases. Docket #23 at 9, 23. Likewise, there is no lease between the Estate and VFS regarding the Property.

[5] As of 7/31/21, the amount owed is believed to be $306,000.

4879-1903-7696,v.4                    MOTION TO APPROVE COMPROMISE

8.    On March 19, 2021, Simplot filed Proof of Claim #2 in the Debtor's case asserting a secured claim of $4,637,099.30 ("Simplot Claim"). A true and correct copy of the Simplot Claim is attached as **Exhibit 2**.

9.    After arms-length negotiations with Simplot AB Retail, Inc., I seek approval of an agreement ("Agreement") that provides for the sale of the Property. A true and correct copy of the Agreement is attached here as **Exhibit 1**.

10.    After consulting with my agents, because the Agreement provides the maximum benefit to the Estate, at minimal administrative cost, I believe, in my business judgment, that approval of the Agreement is in the best interest of creditors and the Estate.

11.    Specifically, I have consulted with my counsel and considered the probability of success, the difficulties in collection, the complexity of any litigation, and the expense, inconvenience or delay occasioned with any litigation. Based on such information, I believe in my business judgment that it is in the best interest of creditors for the Court to approve the Agreement.

12.    I do not believe that the subordination provision set forth in the Agreement constitutes a "carve-out." However, to the extent the Court determines that a carve-out exists, the requirements for approval of a carve-out are met here. Indeed, I have fulfilled my basic duties by analyzing the issues surrounding the subject liens and evaluating all claims. Further, there is a benefit to the Estate if the compromise is approved in that approximately 18% of the proceeds from the sale of the Property will be available for payment of unsecured and administrative claims. Lastly, I have disclosed the terms of the Agreement to all creditors and seeks approval of the Agreement by this Motion. Accordingly, I believe I have met all requirements for approval of a carve-out.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November ___, 2021.

JERRY NAMBA

12

4879-1903-7696.v.4                    MOTION TO APPROVE COMPROMISE

# Exhibit 1

# Subordination Agreement and Release

This SUBORDINATION AGREEMENT AND RELEASE ("Agreement") is entered into by and between JERRY NAMBA, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Peter James Compton ("Debtor"), on one the hand, and SIMPLOT AB RETAIL, INC. ("Simplot"), on the other, (Trustee and Simplot are collectively referred to as the "Parties") as follows:

# Recitals

A.      On September 14, 2020, Debtor filed a voluntary petition under Chapter 7 of Title 11 the United States Code commencing Case No. 9:20-bk-11123-DS ("Bankruptcy Case"). On the same day, Sandra McBeth was appointed as the Chapter 7 trustee of the Estate. On September 15, 2020, Ms. McBeth filed a notice of non-acceptance of appointment. On September 18, 2020, Jerry Namba was appointed as Chapter 7 Trustee of the Estate. Mr. Namba accepted his appointment and became the case trustee under 11 U.S.C. § 702(d).

B.      In his Schedule A/B, Debtor included his ownership interest in the commercial real property commonly known as 1124 Tama Lane, Santa Maria, CA 93455 ("Property"). Debtor scheduled the value of the Property as $1,490,000.

C.      Debtor's Amended Schedule D[1] reflects that the Property is encumbered by the following secured claims:

- First-in-priority deed of trust held by Community Bank of Santa Maria to secure a claim of $587,330 ("Community Bank Lien");
- Second-in-priority deed of trust held by Wells Fargo Bank to secure a small business administration loan/claim of $360,000[2] ("Wells Fargo Lien"); and
- Third-in-priority deed of trust held by Simplot AB Retail ("Simplot Lien") to secure a claim of $3,707,491.35. On March 19, 2021, Simplot filed a Proof of Claim in Debtor's case in the amount of $4,637,099.30 referenced as Claim 2 ("Simplot Claim").

D.      In order to provide a benefit to unsecured creditors, Trustee has reached an agreement with Simplot which, upon the close of escrow for the sale of the Property, subordinates a portion of Simplot's claim for the benefit of unsecured creditors, transfers the lien that secured the subordinated portion of its claim to the Estate, provides that the balance of the non-subordinated portion of the Simplot Claim will be retained by Simplot as an allowed secured claim and also provides that the balance of the Simplot Claim not paid from the sale of the Property will be allowed as a general unsecured claim in the Debtor's case. The agreement further releases claims by and between the Estate and Simplot.

---

[1] *See*, Dk. No. 23 in the Bankruptcy Case.
[2] As of 7/30/2021 the amount due is approximately $306,000.

1

# Agreement

NOW, THEREFORE, in consideration of the foregoing Recitals and of the mutual agreements, covenants, and releases set forth in this Agreement, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged, the Parties agree as follows:

1.     **Incorporation of Recitals.** The Recitals are incorporated in this Agreement by reference as though set forth in full and are acknowledged by the Parties to be material representations which form the basis of this Agreement.

2.     **Rules of Construction.** Each of the Parties acknowledges that it has participated in the drafting of this Agreement and reviewed the terms of the Agreement and, as such, no rule of construction shall apply in any interpretation of this Agreement which might result in this Agreement being construed in favor or against either of them, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

3.     **Settlement.** It is the intention of the Parties to compromise and fully resolve all issues, disputes, liabilities, and claims existing between them regarding the Simplot Claim. In furtherance of this objective, the Parties agree as follows:

3.1.     **The Parties Consent to Sell the Property**: Trustee shall employ a broker to sell the Property as soon as practicable, but no later than one year from the date of this Agreement (the "Sale Deadline"). If escrow is opened and/or pending on the Sale Deadline, then the Trustee will have an additional sixty (60) days to close. Simplot consents to Trustee's sale of the Property free and clear of its lien pursuant to 11 U.S.C. § 363(f)(2) with its lien against the Property to attach to the proceeds from the sale of the Property as set forth in this Agreement. Simplot's consent to the Trustee's sale of the Property free and clear of its lien and the partial subordination of the Simplot Claim as set forth below shall be withdrawn if the Property has not been sold by the Sale Deadline.

3.2     **Partial Subordination of Simplot's Claim**.

3.2.1. If the Property sells for $1.4 million or less, the Simplot Claim will be partially subordinated under 11 U.S.C. § 510(c)(1) in an amount equal to: (a) costs of sale including commissions, and (b) 50% of the remaining net sales proceeds after payment of all costs of sale and senior liens including real property taxes,[3] the Community Bank Lien, and the Wells Fargo Lien.

3.2.2. If the Property sells between $1,400,000.01 to $1,700,000, the Simplot Claim will be further partially subordinated under 11 U.S.C. § 510(c)(1) in an amount equal to 25% of the remaining net sales proceeds after payment of the amounts set forth in ¶ 3.2.1.

---

[3] Currently, there are no known property taxes that are due and owing.

3.2.3. If the Property sells for more than $1,700,000, the Simplot Claim will be further partially subordinated under 11 U.S.C. § 510(c)(1) in an amount equal to 15% of the remaining net sales proceeds after payment of the amounts set forth in ¶¶ 3.2.1 and 3.2.2.

3.3.    **The lien securing the subordinated portion(s) of the Simplot Claim shall be transferred to the Estate**. Pursuant to 11 U.S.C. § 510(c)(2), the lien securing the subordinated portion(s) of the Simplot Claim against the Property shall be transferred to the Estate upon the close of escrow for the sale of the Property with the Estate receiving all associated lien rights formerly held by Simplot as to the subordinated portion of the claim. The balance of the non-subordinated portion of the Simplot Claim will be retained by Simplot as an allowed secured claim. The balance of the Simplot Claim not paid from the sale of the Property will be allowed as a general unsecured claim in the Debtor's case.

3.4.    **Payments from Escrow**. The Parties shall provide a copy of this Agreement to any escrow company involved with any sale of the Property. The proceeds of sale subject to the Simplot Lien will be distributed by escrow to Simplot and the Estate in accordance with the terms of this Agreement.

3.5    **Release of Estate Claim**. In consideration of the partial subordination provisions of this Agreement, the Estate releases Simplot, its officers, directors shareholders, representatives, employees, lawyers, including the law firm of McCormick Barstow LLP and its attorneys, shareholders, officers, directors, and employees, of any liability arising out of or related to the alleged Simplot Claim and Simplot Lien.

3.6    **Limited Mutual Release.** Except for the rights and obligations of the Parties arising out of this Agreement, the Parties release, acquit, and forever discharge each other as well as their respective past and present directors, officers, shareholders, subsidiaries, parents, affiliates, divisions, agents, servants employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law), and predecessors in interest from any and all past, present, and future claims of every kind, type and description, known or unknown, direct or consequential, foreseen or unforeseen, which have been, could have been, or may be asserted by and between the Parties with regard to the Simplot Claim and the validity and perfection of the Simplot Lien.

4.    **Bankruptcy Court Approval Required**. The Parties acknowledge and agree that Bankruptcy Court approval of this compromise is a necessary condition precedent to its effectiveness. The Trustee shall be responsible for preparing, filing, and serving a noticed motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.    **Representation as to Authority to Enter Agreement.** Each of the Parties represents and warrants that it has authority to enter into this Agreement and agree to all terms and conditions.

6.    **Attorneys' Fees and Costs.** Each of the Parties shall each bear the cost of their own respective attorneys' fees and costs incurred in connection with their investigation, negotiation, and documentation of the settlement and compromise represented by this Agreement.

3

Nothing in this Agreement limits the ability of the Trustee or retained professionals from seeking allowance of compensation from the Estate for services related to this matter.

7. **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of California applicable to contracts made and is to be performed entirely within such state. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Northern Division shall be the exclusive forum to resolve such dispute.

8. **Entire Agreement.** The Parties to this Agreement represent and warrant that they have read this Agreement in its entirety, that they fully understand their rights and obligations under this Agreement, that they have executed this Agreement freely and voluntarily, that this Agreement constitutes the entire understanding and agreement between the Parties with respect to the matters referred to in this Agreement, and that there are no other representations, covenants, or other prior or contemporaneous agreements which are not specifically incorporated. The Parties further represent and warrant that they have consulted with an attorney of their choice who has explained to them all of the terms and conditions of this Agreement and the consequences of signing it.

9. **Headings.** The paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

10. **Counterparts.** This Agreement may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This Agreement shall not be binding until signed by both Parties.

11. **Time is of the Essence.** Time is of the essence as to each and every term of this Agreement.

12. **Amendments.** Any amendment, modification, or other change to this Agreement must be in writing and signed by the duly authorized representative of all Parties and must expressly state the intent of the Parties to amend, modify, or otherwise change this Agreement.

IN WITNESS WHEREOF, the Parties execute this Agreement as of the day and year first written above.

November 8, 2021

DATED: ~~October~~   , 2021        By: _____
                                        JERRY NAMBA, Chapter 7 Trustee for the
                                        bankruptcy estate of Peter James Compton

DATED: October ___, 2021          SIMPLOT AB RETAIL, INC.

                                  By: *(Please see next page for signature)*
                                      BRIAN DAVIS
                                      Its: Regional Finance Service Manager

4

Nothing in this Agreement limits the ability of the Trustee or retained professionals from seeking allowance of compensation from the Estate for services related to this matter.

7.    **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of California applicable to contracts made and is to be performed entirely within such state. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Northern Division shall be the exclusive forum to resolve such dispute.

8.    **Entire Agreement.** The Parties to this Agreement represent and warrant that they have read this Agreement in its entirety, that they fully understand their rights and obligations under this Agreement, that they have executed this Agreement freely and voluntarily, that this Agreement constitutes the entire understanding and agreement between the Parties with respect to the matters referred to in this Agreement, and that there are no other representations, covenants, or other prior or contemporaneous agreements which are not specifically incorporated. The Parties further represent and warrant that they have consulted with an attorney of their choice who has explained to them all of the terms and conditions of this Agreement and the consequences of signing it.

9.    **Headings.** The paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

10.    **Counterparts.** This Agreement may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This Agreement shall not be binding until signed by both Parties.

11.    **Time is of the Essence.** Time is of the essence as to each and every term of this Agreement.

12.    **Amendments.** Any amendment, modification, or other change to this Agreement must be in writing and signed by the duly authorized representative of all Parties and must expressly state the intent of the Parties to amend, modify, or otherwise change this Agreement.

IN WITNESS WHEREOF, the Parties execute this Agreement as of the day and year first written above.

DATED: October ___, 2021

By: *(Please see previous page for signature)*

JERRY NAMBA, Chapter 7 Trustee for the bankruptcy estate of Peter James Compton

DATED: October 21, 2021

SIMPLOT AB RETAIL, INC.

By: Brian Davis

Brian Davis, Regional Finance Service Manager

APPROVED AS TO FORM:

MARSHACK HAYS LLP

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

By: _D. Edward Hays_

D. EDWARD HAYS
LAILA MASUD
Attorney for JERRY NAMBA, in his
capacity as chapter 7 trustee for debtor
Peter James Compton

By: _(Please see next page for signature)_

HAGOP T. BEDOYAN
Attorneys for SIMPLOT AB RETAIL,
INC.

4839-6074-9311,v.1

APPROVED AS TO FORM:

MARSHACK HAYS LLP

By: _*(Please see previous page for signature)*_
    D. EDWARD HAYS
    LAILA MASUD
    Attorney for JERRY NAMBA, in his
    capacity as chapter 7 trustee for debtor
    Peter James Compton

McCORMICK, BARSTOW, SHEPPARD,
    WAYTE & CARRUTH LLP

By: _____
    HAGOP T. BEDOYAN
    Attorneys for SIMPLOT AB RETAIL,
    INC.

Exhibit 2

**Fill in this information to identify the case:**

Debtor 1    Peter James Compton

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   9:20-bk-11123-DS

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | Who is the current creditor? | J.R. Simplot Company / Simplot AB Retail, Inc. |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| 2. | Has this claim been acquired from someone else? | ☑ No |
| --- | --- | --- |
| | | ☐ Yes.  From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- | --- |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Hagop Bedoyan / McCormick Barstow LLP | |
| | | Name | Name |
| | | 7647 N. Fresno St. | |
| | | Number     Street | Number     Street |
| | | Fresno          CA          96720 | |
| | | City          State          ZIP Code | City          State          ZIP Code |
| | | Contact phone 559-433-1300 | Contact phone _____ |
| | | Contact email hagop.bedoyan@mccormickbarstow.com | Contact email _____ |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. | Does this claim amend one already filed? | ☐ No | |
| --- | --- | --- | --- |
| | | ☑ Yes.  Claim number on court claims registry (if known) 2____ | Filed on 12/17/2020 |
| | | | MM  / DD  / YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| --- | --- | --- | --- |
| | | ☐ Yes.  Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**    $ _____4,637,099.30  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Settlement Agreement regarding breach of contract

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**    Deed of Trust-1124 Tama Lane, Santa Maria, CA

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $    2,450,000.00

Amount of the claim that is secured:    $    1,520,627.00

Amount of the claim that is unsecured:  $    3,116,472.30  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____0.00

Annual Interest Rate (when case was filed) __7.00_ %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Exhibit "2"
Page 19

| **12.** **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    03/19/2021
　　　　　　　　　　MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Hagop | T. | Bedoyan |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | McCormick Barstow Sheppard Wayte Carruth LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 7647 N. Fresno St. | | |
| | Number          Street | | |
| | Fresno | CA | 93720 |
| | City | State | ZIP Code |
| Contact phone | 559-433-1300 | Email | hagop.bedoyan@mccormickbarstow.com |

Exhibit "2"
Page 20

**EXHIBIT A**

STATEMENT ITEMIZING INTEREST, FEES, EXPENSES,
OR OTHER CHARGES BANKRUPTCY RULE 3001(c)(2)(A)

STATEMENT ITEMIZING INTEREST, FEES, EXPENSES,
OR OTHER CHARGESBANKRUPTCY RULE 3001(c)(2)(A)

| Starting Balance | $ 5,014,605.95 |
|---|---|
| Interest Rate | 7% |
| Default Rate | 18.00% |

| Date | Payment | Accrued Interest | Principal Balance | Total |
|---|---|---|---|---|
| 1/1/2019 | | | $ 5,014,605.95 | $ 5,014,605.95 |
| 2/19/2020 | $ 595,000.00 | $ 398,145.97 | $ 4,419,605.95 | $ 4,817,751.92 |
| 4/2/2020 | $ 170,000.00 | $ 434,592.59 | $ 4,249,605.95 | $ 4,684,198.54 |
| 7/9/2020 | $ 170,000.00 | $ 514,461.89 | $ 4,079,605.95 | $ 4,594,067.84 |
| 9/2/2020 | | $ 557,493.35 | $ 4,079,605.95 | $ 4,637,099.30 |
| | | | | |

**EXHIBIT B**

CALCULATIONS FOR SECURED CLAIM

## CALCULATIONS FOR SECURED CLAIM

| | | |
|---|---|---|
| 1 | **AMOUNT OF SIMPLOT'S CLAIM** | $4,637,099.30 |
| 2 | **LESS TOTAL SENIOR CLAIMS**<br>A. Commercial Bank of Santa Maria:<br>B. SBA/Coastal Business Finance: | $587,330.00<br>$342,043.00 |
| 3 | **AVAILABLE EQUITY FOR SIMPLOT** | **$1,520,627.00** |

**EXHIBIT B**
**TO PETER COMPTON'S PROOF OF CLAIM**

**EXHIBIT C**

SETTLEMENT AND RELEASE AGREEMENT

## SETTLEMENT AND RELEASE AGREEMENT

   This Settlement and Release Agreement (the "Agreement") is entered into as of the date of the last signature affixed below (the "Effective Date") by and between the following parties: J. R. Simplot Company dba Simplot Grower Solutions ("JRS"); Simplot AB Retail, Inc. ("SABR") (collectively, "Simplot"); Valley Farm Supply, Inc., a California corporation ("VFS"), Peter J. Compton ("Peter") individually and in his capacity as a former Co-Trustee of the Compton Family Trust, and ███████████████████████████████████████ ████████████████████████████ Peter and VFS may be referred to collectively hereinafter as the "VFS Defendants." Peter, VFS, ████████████████ Simplot, VFS, Peter, ████████ may be referred to collectively hereinafter as the "Parties" or in the singular as a "Party."

## RECITALS

  A. A dispute arose between the Parties concerning an indebtedness (the "Debt") alleged by Simplot to be owed by VFS to Simplot as a result of, without limitation, JRS's provision of goods on credit to VFS. Simplot during the course of this dispute contended that the Debt was guaranteed by Peter and ████████████████████████████████ Defendants dispute these contentions.

  B. ████████████████████████████████████████████████████████████

  C. JRS filed a complaint (the "Complaint") against Defendants in San Luis Obispo County Superior Court on June 7, 2019. The Complaint states claims for breach of contract, common count recovery on an open book account, declaratory relief, accounting, and to set aside fraudulent transfers. The lawsuit triggered by the Complaint (the "Action") was identified by the San Luis Obispo County Superior Court with the case number 19CV-0345.

  D. 



  E. The Action was remanded to the San Luis Obispo County Superior Court on or about June 25, 2019. A Notice re: Transferred Action Order and Notice of Case Assignment

-1-

102419
2483364v2 / 21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

issued on or about September 23, 2019 indicating that the Action had been formally transferred and reassigned the new case number 19CV05074. The Action remains pending before the Santa Barbara County Superior Court as of the Effective Date of this Agreement.

F.    

G.    The VFS Defendants filed an answer on or about September 26, 2019 in which they generally denied all allegations in the Complaint and asserted various affirmative defenses. The VFS Defendants also filed, on or about the same date, a Cross-Complaint (the "Cross-Complaint") seeking relief on the following theories: Breach of the implied covenant of good faith and fair dealing, promissory estoppel, unfair business practices, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.

H.    JRS has assigned all agreements, invoices, and claims associated with Defendants to SABR.

I.    It was and remains the desire of the Parties to resolve the disputes between them (1) without further litigation and (2) without any admission of wrongdoing or error by any Party hereto. The Parties engaged in a confidential mediation before Hon. Richard Silver (Ret.) (the "Mediator") in Monterey, California on October 8, 2019 (the "Mediation"). At the Mediation, the Parties agreed (1) to resolve all disputes between the Parties on certain terms set forth in a Memorandum of Settlement (the "Memorandum of Settlement"),and (2) that the Parties would subsequently prepare a full settlement and release agreement. This Agreement supersedes the Memorandum of Settlement prepared and signed at the Mediation, and is intended to be, with the exception of those obligations arising from this Agreement, a full resolution of all claims (asserted or unasserted) between the Parties.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION THE SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES DO AGREE AS FOLLOWS:

## AGREEMENT

1.    **Incorporation of Recitals.**    The Recitals above are incorporated here as though fully set forth in this paragraph.

2.    **Resolution of VFS Indebtedness.**    VFS acknowledges that there exists, as of the Effective Date of this Agreement, an indebtedness owing by VFS to SABR (*i.e.*, the Debt.) Peter acknowledges that he is in his individual capacity a guarantor of the Debt and affirms that his signatures on those certain Continuing Personal Guaranty agreements which are attached to the Complaint (the "Guaranties") are genuine. JRS alleged in the Complaint that the amount of

-2-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

the Debt was approximately $5,366,453.60 with interest accruing thereon daily in the amount of $1,125.65. In consideration for the promises made by the VFS Defendants herein, SABR has agreed to reduce the principal balance due to $5,014,605.95, effective as of January 1, 2019 (the "Principal Amount"). The Principal Amount shall be repaid in accordance with the following:

(i.)    **Initial Payments:** VFS shall pay $390,000 to SABR on or before October 18, 2019. VFS shall pay $35,000 to SABR on or before November 7, 2019. These two payments shall collectively be referred to hereinafter as the "Initial Payments."

**Further Payments:** VFS shall make quarterly payments in the amount of $170,000, commencing on January 1, 2020 and ending on July 1, 2028 as reflected on the amortization schedule which is attached hereto as **Exhibit 1** and incorporated herein by this reference. Interest shall accrue annually at the rate of 7.0% (provided there is no default by VFS). Payments will be applied first to principal and then to outstanding interest in accordance with the amortization schedule designated here as Exhibit 1. VFS may prepay the Principal Amount, and accrued interest thereon, in full or in part, at any time without penalty.

(ii.)    Peter will execute a guaranty in the form attached hereto as **Exhibit 2** and incorporated herein by reference (the "New Guaranty"), in which he guaranties all obligations owing by VFS to SABR.

(iii.)    Peter will grant to SABR a security interest, in an amount equal to the Principal Amount, to be reflected in a recorded Deed of Trust, in the form attached hereto as **Exhibit 3** and incorporated herein by reference (the "VFS DOT"), against that certain real property located at and commonly known as 1124 Tama Lane, Santa Maria, California (the "Tama Collateral"). Peter represents that there are only two senior deeds of trust encumbering the Tama Collateral as of the Effective Date of this Agreement. Peter represents that he has not created or allowed to be created any new encumbrance against the Tama Collateral since the date of the Mediation. Peter represents that he has the authority to grant Simplot the security interest in the Tama Collateral described herein. Peter acknowledges that Simplot in entering into this Agreement is relying upon all of these representations. In the event that prior lender approval is necessary for the creation or perfection of the security interest described in this paragraph *and* such approval is denied (whether reasonably or otherwise) by said prior lender(s), then this Agreement shall not take effect. Peter and VFS agree that they will not take any action to further encumber the Tama Collateral until after such time as the VFS DOT has been recorded.

(iv.)    VFS shall grant to SABR a security interest, in an amount equal to the amount of the Debt, against all non-real property assets owned by VFS (the "Personal Property Collateral") including, without limitation, the following: Equipment, tools of the trade, accounts receivable, causes of action or claims against third parties, rights to payment, general intangibles, intellectual property, and cash in any depository account, in accordance with the terms of the form of security agreement attached hereto as **Exhibit 4** and incorporated herein by reference (the "Security Agreement") . Peter represents that there are pre-existing liens on the Personal Property (the "Senior Personal Property Liens"), as evidenced by the UCC financing statements attached hereto as **Exhibit 5** and incorporated herein by reference. VFS represents that it has the authority to grant Simplot the security interest in the Personal Property Collateral described

-3-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

Exhibit "2"
Page 28

herein, subject to the consent of the holders of the Senior Personal Property Liens, if required. VFS and Peter agree that they will not take any action to further encumber the Personal Property Collateral until such time as the lien described herein has been perfected by Simplot.

(v.)    Failure to make payments in the required amount or when due shall be, for VFS, an event of default under the terms of this Agreement. A payment five or more days late shall be deemed to be a material default. Payment shall be deemed "made" for purposes of this Agreement on the date that it is actually received by SABR at the address for notice designated hereinbelow. It shall be the VFS Defendants' responsibility to ensure that payment is timely received. Any insolvency proceeding, including but not limited to any petition for relief pursuant to any chapter of Title 11 of the United States Code (voluntary or involuntary) in which VFS or Peter is designated a debtor shall be deemed an event of default. A receiver taking possession of or assuming management duties over either VFS or the Tama Collateral or the Personal Property Collateral shall be deemed an event of default. Upon the occurrence of a default (or upon SABR's learning that an event of default has occurred), Simplot shall provide to VFS and its counsel written notice of default, and simultaneously provide a copy of such notice to Lynn and her counsel. Notice of default may, at SABR's election, be delivered through counsel by electronic mail to the email addresses set forth in Section 19 of this Agreement, with a confirmation notice sent by regular mail. VFS shall have fifteen (15) days from the date of SABR's written notice of default by email to entirely cure said default. Commencing on the 16th day after the date of SABR's written notice of default by email, interest shall accrue at the rate of eighteen percent per annum (18%) until the default is cured in its entirety (which cure shall, if necessary, include reimbursement to SABR of any attorneys' fees, expert witness fees, or court costs incurred by Simplot due to VFS' default.)

(vi.)    VFS and Peter agree to promptly execute such further documents as SABR may, in its discretion, believe are necessary to create, perfect, or effectuate security interests described herein. VFS and Peter further agree generally to promptly execute such documents as may in SABR's discretion be reasonably necessary in the future to effectuate this Agreement.

(vii.)    Simplot will agree to continue, in the absence of a default under the terms of this Agreement by VFS, selling products to VFS on a COD basis. Prices offered by Simplot to VFS will be similar to those prices offered by Simplot to other dealer accounts at the Guadalupe, California location. Should VFS believe in the future that Simplot's pricing is not in accordance with this paragraph, the Parties agree that such a dispute shall be brought to the Mediator (or another mutually agreeable mediator) for resolution prior to the bringing of any suit before any court of competent jurisdiction.

(viii.)    Once the Action has been dismissed, Simplot (through its counsel J. Jackson Waste of Baker Manock & Jensen, PC) will provide to VFS a letter on his law firm's letterhead stating that (1) Simplot and VFS have amicably resolved their dispute, (2) the Action has been dismissed, and (3) Simplot and VFS continue to do business together. VFS may present this letter to third parties without violating the confidentiality provision set forth hereinbelow.

-4-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

Exhibit "2"
Page 29

3.



OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002



4.  **Release.**

a.    Except as to such rights or claims as may be created by this Agreement, Simplot, for itself and for its assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners, members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, hereby generally and specifically release and forever discharge VFS, Peter ▮▮▮▮▮▮▮▮▮▮ and their assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners, members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, from any and all present, past, or future claims, demands, debts, losses, obligations, warranties, costs, expenses, rights of action, and causes of action of every kind and nature whatsoever, whether based on contract, tort, statutory, or other legal or equitable theory of recovery, known or unknown, suspected or unsuspected, existing, or claimed to exist, prior to the Effective Date.

b.    Except as to such rights or claims as may be created by this Agreement, VFS and Peter, for themselves and for their assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners, members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, hereby generally and specifically release and forever discharge Simplot and its assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners,

-6-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, from any and all present, past, or future claims, demands, debts, losses, obligations, warranties, costs, expenses, rights of action, and causes of action of every kind and nature whatsoever, whether based on contract, tort, statutory, or other legal or equitable theory of recovery, known or unknown, suspected or unsuspected, existing, or claimed to exist, prior to the Effective Date.



5.    **1542 Waiver.** Except for obligations arising out of this Agreement the releases set forth hereinabove shall be a full release of all known and unknown claims notwithstanding contrary language in Civil Code § 1542 or any other provision of law. The Parties acknowledge that they have read section 1542 of the California Civil Code, have discussed that statute with their attorneys, and fully understand its provisions and effects. Section 1542 of the Civil Code provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

With full awareness and understanding of the above statute, the Parties hereby waive and relinquish all rights thereunder, as well as those rights under any comparable law of any other state or jurisdiction, or any comparable common law or equitable principle. The Parties, by entering into this Agreement, have accepted the risk that unknown claims may exist that are

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

being waived and forever released hereby. Each party acknowledges and warrants that he, she, or it has been advised by counsel regarding the meaning and effect of this waiver.

    6.   **Dismissal.**

        a.    In exchange for the promises, representations, and covenants herein, within ten (10) days of the last signature to this Settlement Agreement, JRS shall file a dismissal of the Complaint and the Action, with prejudice.

        b.    In exchange for the promises, representations, and covenants herein, within ten (10) days of the last signature to this Settlement Agreement, VFS and Peter shall file a dismissal of the VFS Cross-Complaint and the Action, with prejudice.

        c.    Notwithstanding the dismissals, the Parties agree that the Santa Barbara Superior Court shall retain jurisdiction under California Code of Civil Procedure Section 664.6, to enforce the terms of this Settlement Agreement.

    7.   **Authorization of Authority; Representations and Warranties.**  No Party or any agent/representative/attorney of any Party hereto has made any statement to any other Party (or any agent/representative/attorney thereof) regarding any fact relied upon in entering into this Agreement, and no Party is relying on any statement, representation or promise of any other Party (or any agent/representative/attorney thereof) except as expressly set forth in this Agreement. This is a fully integrated agreement. Further, the Parties warrant and represent that whomever signs this Agreement on behalf of that Party is duly authorized to do so.

    8.   **Attorneys' Fees.**  The Parties hereto shall bear their own costs and attorneys' fees incurred in connection with the Action and the negotiation and **preparation of this Agreement** ███████████████████████████████████████ However, in the event of any action (including before the Mediator) arising from or to enforce or interpret this Agreement, or any motion filed pursuant to Section 664.6 of the California Code of Civil Procedure arising out of this Agreement (which motions the Court shall have jurisdiction to hear), and any appeal of either, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs.

    9.   **Waiver.**  No action or omission by any Party shall be deemed to be a waiver of any right conferred hereunder or recognized herein.

    10.   **Construction.**  This Agreement is the product of a bilateral, arm's-length negotiation between parties represented by competent counsel. As a result, the Parties hereby waive the common law and statutory rule that any ambiguity in this Agreement should be construed against the drafter. Language in this Agreement shall be construed in all instances according to its fair meaning and with the purpose of effectuating the purpose of this Agreement.

    11.   **Successors and Assigns.**  This Agreement shall be binding upon, and shall inure to the benefit of, and be enforceable by the Parties and their respective present and former

<div align="center">-8-</div>

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

partners, officers, directors, shareholders, agents, servants, employees, heirs, attorneys, parent companies, subsidiaries, affiliated companies, and predecessors and successors in interest as it is applicable to the Parties hereto.

12.    **Headings.**    Heading and captions in this Agreement exist solely for the purpose of convenience. They are to be given no legal effect.

13.    **Severability.**    Should any portion of this Agreement be declared by a court of competent jurisdiction to be illegal, invalid, unenforceable, or void, the offending portion shall be deemed stricken but the remaining portions of the Agreement shall be given their full force and effect as though the offending portion was never included in the Agreement to begin with.

14.    **Entire Agreement With No Oral Modification.**    This Agreement constitutes the full and entire Agreement between the Parties and supersedes all prior correspondence or drafts of this Agreement, including, without limitation, the prior Memorandum of Settlement signed by the Parties at Mediation. Each Party acknowledges that there are no representations, warranties, agreements, arrangements or undertakings, oral or written, between the Parties relating to the subject matter of this Agreement which are not fully expressed herein.

15.    **Counterparts; Facsimile or Electronic Signatures.**    This Agreement may be executed in counterparts and shall be effective upon execution of the final signature. The parties agree that copies of this Agreement may, subject to any objections not relating to the authenticity of this document, be admitted into evidence in any judicial, arbitral, administrative or other evidentiary proceeding of any kind, and that the filing party will request to file or submit it under seal to preserve confidentiality in accordance with Section 17 below. **Facsimile or electronic transmission of any signed original of this Agreement, and retransmission of any signed facsimile or electronic transmission, shall be the same as delivery of an original and shall be binding upon the Parties. At the request of any Party, the Parties will confirm facsimile or electronic transmission by signing a duplicate original document.**

16.    **Mediation Privilege.**    Although this Agreement was the result of the Parties' participation in a mediation, the Parties all waive any applicable settlement, mediation, or other privilege which would prevent this Agreement from being entered into evidence in any judicial proceeding for the enforcement or interpretation of this Agreement (or any proceeding for the enforcement of any security interest created hereunder.) The Parties agree that the mediation privilege shall never be applied in a manner that renders this Agreement unenforceable.

17.



102419
2483364v2 / 21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2



18.  **Compton Family Trust Termination.**  Peter and Lynn represent that the Compton Family Trust has, as of the Effective Date of this Agreement, been validly revoked and that neither the Compton Family Trust, nor Peter in his capacity as trustee of the same, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ any other person in his capacity as trustee of the same, currently holds any claim against Simplot and/or its affiliates, subsidiaries, employees, officers, shareholders, directors, agents, or attorneys.

19.   **Notices.**    Notices to the Parties shall be sent to the following physical and email addresses:

JRS:         J. R. Simplot Company
             Attn: Legal
             P.O. Box 27
             Boise, ID 83707
             Beth.coonts@simplot.com

             With a copy to:
             Baker Manock & Jensen, PC
             Attn: J. Jackson Waste
             5260 North Palm, Suite 421
             Fresno, CA 93704
             jwaste@bakermanock.com

SABR:        Simplot AB Retail, Inc.
             Attn: Legal
             P.O. Box 9296
             Boise, ID 83707
             Beth.coonts@simplot.com

-10-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

Exhibit "2"
Page 35

With a copy to:
Baker Manock & Jensen, PC
Attn: J. Jackson Waste
5260 North Palm, Suite 421
Fresno, CA 93704
jwaste@bakermanock.com

VFS and Peter:      Valley Farm Supply, Inc.
Attn:   Peter J. Compton
1124 Tama Lane
Santa Maria, CA 93459
Pete Compton (petevfs@gmail.com)
Jeremiah Reeves (jrvfs45@gmail.com)
Shelley Bradley (shelleyvfs@yahoo.com)

With a copy to:
Anastassiou & Associates
Attn:   Effie F. Anastassiou, Esq.
P. O. Box 2210
Salinas, CA 93902
effieesq@salinasaglaw.com





(Signatures on following page.)

-11-

102419
2483364v2 / 21397.0003

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

"JRS"

J. R. Simplot Company,
a Nevada corporation

By _____          Dated: January 3, 2020
    James B. Alderman, Secretary


"SABR"

Simplot AB Retail, Inc.,
a Delaware corporation

By _____          Dated: January 3, 2020
    James B. Alderman, Secretary


"VFS"

                                     Dated: January 3, 2020
By _____
    Peter J. Compton
    President and CEO


"Peter"

                                     Dated: January 3, 2020
By _____
    Peter J. Compton, Individually and in his
    capacity as a former Co-Trustee of the
    Compton Family Trust


                        -12-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397 0002

APPROVED AS TO FORM ONLY:

By: _____ for
    J. Jackson Waste
    Baker, Manock & Jensen
    Counsel for Simplot

By: _____
    Effie Anastassiou
    Anastassiou & Associates
    Counsel for Peter, VFS



-13-

107419
2483364v2721397.0002

OLD: 4815-9998-3786-1
NEW: 4848-9310-1276-2

"JRS"

J. R. Simplot Company,
a Nevada corporation

By _____    Dated:  January 3, 2020
    James B. Alderman, Secretary


"SABR"

Simplot AB Retail, Inc.,
a Delaware corporation

By _____    Dated:  January 3, 2020
    James B. Alderman, Secretary


"VFS"

By _____    Dated:  January 3, 2020
    Peter J. Compton
    President and CEO


"Peter"

By _____    Dated:  January 3, 2020
    Peter J. Compton, Individually and in his
    capacity as a former Co-Trustee of the
    Compton Family Trust

-12-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

APPROVED AS TO FORM ONLY:

By: _____
     J. Jackson Waste
     Baker, Manock & Jensen
     Counsel for Simplot

By: _____
     Effie Anastassiou
     Anastassiou & Associates
     Counsel for Peter, VFS



-13-

102419
2483364v2 / 21397.0002

OLD 4815-9998-3786 1
NEW 4848-9310-1226.2

APPROVED AS TO FORM ONLY:

By: _____
    J. Jackson Waste
    Baker, Manock & Jensen
    Counsel for Simplot

By: _____
    Effie Anastassiou
    Anastassiou & Associates
    Counsel for Peter, VFS



-13-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

402419
2483364v2 / 21397.0002

"JRS"

J. R. Simplot Company,
a Nevada corporation

By _____          Dated:  January 3, 2020
    James B. Alderman, Secretary


"SABR"

Simplot AB Retail, Inc.,
a Delaware corporation

By _____          Dated:  January 3, 2020
    James B. Alderman, Secretary


"VFS"

By _____          Dated:  January 3, 2020
    Peter J. Compton
    President and CEO


"Peter"

By _____          Dated:  January 3, 2020
    Peter J. Compton, Individually and in his
    capacity as a former Co-Trustee of the
    Compton Family Trust

-12-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
24833364v2 / 21397.0002

# EXHIBIT 1

10/16/2019  4:04:41 PM  Page 1

Rate Period .................... :  Quarterly

Nominal Annual Rate .... :  7.000 %

## CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 01/01/2019 | 5,014,605.95 | 1 | | |
| 2 | Payment | 10/18/2019 | 390,000.00 | 1 | | |
| | Principal First | | | | | |
| 3 | Payment | 11/07/2019 | 35,000.00 | 1 | | |
| | Principal First | | | | | |
| 4 | Payment | 01/01/2020 | 170,000.00 | 34 | Quarterly | 04/01/2028 |
| | Principal First | | | | | |
| 5 | Payment | 07/01/2028 | 199,416.47 | 1 | | |

## AMORTIZATION SCHEDULE - U.S. Rule (no compounding)

| | Date | Payment | Interest Accrued | Interest Paid | Principal Paid | Balance Due Interest | Balance Due Principal | Balance Due Total |
|---|---|---|---|---|---|---|---|---|
| Loan | 01/01/2019 | | 0.00 | 0.00 | 0.00 | 0.00 | 5,014,605.95 | 5,014,605.95 |
| 1 | 10/18/2019 | 390,000.00 | 279,615.80 | 0.00 | 390,000.00 | 279,615.80 | 4,624,605.95 | 4,904,221.75 |
| 2 | 11/07/2019 | 35,000.00 | 17,738.21 | 0.00 | 35,000.00 | 297,354.01 | 4,589,605.95 | 4,886,959.96 |
| 2019 Totals | | 425,000.00 | 297,354.01 | 0.00 | 425,000.00 | | | |
| 3 | 01/01/2020 | 170,000.00 | 48,410.91 | 0.00 | 170,000.00 | 345,764.92 | 4,419,605.95 | 4,765,370.87 |
| 4 | 04/01/2020 | 170,000.00 | 77,343.10 | 0.00 | 170,000.00 | 423,108.02 | 4,249,605.95 | 4,672,713.97 |
| 5 | 07/01/2020 | 170,000.00 | 74,368.10 | 0.00 | 170,000.00 | 497,476.12 | 4,079,605.95 | 4,577,082.07 |
| 6 | 10/01/2020 | 170,000.00 | 71,393.10 | 0.00 | 170,000.00 | 568,869.22 | 3,909,605.95 | 4,478,475.17 |
| 2020 Totals | | 680,000.00 | 271,515.21 | 0.00 | 680,000.00 | | | |
| 7 | 01/01/2021 | 170,000.00 | 68,418.10 | 0.00 | 170,000.00 | 637,287.32 | 3,739,605.95 | 4,376,893.27 |
| 8 | 04/01/2021 | 170,000.00 | 65,443.10 | 0.00 | 170,000.00 | 702,730.42 | 3,569,605.95 | 4,272,336.37 |
| 9 | 07/01/2021 | 170,000.00 | 62,468.10 | 0.00 | 170,000.00 | 765,198.52 | 3,399,605.95 | 4,164,804.47 |
| 10 | 10/01/2021 | 170,000.00 | 59,493.10 | 0.00 | 170,000.00 | 824,691.62 | 3,229,605.95 | 4,054,297.57 |
| 2021 Totals | | 680,000.00 | 255,822.40 | 0.00 | 680,000.00 | | | |
| 11 | 01/01/2022 | 170,000.00 | 56,518.10 | 0.00 | 170,000.00 | 881,209.72 | 3,059,605.95 | 3,940,815.67 |
| 12 | 04/01/2022 | 170,000.00 | 53,543.10 | 0.00 | 170,000.00 | 934,752.82 | 2,889,605.95 | 3,824,358.77 |
| 13 | 07/01/2022 | 170,000.00 | 50,568.10 | 0.00 | 170,000.00 | 985,320.92 | 2,719,605.95 | 3,704,926.87 |
| 14 | 10/01/2022 | 170,000.00 | 47,593.10 | 0.00 | 170,000.00 | 1,032,914.02 | 2,549,605.95 | 3,582,519.97 |
| 2022 Totals | | 680,000.00 | 208,222.40 | 0.00 | 680,000.00 | | | |
| 15 | 01/01/2023 | 170,000.00 | 44,618.10 | 0.00 | 170,000.00 | 1,077,532.12 | 2,379,605.95 | 3,457,138.07 |
| 16 | 04/01/2023 | 170,000.00 | 41,643.10 | 0.00 | 170,000.00 | 1,119,175.22 | 2,209,605.95 | 3,328,781.17 |
| 17 | 07/01/2023 | 170,000.00 | 38,668.10 | 0.00 | 170,000.00 | 1,157,843.32 | 2,039,605.95 | 3,197,449.27 |
| 18 | 10/01/2023 | 170,000.00 | 35,693.10 | 0.00 | 170,000.00 | 1,193,536.42 | 1,869,605.95 | 3,063,142.37 |
| 2023 Totals | | 680,000.00 | 160,622.40 | 0.00 | 680,000.00 | | | |
| 19 | 01/01/2024 | 170,000.00 | 32,718.10 | 0.00 | 170,000.00 | 1,226,254.52 | 1,699,605.95 | 2,925,860.47 |
| 20 | 04/01/2024 | 170,000.00 | 29,743.10 | 0.00 | 170,000.00 | 1,255,997.62 | 1,529,605.95 | 2,785,603.57 |
| 21 | 07/01/2024 | 170,000.00 | 26,768.10 | 0.00 | 170,000.00 | 1,282,765.72 | 1,359,605.95 | 2,642,371.67 |
| 22 | 10/01/2024 | 170,000.00 | 23,793.10 | 0.00 | 170,000.00 | 1,306,558.82 | 1,189,605.95 | 2,496,164.77 |
| 2024 Totals | | 680,000.00 | 113,022.40 | 0.00 | 680,000.00 | | | |
| 23 | 01/01/2025 | 170,000.00 | 20,818.10 | 0.00 | 170,000.00 | 1,327,376.92 | 1,019,605.95 | 2,346,982.87 |
| 24 | 04/01/2025 | 170,000.00 | 17,843.10 | 0.00 | 170,000.00 | 1,345,220.02 | 849,605.95 | 2,194,825.97 |
| 25 | 07/01/2025 | 170,000.00 | 14,868.10 | 0.00 | 170,000.00 | 1,360,088.12 | 679,605.95 | 2,039,694.07 |
| 26 | 10/01/2025 | 170,000.00 | 11,893.10 | 0.00 | 170,000.00 | 1,371,981.22 | 509,605.95 | 1,881,587.17 |
| 2025 Totals | | 680,000.00 | 65,422.40 | 0.00 | 680,000.00 | | | |
| 27 | 01/01/2026 | 170,000.00 | 8,918.10 | 0.00 | 170,000.00 | 1,380,899.32 | 339,605.95 | 1,720,505.27 |
| 28 | 04/01/2026 | 170,000.00 | 5,943.10 | 0.00 | 170,000.00 | 1,386,842.42 | 169,605.95 | 1,556,448.37 |
| 29 | 07/01/2026 | 170,000.00 | 2,968.10 | 394.05 | 169,605.95 | 1,389,416.47 | 0.00 | 1,389,416.47 |
| 30 | 10/01/2026 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 1,219,416.47 | 0.00 | 1,219,416.47 |
| 2026 Totals | | 680,000.00 | 17,829.30 | 170,394.05 | 509,605.95 | | | |

10/16/2019  4:04:41 PM  Page 2

| | Date | Payment | Interest Accrued | Interest Paid | Principal Paid | Balance Due Interest | Principal | Total |
|---|---|---|---|---|---|---|---|---|
| 31 | 01/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 1,049,416.47 | 0.00 | 1,049,416.47 |
| 32 | 04/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 879,416.47 | 0.00 | 879,416.47 |
| 33 | 07/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 709,416.47 | 0.00 | 709,416.47 |
| 34 | 10/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 539,416.47 | 0.00 | 539,416.47 |
| 2027 Totals | | 680,000.00 | 0.00 | 680,000.00 | 0.00 | | | |
| 35 | 01/01/2028 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 369,416.47 | 0.00 | 369,416.47 |
| 36 | 04/01/2028 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 199,416.47 | 0.00 | 199,416.47 |
| 37 | 07/01/2028 | 199,416.47 | 0.00 | 199,416.47 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2028 Totals | | 539,416.47 | 0.00 | 539,416.47 | 0.00 | | | |
| Grand Totals | | 6,404,416.47 | 1,389,810.52 | 1,389,810.52 | 5,014,605.95 | | | |

# EXHIBIT 2

**SIMPLOT AB RETAIL, INC.**
**(DBA SIMPLOT GROWER SOLUTIONS)**

**CONTINUING PERSONAL GUARANTY**

1.    In consideration of Simplot AB Retail, Inc., dba Simplot Grower Solutions ("**Simplot**" which, for purposes of this Guaranty, includes each of Simplot's affiliated entities) granting (or continuing to grant) credit to the Applicant named on the signature page below ("**Applicant**") (which is a corporation owned (in whole or in part) by Guarantor) or providing certain accommodations to Applicant or Guarantor including, without limitation, those accommodations set forth in that certain Settlement and Release Agreement by and among Simplot, the Applicant and the Guarantor (the "Settlement Agreement"), the undersigned Guarantor hereby guaranties (as primary obligor and not only as surety) the full and timely payment and performance of all of Applicant's Obligations to Simplot, and promises to pay when due (whether or not suit is brought) all monies Applicant at any time owes to Simplot pursuant to the Settlement Agreement and related security agreements.   Guarantor understands and acknowledges that Simplot is under no obligation to extend further credit to Applicant Valley Farm Supply Inc. or Guarantor.   Guarantor agrees that should any indebtedness arise in the future as a result of any extension of credit by Simplot to Applicant Guarantor will at that time execute an additional guaranty in a form acceptable to Simplot.   If for any reason Applicant does not pay any amount it owes to Simplot thereunder, the Guarantor will immediately on demand pay the relevant amount to Simplot without Simplot having to take action against Applicant or Guarantor.   The "**Obligations**" covered by this Guaranty are any and all financial and other obligations of the Applicant to Simplot created by the Settlement   Agreement and related security agreements, including all debts, liabilities and obligations of every kind arising therefrom, whether direct or indirect, absolute or contingent, liquidated or unliquidated, whether of the same or a different nature and whether existing now or in the future, including interest thereon and all costs, expenses, fees (including reasonable attorneys' fees and expert witness fees) paid or incurred by Simplot at any time in attempting to collect any of the foregoing, to realize on any collateral securing any of the foregoing or this Guaranty, and to enforce this Guaranty, whether such costs, expenses or fees are paid or incurred before or after starting litigation or at trial, on appeal, after judgment or in any bankruptcy or other proceeding.

2.    Guarantor acknowledges that it will materially benefit from Applicant's relationship with Simplot and the credit Simplot may provide, that Simplot would not

extend or continue to extend credit to Applicant without this Guaranty, that Simplot would not provide certain accommodations to Applicant without this Guaranty, and that this Guaranty is Guarantor's valid and binding obligation and is enforceable against Guarantor in accordance with its terms.

3.    This Guaranty is unconditional, continuing, and will remain in full force and effect until all Obligations have been irrevocably paid in full.   This Guaranty shall not be revoked by death, dissolution, merger, bankruptcy, incompetency or insolvency of the Guarantor.   This Guaranty shall remain in full force and effect with respect to the Guarantor until the Obligations have been paid in full.

4.    Guarantor waives all rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against the Applicant and shall be subordinate and junior in right of payment to the prior indefeasible payment in full to Simplot of all Obligations.   Guarantor shall refrain from taking any action or commencing any proceeding against the Applicant (or its successors or assigns, whether in connection with a bankruptcy proceeding or otherwise) to recover any amounts in respect of payments made under this Guaranty unless and until the Obligations are indefeasibly paid to Simplot and performed in full.

5.    Guarantor further waives: (i) promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Simplot protect, secure, perfect or insure any property; (ii) any defense based on any right of set-off or recoupment or counterclaim against or in respect of the Obligations; (iii) any requirement of Simplot to assert any claim or demand or to exercise or enforce any right or remedy; (iv) any requirement to continue advancing credit or selling products or services to Applicant; (v) any requirement to resort for payment or to proceed directly or at once against any person, including Applicant or any other guarantor; (vi) any requirement to proceed directly against or exhaust any collateral held by Simplot from Applicant, any other guarantor, or any other person; (vii) any rights or defenses arising by reason of any "one action" or "anti-deficiency" law or any other law which may prevent Simplot from bringing any action, including a claim for deficiency, against   Guarantor,   before   or   after   Simplot's

commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (viii) any election of remedies by Simplot which adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Applicant for reimbursement, including any loss of rights Guarantor may suffer by reason of any law limiting, qualifying or discharging the Obligations; and (ix) notice of Simplot's acceptance and reliance on this Guaranty, notice that Applicant is incurring obligations to Simplot, any change in those obligations, and notice of default by Applicant.

Guarantor waives all right and defenses that Guarantor may have because the Obligations are secured by real property. This means, among other things: (1) Simplot may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Applicant; and (2) if Simplot forecloses on any real property collateral pledged by Applicant, (a) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (b) Simplot may collect from Guarantor even if Simplot, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Applicant. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are secured by real property.

6.      Guarantor's obligations shall not be affected, excused, modified or impaired by any event or circumstance, or any defense Applicant may have to any of the Obligations to Simplot (including death or disability of the Guarantor, any change in Applicant's or Guarantor's legal structure or organization, changes in control of Applicant or Guarantor, and circumstances of or changes in the nature of or in any terms of the Obligations) other than the full and irrevocable payment to Simplot of all Obligations. This Guaranty is binding on Guarantor (and if more than one Guarantor, on each Guarantor jointly and severally), Guarantor's heirs, successors, assigns, and representatives and survivors, and shall inure to the benefit of Simplot and its successors, assigns and affiliates.

7.      Guarantor authorizes Simplot, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (i) to alter, compromise, renew, extend, accelerate, or otherwise change on one or more occasions the time for payment or other terms of the Obligations or any part of the Obligations, including increases and decreases of the amount of the Obligations and/or rate of finance charges on the Obligations; (ii) to take and hold security for the payment of this Guaranty or the Obligations, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (iii) to release, substitute, agree not to sue, or deal with any one or more of Applicant's sureties, endorsers, or other guarantors on any terms or in any manner Simplot may choose; (iv) to determine how, when and what application of payments and credits shall be made on the Obligations; (v) to apply such security and direct the order or manner of sale thereof, including any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Simplot in its discretion may determine; (vi) to sell, transfer, assign or grant participations in all or any part of the Obligations; and (vii) to assign or transfer this Guaranty in whole or in part.

8.      If any provision of this Guaranty is held to be illegal, invalid or unenforceable to any extent in any context, that provision shall be modified or restricted however necessary to render it valid, legal, and enforceable in that context. Modification or restriction may be accomplished by mutual agreement between Simplot and Guarantor; or, alternatively, by disposition of a court of competent jurisdiction. If the provision cannot be modified or restricted, then: that provision will be fully severable, this Guaranty will be construed and enforced as if the illegal, invalid or unenforceable provision was never a part of this Guaranty, and the remaining provisions of this Guaranty will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty. The undersigned parties agree that this Guaranty was the product of bilateral, arms' length negotiation between parties who are (or have been given the opportunity to be) represented by competent counsel. As such, the undersigned parties waive any statutory or common law presumption that ambiguities shall be construed against the drafter and agree that ambiguities in this Guaranty (if any are deemed to exist) shall not be construed for or against any party. A signed copy of this Guaranty delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Guaranty. The word "including" (and its variants) in this Guaranty will be deemed to be followed by "without limitation." The words "execution," "signed," "signature," and words of similar import in the Guaranty shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed

signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) and any similar state laws including those based on the Uniform Electronic Transactions Act.

9.    This Guaranty will be governed by California law without regard to its conflict of laws provisions. Simplot's rights and remedies are cumulative and non-exclusive.

**JUDICIAL REFERENCE:**

ANY DISPUTE REGARDING THE INTERPRETATION, ENFORCEMENT, OR ENFORCEABILITY OF THIS AGREEMENT OR ANY OTHER DISPUTE REGARDING, RELATING TO, OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREIN SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(c)    THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(d)    THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(e)    THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(f)     THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

10.     This Guaranty (and any additional document related to financial assurances provided by Guarantor) contains all of the terms and agreements governing Guarantor's guaranty of Applicant's Obligations, and supersedes all prior understandings, statements, or agreements about that subject (none of which are binding or may be relied on), including, without limitation, any and all prior guaranties executed by Guarantor in favor of Simplot.   To be effective, a waiver of any provision of this Guaranty must be specifically stated in a signed document. No waiver will result from course of dealing, estoppel, waiver, or implied amendment (including Simplot's acceptance of any late or partial payment or our delay in exercising any right or remedy under this Guaranty). This provision may NOT be orally modified.

11.     Guarantor authorizes Simplot, at Simplot's sole expense, to obtain at any time before or during the time this Guaranty is in effect consumer and/or business credit reports from consumer and/or commercial credit reporting agencies and other financial information from Guarantor's references, banks and past or present creditors.   Guarantor agrees to sign any other documents necessary for Simplot to obtain credit reports or financial information. Guarantor also agrees to provide personal and/or business financial information and consents (if required by law) to Simplot's collection, use and disclosure of this information to enable Simplot to determine Guarantor's creditworthiness and to establish, maintain and manage a relationship with Guarantor.

| | |
|---|---|
| Guarantor name: Peter J. Compton | Guarantor name: |
| Guarantor signature: | Guarantor signature: |
| Date:  January 3, 2020 | Date: |
| Guarantor address:  1124 Tama Lane, Santa Maria, California 93455 | Guarantor address: |
| Name of **Applicant** whose Obligations are being guaranteed: Valley Farm Supply, Inc. | |

# EXHIBIT 3

**RECORDING REQUESTED BY AND**
**WHEN RECORDED RETURN TO:**

J. R. Simplot Company
Attn: Beth Coonts
P.O. Box 27
Boise, ID 83707

---

*(Space above this line for Recorder's use)*

**THIS INSTRUMENT SECURES OBLIGATIONS WHICH MAY CONTAIN PROVISIONS FOR ADJUSTMENTS IN THE INTEREST RATE AND PAYMENT AMOUNTS AND/OR A BALLOON PAYMENT.**

**THIS INSTRUMENT CONSTITUTES A SECURITY AGREEMENT AS THAT TERM IS DEFINED IN THE CALIFORNIA UNIFORM COMMERCIAL CODE. PORTIONS OF THE COLLATERAL ARE GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE LAND DESCRIBED IN <u>EXHIBIT A</u> HERETO. THIS INSTRUMENT IS INTENDED TO SERVE AS A FIXTURE FILING AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED AND INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING. TRUSTOR (DEFINED BELOW) IS THE OWNER OF A RECORD INTEREST IN THE LAND DESCRIBED IN <u>EXHIBIT A</u> HERETO. THE ADDRESS OF TRUSTOR (DEBTOR) AND BENEFICIARY (DEFINED BELOW), AS BENEFICIARY (SECURED PARTY) ARE SET FORTH ON THE FIRST PAGE OF THIS DEED OF TRUST.**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "<u>Deed of Trust</u>") is made as of January 3, 2020 by Peter J. Compton , an individual ("<u>Trustor</u>"), as trustor, whose address is 1124 Tama Lane, Santa Maria, California, 93455, to CHICAGO TITLE INSURANCE COMPANY ("<u>Trustee</u>"), as trustee, whose address is 7330 N. Palm Avenue, #101, Fresno, California 93711, for the benefit of SIMPLOT AB RETAIL, INC. ("<u>Beneficiary</u>"), as beneficiary, whose address is 1099 W. Front Street, Boise, Idaho 83707.

### PRELIMINARY STATEMENT:

Trustor has executed and delivered to Beneficiary that certain Continuing Personal Guaranty dated January 3, 2020, (as amended from time to time, the "<u>Guaranty</u>"), pursuant to which the Trustor has guaranteed the payment by <u>Valley Farm Supply, Inc.</u> ("<u>Customer</u>") to the Beneficiary of the indebtedness and obligations described therein.

2485269v2 / 21397.0002

NOW, THEREFORE, in consideration of Beneficiary agreeing to extend credit to Customer or providing certain accommodations to Customer, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

## ARTICLE I
## GRANT

1.1    <u>Grant</u>.  Trustor hereby irrevocably grants, bargains, sells, conveys, mortgages, transfers and assigns to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession as provided below, for the benefit of Beneficiary, all of its present and future fee estate, including all right, title and interest of Trustor in and to the following described property, whether such property is now or hereafter in existence (the "<u>Mortgaged Property</u>"):

(a) the real estate and any interest in the real estate located in Santa Barbara County, California, and described in <u>EXHIBIT A</u> (the "<u>Land</u>"); (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "<u>Improvements</u>", together with the Land, the "<u>Real Property</u>"); (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto; (d) the ground water on, under, pumped from or otherwise available to the Real Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any governmental authority and any rights granted or created by any easement, covenant, agreement or contract with any person; and any rights to which the Real Property or Trustor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Real Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Real Property by virtue of the Real Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity (collectively, "<u>Water Rights</u>"); (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "<u>Mineral Rights</u>"); (g) timber now or hereafter standing or cut; (h) leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Real Property (collectively, the "<u>Leases</u>"); (i) all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to

2485269v2 / 21397.0002

2

Exhibit "2"
Page 53

the operation and maintenance of the Real Property; (j) all bushes, groves, trees, plants, crops, vines or other plantings, upon or under the Land ("Plantings"); (k) any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Real Property may receive water (collectively, the "Water Stock"); (l) working drawings, instructional manuals, and rights in processes directly related to the operation of the Real Property; (m) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment or which is in all cases (i) directly related to the operation of the Real Property or acquired in connection with any construction or maintenance of the Land or the Improvements (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements; (n) all permits and licenses relating or pertaining to the use or enjoyment of the Real Property; (o) proceeds of and any unearned premiums on any insurance policies covering the Real Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property (the "Insurance Claims"); (p) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Real Property (the "Condemnation Awards"); (q) money or other personal property of Trustor in addition to the foregoing deposited with or otherwise in Beneficiary's possession; (r) all accounts, deposit accounts, and general intangibles, including payment intangibles; (s) the right, in the name and on behalf of Trustor, upon notice to Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property and to commence any action or proceeding to protect the interest of Beneficiary in the Real Property; and (t) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

TO HAVE AND TO HOLD the Mortgaged Property unto Trustee forever and Trustor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Trustee against every person whomsoever lawfully claiming or to claim the same or any part thereof or against parties claiming by, through, or under Trustor and not otherwise.

1.2    Obligations Secured. This Deed of Trust secures all of Trustor's obligations owing to Beneficiary from time to time under the Guaranty (the "Guaranteed Obligations"), including, but not limited to:

(a)    the payment and performance of Customer's indebtedness under that certain Settlement and Release Agreement among Beneficiary, Trustor and Customer (the "Settlement Agreement");

(a)    any and all amounts, debts, liabilities, and obligations of every type and description, which Customer may now or at any time owe to Beneficiary, whether now existing or hereafter arising, direct or indirect, due or to become due, absolute or contingent, arising from, the Settlement Agreement, or related security document;

(b)    any and all modifications, extensions and renewals of the indebtedness secured hereby; and

(c)    the payment of all sums advanced or paid out by Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

### ARTICLE II
### COVENANTS OF TRUSTOR

To protect the security of this Deed of Trust, Trustor covenants for the benefit of Beneficiary as follows:

II.1    <u>Payment of Indebtedness</u>.  Trustor shall pay and perform or cause Customer to pay and perform, all Guaranteed Obligations that are secured by this Deed of Trust in accordance with the terms of any of the agreements evidencing such Guaranteed Obligations.

II.2    <u>Insurance</u>.  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Beneficiary.  Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Beneficiary may request with Trustee and Beneficiary being named as additional insureds in such liability insurance policies.  Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Beneficiary may reasonably require.  Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Beneficiary and issued by a company or companies reasonably acceptable to Beneficiary.  Trustor, upon request of Beneficiary, will deliver to Beneficiary from time to time the policies or certificates of insurance in form satisfactory to Beneficiary, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Beneficiary.  Each insurance policy also shall include an endorsement providing that coverage in favor of Beneficiary will not be impaired in any way by any act, omission or default of Trustor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Beneficiary that the Real Property is located in a special flood hazard area, for the full unpaid principal balance of the Guaranteed Obligations and any prior liens on the property securing the Guaranteed Obligations, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Beneficiary, and to maintain such insurance for the term of the Guaranty.

Unless Trustor provides Beneficiary with evidence of the insurance coverage as required by the Deed of Trust, Beneficiary may purchase insurance at Trustor's expense to protect Beneficiary's interest.  This insurance may, but need not, also protect Trustor's interest.  If the collateral becomes damaged, the coverage Beneficiary purchases may not pay any claim Trustor makes or any claim made against Trustor.  Trustor may later cancel this coverage by providing evidence that Trustor has obtained property coverage elsewhere.  Trustor is responsible for the cost of any insurance purchased by Beneficiary.  The cost of this insurance may be added to

2485269v2 / 21397.0002                                   4

Trustor or Customer's obligations owed to Beneficiary. If the cost is added to Trustor or Customer's obligations, the interest rate on the Guaranteed Obligations will apply to this added amount. The effective date of coverage may be the date Trustor failed to provide proof of coverage.

II.3    Payment of Taxes; Claims. Trustor shall pay prior to delinquency all taxes and assessments which are or may become a lien on the Mortgaged Property or which are assessed against the Mortgaged Property or its rents, royalties, profits and income. Trustor shall pay when due all lawful claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered for the Mortgaged Property.

II.4    Waste; Maintenance and Repair. Trustor shall not commit any waste on the Mortgaged Property or take any actions that result in the insurance carried on the Mortgaged Property being cancelled. No Improvements may be removed, demolished or altered without the prior written consent of Beneficiary. Trustor shall keep the Mortgaged Property in good condition and repair; operate the Mortgaged Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary; complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Trustor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights.

II.5    Change in Use; Compliance with Laws. Without the prior written consent of Beneficiary, Trustor shall not seek, make or consent to any change in the zoning or conditions of use of the Land which impair the ability of Trustor to construct Improvements on the Land. Trustor shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions that are recorded against title to the Mortgaged Property. Trustor shall comply with all existing and future requirements of all governmental authorities having jurisdiction over the Mortgaged Property.

II.6    Actions Affecting Beneficiary's Security. Trustor shall, at its own expense, appear in and defend any action or proceeding (i) that might adversely affect Beneficiary's lien on the Mortgaged Property, or (ii) that might adversely affect the priority of the security interest of Beneficiary, or (iii) that might adversely affect Beneficiary's right to enforce its security or (iv) that would adversely affect Trustor's right, title or interest in or to the Mortgaged Property. If there is an Event of Default under this Deed of Trust, then Beneficiary and/or Trustee may, at their option, make any appearances, disburse any sums and take any actions as may be necessary or desirable to protect or enforce the security of this Deed of Trust or to remedy the failure of Trustor to perform its covenants (without, however, waiving any default of Trustor). Trustor agrees to pay all costs and expenses of Beneficiary and Trustee thus incurred (including but not limited to reasonable fees and disbursements of counsel). Any sums disbursed or advanced by Beneficiary or Trustee pursuant to this Section 2.6 will be additional indebtedness of Trustor

5

secured by this Deed of Trust, and will be payable by Trustor upon demand. Any such sums so disbursed or advanced by Beneficiary pursuant to this Section 2.6 will bear interest at a default rate equal to 7%, provided that the interest rate applicable to such sums so disbursed or advanced by Trustee will not bear interest at a rate that would exceed the maximum rate permitted to be charged by Trustee under applicable law. This paragraph will not be construed to require Beneficiary or Trustee to incur any expenses, make any appearances, or take any actions.

II.7    Prohibited Transfers. Trustor shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer, Beneficiary may declare all Guaranteed Obligations to be due and payable immediately. "Prohibited Transfer" means: (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Trustor under this instrument, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Trustor is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Trustor; (c) if Trustor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of the partnership interests; (d) if Trustor is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Trustor; or (e) if Trustor is a trust, withdrawal or removal of any trustee or revocation of the trust.

## ARTICLE III
## CASUALTY AND CONDEMNATION

III.1    Trustor's Obligation to Restore. If the Improvements shall be damaged or destroyed, in whole or in part, by fire or other casualty and the cost to repair such damage or destruction exceeds $5,000.00 (a "Casualty"), Trustor shall give prompt notice thereof to Beneficiary. Following the occurrence of a Casualty, regardless of whether insurance proceeds are available, unless otherwise agreed to by Beneficiary, Trustor shall promptly proceed to restore, repair, replace or rebuild the Improvements to be of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable laws. The expenses incurred by Beneficiary in the adjustment and collection of insurance proceeds shall become part of the amounts owing in connection with the Guaranteed Obligations and shall be secured by this Deed of Trust and shall be reimbursed to Beneficiary upon demand.

III.2    Insured Losses; Condemnation Proceeds. In case of loss or damages covered by any insurance policy required to be maintained by Trustor or a condemnation or taking under power of eminent domain of any portion of or interest in the Real Property, the following provisions shall apply:

III.2.1 Settlement by Trustor. If there is a Casualty and no Event of Default exists, then Trustor may settle and adjust any claim without the consent of Beneficiary and agree with the insurance company or companies or the condemning authority on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In

2485269v2 / 21397.0002                                6

such case, Trustor is hereby authorized to collect and retain any such condemnation or insurance proceeds.

III.2.2 Settlement by Beneficiary. If an Event of Default then exists and is continuing, then, subject to the duly perfected rights of Senior Secured Creditors, Beneficiary may settle and adjust any claim without the consent of Trustor and agree with the insurance company or companies or the condemning authority on the amount to be paid on the loss and the proceeds of any such policy shall be due and payable solely to Beneficiary and held in escrow by Beneficiary in accordance with the terms of this Deed of Trust.

III.2.3 Application of Proceeds Absent Rebuilding. Except as provided in Section 3.2.1, the proceeds collected upon any Casualty or condemnation shall, at the option of Beneficiary in its sole discretion, be applied to the payment of the Guaranteed Obligations or applied to reimburse Trustor for the cost of restoring, repairing, replacing or rebuilding the Improvements or part thereof subject to the Casualty or condemnation, in the manner set forth below. Any such application to the payment of the Guaranteed Obligations shall be applied to the installments of principal in the inverse order of maturity.

I.1.2 Conditions to Disbursement of Proceeds to Reimburse Trustor. If Trustor is entitled to reimbursement out of insurance or condemnation proceeds held by Beneficiary, then such proceeds shall be disbursed from time to time upon Beneficiary being furnished with (a) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (b) assurances satisfactory to Beneficiary that such funds are available, sufficient in addition to the insurance or condemnation proceeds to complete the proposed restoration, repair, replacement and rebuilding, and (c) such architect's certificates, conditional waivers of lien (subject only to payment), contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Beneficiary may reasonably require and approve. Beneficiary may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Beneficiary prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed 90% of the value of the work performed from time to time. If Trustor is required to advance funds for such restoration work as set forth above, then Trustor shall have advanced all such funds prior to disbursement by Beneficiary to Trustor of such insurance or condemnation proceeds. Beneficiary shall not be obligated to disburse insurance or condemnation proceeds to Trustor until Trustor shall provide reasonable evidence to Beneficiary that the undisbursed balance of such insurance or condemnation proceeds remaining in the hands of Beneficiary, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Beneficiary by or on behalf of Trustor for that purpose, shall be at least sufficient in the reasonable judgment of Beneficiary to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of insurance or condemnation proceeds held by Beneficiary after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto provided no Event of Default then exists.

**ARTICLE IV**
**ASSIGNMENT OF LEASES AND RENTS**

Exhibit "2"
Page 58

IV.1    Assignment.  As additional security for the payment and performance by Trustor of the Guaranteed Obligations, and subject to the duly perfected rights of any senior secured creditors, Trustor hereby absolutely, presently, unconditionally and irrevocably assigns to Beneficiary all of the existing and future leases, licenses and other use or occupancy agreements and all existing and future rents, royalties, income, profits and other benefits derived from or produced by the Mortgaged Property, including but not limited to, any monies, proceeds, damages, judgments or payments in lieu thereof, received by or due to Trustor occasioned by any mineral or geothermal exploration, wind energy or drilling activity on or under the Real Property, all prepaid rents, security deposits and other supporting obligations.

IV.2    Revocable License.  Subject to the duly perfected rights of any senior secured creditors,  Beneficiary hereby grants to Trustor a license to collect and receive all rents, royalties, income and profits produced by or related to the use and occupancy ofthe Mortgaged Property. Upon the occurrence and during the continuance of an Event of Default, Beneficiary may, in its discretion, deliver written notice to Trustor and terminate such license and, subject to the duly perfected rights of any senior secured creditors, Beneficiary may thereafter collect the rents, royalties, income and profits itself or by an agent or receiver.  If and when an Event of Default is cured by Trustor, Beneficiary shall again grant to Trustor a license to collect and receive all rents, royalties, income and profits related to the use and occupancy of the Mortgaged Property. No action taken by Beneficiary to collect any rents, royalties, income or profits will make Beneficiary a "mortgagee-in-possession" of the Mortgaged Property, unless Beneficiary personally or by agent enters into actual possession of the Mortgaged Property.  Possession by a court appointed receiver will not be considered possession by Beneficiary.  All rents, royalties, income and profits collected by Beneficiary or a receiver will be applied to pay all expenses of collection, and to the payment of all costs of operation and management of the Mortgaged Property, and to the payment of the Guaranteed Obligations in whatever order Beneficiary directs in its absolute discretion and without regard to the adequacy of its security.  Beneficiary's right to a receiver shall be absolute and unconditional, and a receiver may be obtained in an independent action, regardless of whether Beneficiary seeks any relief other than the appointment of a receiver; Trustor expressly waives any express or implied legal requirement that might otherwise require the initiation or pendency of an action or proceeding seeking other relief as a condition to the appointment of a receiver.  The receiver may be appointed without regard to the adequacy of any security for the Guaranteed Obligations and Trustor shall immediately surrender possession of the Mortgaged Property to the receiver upon his appointment.

IV.3    Leases.  All new leases of the Mortgaged Property shall be subject to approval by the Beneficiary which approval will not be unreasonably withheld.  All leases of the Mortgaged Property shall be at market terms.  Trustor shall provide Beneficiary, promptly after execution thereof, copies of any and all new tenant leases as to any portion of the Mortgaged Property.

**ARTICLE V**
**OBLIGATIONS UNCONDITIONAL**

V.1    Arrangements with Customer or Customer's Indebtedness.  Trustor authorizes Beneficiary to perform any of the following acts at any time, all without notice to Trustor and without affecting the rights of Beneficiary or the obligations of Trustor under this Deed of Trust:

(i) alter any terms of the Guaranteed Obligations, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Guaranteed Obligations; (ii) take and hold security for the Guaranteed Obligations, accept additional or substituted security for the Guaranteed Obligations, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security; (iii) apply any security now or later held for the Guaranteed Obligations in any order that Beneficiary may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Customer of its liability for all or any portion of the Guaranteed Obligations; and (v) substitute, add or release any one or more guarantors or endorsers of the Guaranteed Obligations.

V.2    Waivers.  Trustor waives: (i) any right to require Beneficiary to proceed against Customer, proceed against or exhaust any security held from Customer, or pursue any other remedy in Beneficiary's power to pursue; (ii) any defense based on any legal disability of Customer, any discharge or limitation of the liability of Customer to Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor relief proceeding, or from any other cause, or any claim that the obligations of Trustor exceed or are more burdensome than those of Customer; (iii) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Customer, and demands and notices of every kind; (iv) any defense based on or arising out of any defense that Customer may have to the payment or performance of the Guaranteed Obligations; and (v) until the Guaranteed Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Beneficiary may have against Customer, and all rights to participate in any security now or later to be held by Beneficiary for the Guaranteed Obligations.

V.3    Further Waivers.  Trustor waives all rights and defenses that Trustor may have because the Guaranteed Obligations may be secured by real property other than the Real Property hereby encumbered.  This means, among other things: (i) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) without first foreclosing on any other real or personal property collateral securing the Guaranteed Obligations; and (ii) if Beneficiary forecloses on any real property collateral securing the Guaranteed Obligations: (A) the amount of the Guaranteed Obligations may be reduced only by the price for which such collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) even if Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Customer.  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Guaranteed Obligations may be secured by real property other than the Real Property.

V.4    Determination of Deficiency.  Trustor waives any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Real Property hereby encumbered.

2485269v2 / 21397.0002

9

   V.5 <u>Customer Information</u>.  Trustor is solely responsible for keeping informed of the financial condition and business operations of Customer and all other circumstances affecting the ability of Customer to pay and perform Customer's obligations to Beneficiary, and agrees that Beneficiary will have no duty to disclose to Trustor any information which Beneficiary may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Customer to perform.

   V.6 <u>Waivers Not Limited</u>.  No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust or the Guaranty.

<div align="center">

**ARTICLE VI**
**PERSONAL PROPERTY SECURITY PROVISIONS**

</div>

   VI.1 <u>Security Interest</u>.  This Deed of Trust is also intended to encumber and create a security interest in, and Trustor hereby grants to Beneficiary a security interest in, all portions of the Mortgaged Property constituting personal property and all other fixtures, chattel paper, deposit accounts, equipment, goods, inventory, contract rights, documents, instruments, investment property, general intangibles, and all other personal property of every type or description owned by Trustor and used in connection with the Real Property, all renewals, replacements, additions to, or substitutions of the foregoing and the proceeds thereof, whether or not the same shall be attached or related to the Real Property in any manner (all such personal property being referred to collectively as the "<u>Personal Property Collateral</u>").  All of the Personal Property Collateral shall be owned by Trustor and no leasing or installment sales or other financing or title retention agreement in connection therewith shall be permitted without the prior written approval of Beneficiary.  Trustor shall, from time to time upon the request of Beneficiary, supply Beneficiary with a current inventory of all of the Personal Property Collateral in which Beneficiary is granted a security interest hereunder, in such detail as Beneficiary may reasonably require.  Trustor shall promptly replace all of the Personal Property Collateral when worn or obsolete with an article comparable to the worn out or obsolete Personal Property Collateral when new and will not, without the prior written consent of Beneficiary, remove from the Property any of the Personal Property Collateral subject to this Deed of Trust except such as is replaced by an article of equal suitability and value as above provided, owned by Trustor free and clear of any lien or security interest except that created by this Deed of Trust.

   VI.2 <u>Security Agreement</u>.  This Deed of Trust constitutes a security agreement between Trustor and Beneficiary with respect to the Personal Property Collateral in which Beneficiary is granted a security interest hereunder, and, cumulative of all other rights and remedies of Beneficiary hereunder, Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code (the "<u>UCC</u>").  Trustor hereby authorizes Beneficiary to prepare and file with the appropriate filing officer or office financing statements, amendments thereto, and continuation statements, and to file any such financing statement, amendment thereto or continuation statement electronically in all jurisdictions the Beneficiary deems necessary or desirable in order to perfect or continue the perfection of the lien or security interest created hereby.  Such financing statements may describe the collateral as "all personal property" or "all assets" or similar language. Trustor shall have possession of the Personal Property Collateral, except where Beneficiary chooses to perfect its security interest by

possession in addition to the filing of a financing statement. Where Personal Property Collateral is in the possession of a third party, Trustor will join with Beneficiary in notifying such third party of Beneficiary's security interest and obtaining an acknowledgment from the third party that it is holding the Personal Property Collateral for the benefit of Beneficiary. Trustor agrees to furnish Beneficiary in writing with notice of any change in the name, organizational structure, or principal place of business or mailing address of Trustor thirty (30) days prior to the effective date of any such change.

VI.3    <u>UCC Remedies</u>. Upon the occurrence and during the continuance of any Event of Default hereunder, subject to the duly perfected rights of any senior secured creditors,. Beneficiary shall have the right to cause any of the Personal Property Collateral to be sold at any one or more public or private sales as permitted by applicable law, and Beneficiary shall further have all other rights and remedies, whether at law, in equity, or by statute, as are available to secured creditors under applicable law. Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee. Any person, including Trustor and Beneficiary, shall be eligible to purchase any part or all of such property at any such disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Trustor and shall include Beneficiary's and Trustee's reasonable attorneys' fees and legal expenses. Subject to the duly perfected rights of any senior secured creditors, Trustor, upon demand of Beneficiary, shall assemble such personal property and make it available to Beneficiary at the Real Property, a place which is hereby deemed to be reasonably convenient to Beneficiary and Trustor. Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property or of the time of or after which any private sale or any other intended disposition is to be made, and if such notice is sent to Trustor, as the same is provided for the mailing of notices herein, it is hereby deemed that such notice shall be and is reasonable notice to Trustor.

VI.4    <u>Parties</u>. The name and principal place of business of Trustor, as "Debtor", and Beneficiary, as "Secured Party", under the UCC are as set forth in the first paragraph of this Deed of Trust.

## ARTICLE VII
## EVENTS OF DEFAULT

An "Event of Default" hereunder shall mean any of the following: (a) failure of Trustor to pay any of the Guaranteed Obligations when due; (b) a Prohibited Transfer; (c) any representation in this Deed of Trust is materially incorrect or materially misleading when made; (d) for more than ten days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Article VII which can be cured by the payment of a sum of money; or (e) for 30 days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Article VII; provided that if (i) it is reasonably certain that the default can be cured by Trustor within that 30 day period and (ii) Trustor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default then that 30 day period shall be extended for so long as reasonably required by Trustor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Trustor of the Event of Default.

## ARTICLE VIII
## REMEDIES

VIII.1 Remedies.  Upon the occurrence of any Event of Default, Beneficiary may, at its option, and without notice to or demand upon Trustor:

VIII.1.1    Declare any or all Guaranteed Obligations to be due and payable immediately;

VIII.1.2    Subject to the duly perfected rights of any senior secured creditors, Enter onto the Mortgaged Property, in person or by agent or by court-appointed receiver, and take any and all steps which may be desirable in Beneficiary's judgment to complete any unfinished construction and to manage and operate the Mortgaged Property and to collect any and all rents, issues and profits of the Mortgaged Property, and Beneficiary may apply any rents, royalties, income or profits collected against the indebtedness secured by this Deed of Trust without in any way curing or waiving any default of Trustor;

I.1.3    Bring a court action to foreclose this Deed of Trust under any applicable provision of law or to enforce its provisions or any of the Guaranteed Obligations secured by this Deed of Trust;

VIII.1.3    Cause any or all of the Mortgaged Property to be sold under the power of sale granted by this Deed of Trust in any manner permitted by applicable law; and/or

VIII.1.4    Exercise any other right or remedy available under law or in equity.

VIII.2 Power of Sale.  For any sale under the power of sale granted by this Deed of Trust, Beneficiary or Trustee must record and give all notices required by law and then, upon the expiration of such time as is required by law, and subject to the duly perfected rights of any senior secured creditors, Trustee may sell the Mortgaged Property upon any terms and conditions specified by Beneficiary and permitted by applicable law.  Trustee may postpone any sale by public announcement at the time and place noticed for the sale.  If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may, in its sole discretion: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales or in any other manner Beneficiary deems in its best interest.  Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured.  Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all Guaranteed Obligations secured hereby have been fully paid.  In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial

12

proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee with regard to such sale or sales, together with interest on all such advances made by Trustee at the maximum rate permitted by law to be charged by Trustee. Upon any sale hereunder, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the property so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession; and the recitals in any such deed or deeds of fact, such as default, the giving of notice of default and notice of sale, and other facts affecting the regularity or validity of such sale or disposition shall be conclusive proof of the truth of such facts and any such deed or deeds shall be conclusive against all persons as to such facts recited therein.

VIII.3    Application of Proceeds.    Subject to the duly perfected rights of any senior secured creditors, the proceeds of any sale under this Deed of Trust will be applied to the following in any order Beneficiary chooses:

VIII.3.1    Payment of the costs and expenses of the sale, including but not limited to Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee at the maximum rate permitted to be charged by Trustee under applicable law.

VIII.3.2    Payment of all sums expended by Beneficiary under the terms of this Deed of Trust and not yet repaid, together with interest on such sums at the rate of 7.00% per annum.

VIII.3.3    Payment of the Guaranteed Obligations in any order that Beneficiary chooses.

VIII.3.4    The remainder, if any, to the person or persons legally entitled to it.

VIII.4    Waivers by Trustor.    Trustor waives all rights to direct the order in which any of the Mortgaged Property will be sold in the event of any sale under this Deed of Trust, and also any right to have any of the Mortgaged Property marshaled upon any sale.

VIII.5    No Waiver by Beneficiary.    All remedies contained in this Deed of Trust are cumulative, and Beneficiary also has all other remedies provided by law or in any other agreement between Trustor and Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust will be construed to be a waiver of that right or remedy of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

VIII.6    Enforcement Costs.    Trustor will pay all of Beneficiary's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any lawsuit is filed, including but not limited to reasonable legal fees and disbursements, foreclosure costs and title charges.

## ARTICLE IX
## MISCELLANEOUS

IX.1    <u>Fixture Filing</u>.  This Deed of Trust constitutes a financing statement filed as a Fixture Filing in the Official Public Records of real property of the county in which the Mortgaged Property is located with respect to any and all fixtures included within the term "Mortgaged Property" as used herein and with respect to any goods or other personal property that may now be or hereafter become such fixtures.

IX.2    <u>Invalidity</u>.  The invalidity or unenforceability of any one or more provisions of this Deed of Trust will not affect any other provisions of this Deed of Trust.

IX.3    <u>Statement of Status</u>.  Trustor agrees to pay Beneficiary a reasonable charge, not to exceed the maximum allowed by law, for giving any statement of the status of the obligations secured by this Deed of Trust.

IX.4    <u>Notices</u>.  The service of any notice of default or notice of sale under this Deed of Trust as required by law will, if mailed, be effective on the date of mailing.

IX.5    <u>Actions by Beneficiary</u>.  Without affecting Trustor's liability for the payment of any of the indebtedness secured by this Deed of Trust, Beneficiary may from time to time and without notice to Trustor (a) release any person liable for the payment of that indebtedness, (b) accept additional real or personal property of any kind as security, or alter, substitute or release any property securing that indebtedness, or (c) cause Trustee to consent to the making of any map or plot of the Mortgaged Property, or to reconvey any part of the Mortgaged Property, or to join in granting any easement or creating any restriction on the Mortgaged Property, or to join in any subordination or other agreement affecting this Deed of Trust.

IX.6    <u>Indemnification</u>.  **Trustor shall indemnify Trustee and Beneficiary against and shall hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and claims therefor together with all other legal expenses, costs of evidence of title, costs of evidence of value, and other costs and expenses which either Trustee or Beneficiary may suffer or incur:  (1.) In performing any act required or permitted by this deed of trust or by law or any other agreement between Beneficiary and Trustor or between Beneficiary and Valley Farm Supply, Inc., Peter J. Compton, any successor of the foregoing, or any person affiliated with the foregoing-listed individuals and entities ;  (2.) Because of any failure of Trustor to pay or perform any obligation owed by Trustor to Beneficiary; (3.) Because of any alleged obligation of or undertaking by Beneficiary to perform or discharge any of the representations, warranties, conditions, covenants, or other obligations in any document or agreement relating to the property.  This agreement by Trustor to indemnify, defend, and hold harmless Beneficiary survives the release and cancellation of any or all of the other obligations by and between Beneficiary or Trustor as well as the full or partial release and/or reconveyance of this Deed of Trust.**

IX.7    <u>Reconveyance</u>.  Upon the payment in full of all Guaranteed Obligations, Beneficiary agrees to request Trustee to reconvey the Mortgaged Property, and upon payment of

2485269v2 / 21397.0002                    14

its fees and all other sums owing to it under this Deed of Trust, Trustee will reconvey the Mortgaged Property without warranty to the person or persons legally entitled to it. Such person or persons must pay all costs of recordation. The recitals in the reconveyance of any facts will be conclusive on all persons. The grantee in the reconveyance may be described as "the person or persons legally entitled thereto." Trustee and Beneficiary will have no duty to determine the rights of persons claiming to be rightful grantees of any reconveyance of the Property.

IX.8    Statute of Limitations.    Trustor waives all present and future statutes of limitations as a defense to any action to enforce the provisions of this Deed of Trust or to collect any indebtedness secured by this Deed of Trust to the fullest extent permitted by law.

IX.9    Definitions.    The term "Trustor" includes both the original Trustor and any subsequent owner or owners of any of the Mortgaged Property and/or any successor-in-interest of Trustor under the Guaranteed Obligations, and the term "Beneficiary" includes the original Beneficiary and also any future owner or holder, including pledgees and participants, of the Guaranteed Obligations or any interest therein. Whenever the context requires, the singular includes the plural and vice versa and each gender includes each other gender. The headings of the articles of this Deed of Trust are for convenience only and do not limit its provisions.

IX.10    No Waiver.    Beneficiary's consent to any act or omission by Trustor will not be a consent to any other or subsequent act or omission or a waiver of the need for such consent in any future or other instance.

IX.11    Successors and Assigns.    The terms of this Deed of Trust will bind and benefit the heirs, legal representatives, successors and assigns of Trustor and Beneficiary and the successors-in-interest of Trustee.

IX.12    Governing Law.    In all respects, including, without limitation, matters of construction and performance of this Deed of Trust and the obligations arising hereunder, this Deed of Trust shall be governed by, and construed in accordance with, the internal laws of the State of California applicable to contracts made and to be performed in such state without regard to principles of conflicts of laws.

IX.13    The Trustee.    Beneficiary may remove Trustee or any successor Trustee at any time or times and appoint a successor Trustee by: (i) recording a written substitution in the county where the real property covered by this Deed of Trust is located, or in any other manner permitted by law; and (ii) promptly providing written notice of such appointment of the successor Trustee and contact information for the successor Trustee to Trustor. Upon that appointment, all of the powers, rights and authority of Trustee will immediately become vested in its successor. Such substitution and appointment shall be at Beneficiary's expense unless an Event of Default has occurred, in which case, Trustor shall pay such expenses.

JUDICIAL REFERENCE PROVISION: IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CLAIM AND THE WAIVER SET FORTH IN SECTION 28.2 ABOVE IS NOT ENFORCEABLE IN SUCH PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

2485269v2 / 21397.0002

15

(a)    WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBCLAUSE (b) BELOW, ANY CLAIM SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (i) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (ii) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF OR RECOUPMENT), (iii) APPOINTMENT OF A RECEIVER, AND (iv) TEMPORARY, PROVISIONAL, OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS, OR PRELIMINARY INJUNCTIONS). THIS AMENDMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (i) - (iv) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO PARTICIPATE IN A REFERENCE PROCEEDING PURSUANT TO THIS AMENDMENT WITH RESPECT TO ANY OTHER MATTER.

(c)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(d)    EXCEPT AS EXPRESSLY SET FORTH IN THIS AMENDMENT, THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(e)    THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(f)    THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL

2485269v2 / 21397.0002

16

BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(g)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

IX.14  Requests for Notices.  Trustor requests that a copy of any notice of default and notice of sale required by law be mailed to it at the address(es) specified in Section 9.4 above.

IX.15  Attorneys' Fees.  In the event of any action at law or equity brought to enforce or interpret the terms of this agreement, including any activity in any proceeding brought under Title 11 of the United States Code, the prevailing party shall be entitled to recover its reasonable attorneys' fees, expert witness fees, and court costs.  A party asserting a proof of claim in any proceeding under Title 11 of the United States Court shall, provided that proof of claim is not successfully objected to, be deemed a "prevailing party" for purposes of this provision.

## ARTICLE X
## ADDITIONAL STATE SPECIFIC PROVISIONS

X.1    Principles Of Construction.  In the event of any inconsistencies between the terms and conditions of this Article X and the other terms and conditions of this Deed of Trust, the terms and conditions of this Article X shall control and be binding.

X.2    Environmental Provisions.

(a)    Beneficiary may waive its lien against the Mortgaged Property or any portion thereof, whether fixtures or personal property, to the extent such property is found to be "environmentally impaired" or an "affected parcel" in accordance with California Code of Civil Procedure Section 726.5 and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and Environmental Costs (as hereafter defined), including, but not limited to, seeking an attachment order under California Code of Civil Procedure Section 483.010.  The term "Environmental Costs" shall mean any costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action required under applicable law or which Beneficiary reasonably believes necessary to protect the Mortgaged Property.  As between Beneficiary and Trustor, for purposes of California Code of Civil Procedure Section 726.5, Trustor shall have the burden of proving that Trustor or any related party (or any Affiliate or agent of Trustor or any related party) was not in any way negligent in permitting the release or threatened release of the hazardous materials. Trustor acknowledges and agrees that, if this clause (a) applies, then notwithstanding any term or provision contained herein, all judgments and awards entered against Trustor shall be exceptions

17

to any nonrecourse or exculpatory provision herein or in the Guaranty, and Trustor shall be fully and personally liable for all judgments and awards entered against Trustor relating to Environmental Costs and such liability shall not be limited to the original principal amount of the obligations secured by this Deed of Trust and Trustor's obligations shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Mortgaged Property or this Deed of Trust. For the purposes of any action brought by or on behalf of Beneficiary under this Section 10.2, Trustor hereby waives the defense of laches and any applicable statute of limitations.

(b)    In the event Beneficiary elects, in accordance with California Code of Civil Procedure Section 726.5, to waive all or part of the security of this Deed of Trust and proceed against Trustor on an unsecured basis, the valuation of the Mortgaged Property, the determination of the environmentally impaired status of such security and any cause of action for a money judgment shall, at the request of Beneficiary, be referred to a referee in accordance with California Code of Civil Procedure Sections 638 et seq. Such referee shall be an impartial M.A.I. appraiser selected by Beneficiary and approved by Trustor, which approval shall not be unreasonably withheld or delayed. If the parties cannot agree on an M.A.I. appraiser approved by Trustor, either party may apply to the presiding judge of the Superior Court in which the Mortgaged Property is located to make such appointment. The decision of such referee shall be binding upon both Trustor and Beneficiary, and judgment upon the award rendered by such referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645. Trustor shall pay all reasonable costs and expenses incurred by Beneficiary in connection with any proceeding under California Code of Civil Procedure 726.5, as such Section may be amended from time to time.

(c)    Beneficiary or its agents, acting by themselves or through a court appointed receiver, may upon reasonable advance notice to Trustor, enter upon the Mortgaged Property or any part thereof and may perform such acts and things as Beneficiary deems reasonably necessary or desirable to inspect, investigate, assess, and protect the security hereof, including without limitation of any of its other rights: (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Real Property under California Civil Code Section 2929.5, to which the decision of Beneficiary as to whether there exists a release or threatened release of any hazardous material shall be deemed reasonable and conclusive as between the parties hereto; and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Real Property and/or the Improvements for hazardous substances. All reasonable costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations which Beneficiary or its agents or employees may reasonably conduct, including the reasonable fees of the engineers, laboratories, contractors, consultants and attorneys, shall become part of the indebtedness secured hereby and shall be paid by Trustor upon demand with interest at 7.00% per annum from the date when paid by Beneficiary.

(d)    Beneficiary may seek a judgment that Trustor has breached its covenants, representations, warranties and/or other provisions with respect to this Deed of Trust or the Guaranty by commencing and maintaining an action or actions in any court of competent jurisdiction for breach of contract pursuant to California Code of Civil Procedure Section 736, whether commenced prior to or after foreclosure of the Mortgaged Property, and may seek the

recovery of Environmental Costs (as such costs are described in Section 736), it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action of or to the Mortgaged Property were made by Beneficiary in good faith and are such costs as described in Section 736, Trustor acknowledges that such an action shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d or 726(b) of the California Code of Civil Procedure. All Environmental Costs incurred by Beneficiary (including court costs, consultant fees and reasonable attorneys' fees and disbursements, whether incurred in litigation or not and whether before or after judgment) shall bear interest 7.00% per annum from the date of expenditure until said sums have been paid. Beneficiary shall be entitled to bid, at the sale of the Mortgaged Property held under any provision of this Deed of Trust, the amount of said costs, expenses and interest in addition to the amount of the other obligations hereby secured as a credit bid, the equivalent of cash.

(e)    Without limiting any of the remedies provided herein, Trustor acknowledges and agrees that the provisions of this Section 10.2 and any environmental indemnity executed in connection herewith are "environmental provisions" (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Trustor relating to the Real Property (the "Environmental Provisions"). Trustor's breach of or failure to comply with the Environmental Provisions shall constitute a breach of contract entitling Beneficiary to all remedies provided under Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions. Pursuant to Section 736 of the California Code of Civil Procedure, Beneficiary's action for recovery of damages or enforcement of the Environmental Provisions shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d and 726(b) of the California Code of Civil Procedure. The rights and remedies provided for herein are separate and distinct causes of action that shall not be abrogated, modified, limited or otherwise affected by the remedies provided under Section 736(a) of the California Code of Civil Procedure.

(f)    Nothing herein shall be deemed to limit the right of Beneficiary to recover, in accordance with California Code of Civil Procedure Section 736 (as such Section may be amended from time to time), any reasonable costs, expenses, liabilities or damages, including reasonable attorneys' fees and costs, incurred by Beneficiary and arising from any covenant, obligation, liability, representation or warranty given to Beneficiary, or any order, consent decree or settlement relating to the cleanup of hazardous materials or any other "environmental provision" (as defined in such Section 736 of the California Code of Civil Procedure) relating to the Mortgaged Property or any portion thereof or the right of Beneficiary to waive, in accordance with the California Code of Civil Procedure Section 726.5 (as such Section may be amended from time to time), the security of this Deed of Trust as to any parcel of the Mortgaged Property that is "environmentally impaired" or is an "affected parcel" (as such terms are defined in such Section 726.5), and as to any personal property attached to such parcel, and thereafter to exercise against Trustor, to the extent permitted by such Section 726.5, the rights and remedies of any unsecured creditor, including reduction of Beneficiary's claim against Trustor to judgment, and any other rights and remedies permitted by law.

2485269v2 / 21397.0002                    19

X.3    <u>Trustee's Deed Recitals</u>.  The recitals of facts in any instrument delivered upon completion of any sales, as described in <u>Section 8.2</u> above, such as the existence of a default, the giving of written notice of default and notice of sale, and other facts affecting the regularity or validity of such sale or disposition, shall be conclusive proof of the trust of such facts and any such instruments shall be conclusive against all persons as to such fact recited therein.

X.4    <u>Right Of Entry</u>.  In addition to any other rights or remedies granted under this Deed of Trust but subject to the rights of lessees and any senior secured creditors, Beneficiary and its agents, acting by themselves or through a court appointed receiver, upon reasonable advance notice to Trustor and an opportunity to be present, shall have the right to enter upon the Mortgaged Property or any part thereof during regular business hours and perform such acts and things as Beneficiary deems necessary or desirable to inspect, investigate, assess, and protect the security thereof.  Without limitation of any of its other rights and subject to the provisions of this Deed of Trust, Beneficiary shall have the right to:  (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Mortgaged Property under California Civil Code Section 2929.5 to which the decision of Beneficiary as to whether there exists a release or threatened release of hazardous substances onto the Mortgaged Property shall be deemed reasonable and conclusive as between the parties hereto and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Mortgaged Property for hazardous substances.  All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations that Beneficiary or its agents or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants, and attorneys, shall be paid by Trustor five (5) business days following demand with interest at the rate of 7.00% per annum from the date paid by Beneficiary.  Such costs, if not paid for by Trustor following demand, may be added to the principal balance of the sums due under the Guaranteed Obligations and this Deed of Trust and shall bear interest thereafter until paid at the rate of 7.00% per annum.

X.5    <u>Border Zone Property</u>.  To Trustor's actual knowledge, Trustor represents and warrants that no portion of the Real Property and/or the Improvements has been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining the Real Property that is reasonably likely to cause the Real Property or any part thereof to be designated as Border Zone Property.

X.6    <u>Insurance Notice</u>.  Beneficiary hereby notifies Trustor of the provisions of Section 2955.5(a) of the California Civil Code, which reads as follows:

> "No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

This disclosure is being made by Beneficiary to Trustor pursuant to Section 2955.5(b) of the California Civil Code.  Trustor hereby acknowledges receipt of this disclosure and acknowledges

2485269v2 / 21397.0002

20

that this disclosure has been made by Beneficiary before execution of any note or security document evidencing or securing the Guaranteed Obligations.

X.7    Commercial Indebtedness. Trustor represents and warrants that the Guaranteed Obligations incurred and to be incurred are for commercial purposes, and not for personal, household or consumer purposes.

*[Signature appears on the following page.]*

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing the day and year first hereinabove written.

**TRUSTOR:**

Peter J. Compton

By: _____

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF ___Santa Barbara County___   )

On __01/10/2020__, before me, __A. Noriega, Notary Public__, a Notary Public, personally appeared __Peter J. Compton__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SIGNATURE _____          SEAL
A. Noriega, Notary Public

A. NORIEGA
Notary Public - California
Santa Barbara County
Commission # 2224120
My Comm. Expires Dec 31, 2021

2485269v2 / 21397.0002                    22

Exhibit "A"

The Land situated in the County of Santa Barbara, City of Santa Maria, State of California, and is described as follows:

PARCEL ONE:

Being a portion of Lot 14 of Furukawa Industrial Park II, Tract 5268 in the City of Santa Maria, County of Santa Barbara, State of California, as per Map recorded in Book 120, Pages 27, 28 and 29 of Maps, in the Office of the County Recorder of Santa Barbara County, being more particularly described as follows:

Beginning at the Northwest corner of said Lot 14; thence along the Northerly line of said Lot 14 South 88° 54' 45" East 121.00 feet; thence leaving said line South 01° 01' 44" West 329.34 feet to a point on the Southerly line of said Lot 14; thence along the Southerly line of said Lot 14 North 88° 58' 16" West 121.00 feet to a point being the Southwest corner of said Lot 14; thence along the Westerly line of said Lot 14 North 01° 01' 44" East 329.47 feet to the point of beginning.

Said land also shown as Lot 1 of Hayes Tract No. 5792 Lot Line Adjustment recorded on June 14, 2001 as Instrument No. 01-48057 of Official Records of said County.

Excepting therefrom all oil, gas and other hydrocarbon substances in and under said land, together with the right of ingress and egress at all times for the propose of mining, drilling and exploring for said substances in and under said land.

PARCEL TWO:

An easement for drainage purposes over a portion of Lot 2 of Tract 5792 in the City of Santa Maria, County of Santa Barbara, State of California, as per Document recorded as Instrument No. 01-48057 of Official Records of Santa Barbara County being more particularly described as follows:

Being at the Northwest corner of said Lot 2; thence along the Northerly line of said Lot 2 South 88° 54' 45" East 60.00 feet; thence leaving said line South 01° 01' 44" West 50.00 feet; thence North 88° 54' 45" West 60.00 feet to a point on the West line of said Lot 2; thence along said West line of Lot 2 North 01° 04' 44" East 50.00 feet to the point of beginning.

Excepting therefrom all oil, gas and other hydrocarbon substances in and under said land, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring for said substances in and under said land.

APN: 111-440-31

# EXHIBIT 4

# SECURITY AGREEMENT

**Debtor: Valley Farm Supply, Inc.**
    **1124 Tama Lane**
    **Santa Maria, CA, 93455**

**Secured Party: Simplot AB Retail, Inc.**
    **1099 W. Front Street**
    **Boise, ID 83707**

**THIS SECURITY AGREEMENT dated January 3, 2020, is made and executed between Valley Farm Supply, Inc., ("Debtor") and Simplot AB Retail, Inc. ("Secured Party").**

**GRANT OF SECURITY INTEREST. For valuable consideration, Debtor grants to Secured Party a security interest in the Collateral to secure the full, prompt and complete payment and performance of each and every debt, liability and obligation of every type and description which the Debtor or Peter J. Compton ("Peter") may now or at any time owe to the Secured Party or any predecessor-in-interest thereof, whether now existing or hereafter arising, direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, independent, joint, several or joint and several, arising under that certain Settlement and Release Agreement between the Debtor and Secured Party (the "Settlement Agreement") and all related security documents, (all such debts, liabilities and obligations being herein collectively referred to as the "Indebtedness") and agrees that Secured Party shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Secured Party may have by law.**

**ASSIGNMENT OF DEBT.** The Parties acknowledge that on or about July 1, 2019, J.R. Simplot Company assigned all credit agreements and invoices associated with Debtor to Secured Party. Debtor agrees that said assignment was in all ways valid and enforceable and waives any challenge thereto.

**COLLATERAL DESCRIPTION.** The word **"Collateral"** as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Debtor is giving to Secured Party a security interest for the payment of the Indebtedness and performance of all other obligations under this Agreement and related loan documents:

**All Inventory, Accounts, and Equipment**

1. The Collateral includes any and all of Debtor's present and future **inventory** (including consigned inventory), or any interest therein, related equipment, goods, merchandise and other items of personal property, no matter where located, of every type and description, including without limitation any and all of Debtor's present and future raw materials, components, work-in-process, finished items, packing and shipping materials, containers, items held for sale, Items held for lease, items for which Debtor is lessor, goods to be furnished under contract for services, materials used or consumed in Debtor's business, whether held by Debtor or by others, and all documents of title, warehouse receipts, bills of lading, and other documents of every type covering all or any part of the foregoing, and any and all additions thereto and substitutions or replacements therefor, and all accessories, attachments, and accessions thereto, whether added now or later, and all products and proceeds derived or to be derived therefrom, including without limitation all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement, or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents, and notes that may be derived from the sale, lease or other disposition of any of the foregoing, and any rights of Debtor to collect or enforce payment thereof, as well as to enforce any guaranties of the forgoing and security therefor, and all of Debtor's present and future general intangibles in any way related or pertaining to the ownership, operation, use, or collection of any of the foregoing, including without limitation Debtor's books, records, files, computer disks and software, and all rights that Debtor may have with regard thereto. Inventory includes inventory temporarily out of Debtor's possession or custody and all returns on accounts, chattel paper and instruments.

2.  The Collateral includes any and all of Debtor's present and future **accounts**, or any interest thereon, accounts receivable, other receivables, contract rights, instruments, documents, notes, and all other similar obligations and indebtedness that may now and in the future be owed to or held by Debtor from whatever source arising, and all monies and proceeds payable thereunder, and all of Debtor's rights and remedies to collect and enforce payment and performance thereof, as well as to enforce any guaranties of the foregoing and security therefor, and all of Debtor's present and future rights, title and interest in and with respect to the goods, services, and other property that may give rise to or that may secure any of the foregoing, including without limitation Debtor's insurance rights with regard thereto, and all present and future general intangibles of Debtor in any way related or pertaining to any of the foregoing, including without limitation Debtor's account ledgers, books, records, files, computer disks and software, and all rights that Debtor may have with regard thereto.

3.  The Collateral includes any and all of Debtor's now owned or hereafter acquired **equipment**, or any interest thereon, including but not limited to agricultural machinery, farm equipment, furnishings and fixtures of every type and description, and all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation any equipment purchased with the proceeds, and all insurance proceeds and refunds of insurance premiums, if any, and any sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement or other process, and any and all present and future accounts, chattel paper, instruments, notes and monies that may be derived from the sale, lease or other disposition of any of the foregoing, any rights of Debtor to collect or enforce payment thereof as well to enforce any guaranties of the foregoing and security therefor, and all present and future general intangibles of Debtor in any way related or pertaining to the ownership, operation, or use of the foregoing, and any rights of Debtor with regard thereto.

**RIGHT OF SETOFF.** Secured Party reserves a right of setoff in any and all amounts owed by Secured Party (in any capacity) to Debtor.

**DEBTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**
With respect to the Collateral, Debtor represents and promises to Secured Party that:

1.  **Perfection of Security Interest**. Debtor agrees to execute financing statements and to take whatever other actions are requested by Secured Party to perfect and continue Secured Party's security interest in the Collateral. Upon request of Secured Party, and with the permission of any senior secured lender in the Collateral, Debtor will deliver to Secured Party any and all of the documents evidencing or constituting the Collateral, and Debtor will note Secured Party's interest upon any and all chattel paper and instruments if not delivered to Secured Party for possession by Secured Party, subject to the rights of any senior secured lenders This Security Agreement will terminate upon payment of the Indebtedness in full.

2.  **Notices to Secured Party**. Debtor will promptly notify Secured Party in writing at Secured Party's address shown above (or such other addresses as Secured Party may designate from time to time) prior to any (a) change in Debtor's name; (b) change in Debtor's assumed business name(s); (c) change in the management of the Corporation Debtor; (d) change in the authorized signer(s); (e) change in Debtor's principal office address; (f) change in Debtors state of organization; (g) conversion of Debtor to a new or different type of business entity; or (h) change in any other aspect of Debtor that directly or indirectly relates to any agreements between Debtor and Secured Party. No change in Debtor's name or state of organization will take effect until after Secured Party has received notice.

3.  **Location of the Collateral**. Except in the ordinary course of Debtor's business, Debtor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Debtor's address shown above or at such other locations as are acceptable to Secured Party in writing. Upon Secured Party's request, Debtor will deliver to Secured Party in form satisfactory to Secured Party a schedule of real properties and Collateral locations relating to Debtor's operations, including without limitation the following: (a) all real property

2485271v2 / 21397.0002 SECURITY AGREEMENT - 2

Debtor owns or is purchasing; (b) all real property Debtor is renting or leasing; (c) all storage facilities Debtor owns, rents, leases, or uses; and (d) all other properties where Collateral is or may be located. Debtor promptly shall procure the execution, acknowledgment, and delivery of such subordination, consent, waiver, estoppel, and other agreements as Secured Party shall require by holders of any encumbrances upon or by owners of such lands where Collateral is or will be located..

4. **Removal of the Collateral**. Except in the ordinary course of Debtor's business, including the sales of inventory, Debtor shall not remove the Collateral from its existing location without Secured Party's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Debtor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without Secured Party's prior written consent. Debtor shall, whenever requested, advise Secured Party of the exact location of the Collateral.

5. **Transactions Involving Collateral**. Except for inventory sold or accounts collected in the ordinary course of Debtor's business, or as otherwise provided for in this Agreement, Debtor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Debtor is not in default under this Agreement, Debtor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Debtor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Except for liens currently existing as of the date of entry into this Agreement, and replacement liens relating to the extension or replacement of the existing lines of credit. Debtor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, and the pre-existing senior liens, without the prior written consent of Secured Party. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Secured Party, and subject to the prior rights of senior secured lenders, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Secured Party and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Secured Party to any sale or other disposition. Upon receipt, Debtor shall immediately deliver any such proceeds to Secured Party.

6. **Authorization**. Debtor represents that the individual signing this Agreement on Debtor's behalf is duly authorized to do so both under applicable law and by Valley Farm Supply, Inc. Debtor waives any defense to enforcement of this Agreement whose basis is that the signatory hereto was not authorized for any reason to bind the Valley Farm Supply, Inc. entity (or any successor-in-interest thereof) to this Agreement.

7. **Title**. Debtor represents and warrants to Secured Party that Debtor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement and the senior liens described in the Settlement Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Secured Party has specifically consented, which are the liens described in the Settlement Agreement. Debtor shall defend Secured Party's rights in the Collateral against the claims and demands of all other persons.

8. **Repairs and Maintenance**. Debtor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Debtor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

9. **Inspection of Collateral**. Secured Party and Secured Party's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

2485271v2 / 21397.0002  SECURITY AGREEMENT - 3

10. **Taxes, Assessments and Liens.** Debtor will pay when due all taxes, assessments and liens upon the Collateral.

11. **Compliance with Governmental Requirements.** Debtor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral. Debtor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Secured Party's interest in the Collateral, in Secured Party's opinion, is not jeopardized.

12. **Hazardous Substances.** Debtor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Debtor's due diligence in investigating the Collateral for Hazardous Substances. Debtor hereby (a) releases and waives any future claims against Secured Party for indemnity or contribution in the event Debtor becomes liable for cleanup or other costs under any Environmental Laws, and (b) agrees to indemnify, defend, and hold harmless Secured Party against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

13. **Maintenance of Casualty Insurance.** Debtor shall procure and maintain all risks insurance, including without limitation fire, hail, theft and liability coverage together with such other insurance as Secured Party may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Secured Party and issued by a company or companies reasonably acceptable to Secured Party. Debtor, upon request of Secured Party, will deliver to Secured Party from time to time the policies or certificates of insurance in form satisfactory to Secured Party, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Secured Party and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Secured Party will not be impaired in any way by any act, omission or default of Debtor or any other person. In connection with all policies covering assets in which Secured Party holds or is offered a security interest, Debtor will provide Secured Party with such loss payable or other endorsements as Secured Party may require. If Debtor at any time fails to obtain or maintain any insurance as required under this Agreement, Secured Party may (but shall not be obligated to) obtain such insurance as Secured Party deems appropriate, including if Secured Party so chooses "single interest insurance," which will cover only Secured Party's interest in the Collateral.

14. **Application of Insurance Proceeds.** Debtor shall promptly notify Secured Party of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Secured Party may make proof of loss if Debtor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be either applied to repair or replacement of the damaged or destroyed Collateral, or to repay senior secured debt, at the option of Debtor. Any proceeds which have not been disbursed within six (6) months after their receipt for one or both such uses, or which Debtor has not committed to the repair or restoration of the Collateral, shall be used to prepay the Indebtedness to Secured Party

15. **Insurance Reports.** Debtor, upon request of Secured Party, shall furnish to Secured Party reports on each existing policy of insurance showing such information as Secured Party may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy. In addition, Debtor shall upon request by Secured Party (however not more often than annually) have an independent appraiser satisfactory to Secured Party determine, as applicable, the cash value or replacement cost of the Collateral, at the cost and expense of Secured Party.

16. **Financing Statements.** Debtor authorizes Secured Party to file a UCC financing statement to perfect Secured Party's security interest. At Secured Party's request, Debtor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Secured Party's security interest in the Property. Debtor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Secured Party is required by law to pay such fees and costs. Debtor irrevocably appoints Secured Party to execute documents necessary to transfer title if there is a default, subject to the rights of senior lenders. Debtor will promptly notify Secured Party of any change to Debtor's name or the name of any individual Debtor, any individual who is a partner for a Debtor, and any individual who is a trustee or settlor or trustor for a Debtor under this Agreement. Debtor will also promptly notify Secured Party of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Debtor or any individual for whom Debtor is required to provide notice regarding name changes.

**DEBTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Subject to the duly perfected rights of senior secured lenders, Until default and except as otherwise provided below with respect to accounts and above in the paragraph titled "Transactions Involving Collateral," Debtor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Debtor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Secured Party is required by law to perfect Secured Party's security interest in such Collateral. Until otherwise notified by Secured Party, Debtor may collect any of the Collateral consisting of accounts. Upon the occurrence of an Event of Default, Secured Party may exercise Its rights to collect the accounts and to notify account debtors to make payments directly to Secured Party for application to the Indebtedness. If Secured Party at any time has possession of any Collateral, whether before or after an Event of Default, Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Secured Party takes such action for that purpose as Debtor shall request or as Secured Party, in Secured Party's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Debtor shall not of itself be deemed to be a failure to exercise reasonable care. Secured Party shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness. Debtor agrees to pursue and conduct diligently Debtor's business operations for as long as this Agreement remains in effect. Debtor further agrees that Secured Party may from time to time enter upon Debtor's premises for the purpose of ascertaining whether Debtor is properly and prudently conducting Debtor's business operations. Debtor shall promptly pay when due all costs and expenses associated with Debtor's commercial operations.

**SECURED PARTY'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Secured Party's interest in the Collateral or if Debtor fails to comply with any provision of this Agreement, or the Settlement Agreement or related security agreements (in any capacity), including but not limited to Debtor's failure to discharge or pay when due any amounts Debtor is required to discharge or pay under this Agreement or under the Settlement Agreement or related security agreements Secured Party on Debtor's behalf may (but shall not be obligated to) take any action that Secured Party deems appropriate, subject to the prior rights of senior secured lenders, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Secured Party for such purposes will then bear interest at the rate charged under the Settlement Agreement related to this Agreement from the date incurred or paid by Secured Party to the date of repayment by Debtor. All such expenses will become a part of the Indebtedness and, at Secured Party's option, will (1) be payable on demand; (2) be added to the balance of Indebtedness and be apportioned among and be payable with any installment payments to become due during either (a) the term of any applicable insurance policy; or (b) the remaining term of the loan which is the subject of the Settlement Agreement; or (3) be treated as a balloon payment which will be due and payable at the maturity date of the loan which is the subject of the Settlement Agreement. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Secured Party may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

1.   **Payment Default.** Debtor or Peter fails to make any payment when due under the Indebtedness, after notice and failure to cure as provided in the Settlement Agreement

2.   **Other Defaults.** Debtor or Peter fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the related loan documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Secured Party and Debtor or Peter which secures or guaranties the payment of the obligations subject to the Settlement Agreement.

3.   **Default in Favor of Third Parties.** Peter or Debtor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantors, Peter's, or Debtor's property or ability to perform their respective obligations under this Agreement or any of the related loan documents.

4.   **False Statements.** Any warranty, representation or statement made or furnished to Secured Party by Peter (or any agent, employee, or other person acting at the direction or behest thereof), by Debtor or on Debtor's behalf under this Agreement or the related loan documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

5.   **Defective Collateralization.** This Agreement or any of the related loan documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

6.   **Insolvency.** The dissolution or termination of Debtor's existence as a going business, the insolvency of Debtor (or Peter), the appointment of a receiver for any part of Debtor's (or Peter's) property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor or Peter.

7.   **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Debtor (or Peter) or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Debtor's (or Peter's) accounts, including deposit accounts, with Secured Party. However, this Event of Default shall not apply if there is a good faith dispute by Debtor (or Peter) as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Debtor (or Peter) gives Secured Party written notice of the creditor or forfeiture proceeding and deposits with Secured Party monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Secured Party, in its sole discretion, as being an adequate reserve or bond for the dispute.

8.   **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

9.   **Adverse Change.** A material adverse change occurs in Debtor's (or Peter's) financial condition, or Secured Party believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Secured Party shall have all the rights of a secured party under the Uniform Commercial Code. In addition and without limitation, Secured Party may exercise any one or more of the following rights and remedies:

1.   **Accelerate Indebtedness.** Secured Party may declare the entire Indebtedness, including any prepayment penalty which Debtor would be required to pay, immediately due and payable, without notice of any kind to Debtor.

2.  **Assemble Collateral. Subject to the duly perfected rights of senior secured lenders,** Secured Party may require Debtor to deliver to Secured Party all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party. Secured Party also shall have full power to enter upon the property of Debtor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Debtor agrees Secured Party may take such other goods, provided that Secured Party makes reasonable efforts to return them to Debtor after repossession.

3.  **Sell the Collateral. Subject to the duly perfected rights of senior secured lenders,** Secured Party shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Secured Party's own name or that of Debtor. Secured Party may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Indebtedness rate from date of expenditure until repaid.

4.  **Appoint Receiver. Subject to the duly perfected rights of senior secured lenders,** Secured Party shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Secured Party's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Secured Party shall not disqualify a person from serving as a receiver.

5.  **Collect Revenues, Apply Accounts. Subject to the duly perfected rights of senior secured lenders,** Secured Party, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Secured Party may at any time in Secured Party's discretion transfer any Collateral into Secured Party's own name or that of Secured Party's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Secured Party may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Secured Party may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Secured Party may, on behalf of and in the name of Debtor, receive, open and dispose of mail addressed to Debtor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Secured Party may notify account debtors and obligors on any Collateral to make payments directly to Secured Party.

6.  **Obtain Deficiency.** If Secured Party chooses to sell any or all of the Collateral, Secured Party may obtain a judgment against Debtor for any deficiency remaining on the Indebtedness due to Secured Party after application of all amounts received from the exercise of the rights provided in this Agreement. Debtor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

7. **Other Rights and Remedies.** Secured Party shall have all the rights and remedies of a secured creditor under the provisions of the California Commercial Code, as may be amended from time to time. In addition, Secured Party shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

8. **Election of Remedies.** Except as may be prohibited by applicable law, all of Secured Party's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Secured Party to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Debtor under this Agreement, after Debtor's failure to perform, shall not affect Secured Party's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

1. **Amendments.** This Agreement, together with any related security documents pertaining to or arising pursuant to the Debtor's obligations under the Settlement Agreement, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

2. **Attorneys' Fees; Expenses.** Debtor agrees to pay upon demand all of Secured Party's costs and expenses, including Secured Party's attorneys' fees and Secured Party's legal expenses, incurred in connection with the enforcement of this Agreement. Secured Party may hire or pay someone else to help enforce this Agreement, and Debtor shall pay the costs and expenses of such enforcement. Costs and expenses include Secured Party's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Debtor also shall pay all court costs and such additional fees as may be directed by the court.

3. **Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

4. **Governing Law. With respect to procedural matters related to the perfection and enforcement of Secured Party's rights against the Collateral, this Agreement will be governed by the laws of the State of California. In all other respects, this Agreement will be governed by the laws of the State of California without regard to its conflicts of law provisions. The transaction that is evidenced by this Agreement has been applied for, considered, approved and made, and all necessary related documents to the Debtor's obligations under the Settlement Agreement have been accepted by Secured Party in the State of California.**

5. **Choice of Venue.** If there is a lawsuit or other dispute involving the enforcement or interpretation of this Agreement, the partiesr agree to submit to the jurisdiction of the courts of Santa Barbara County, State of California. Both parties hereby waive any challenge or objection to Santa Barbara County as a venue on any grounds whatsoever, including inconvenience of forum.

6. **Joint and Several Liability.** All obligations of Debtor under this Agreement shall be joint and several, and all references to Debtor shall mean each and every Debtor. This means that each Debtor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Secured Party to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

7. **Preference Payments.** Any monies Secured Party pays because of an asserted preference claim in Debtor's bankruptcy will become a part of the Indebtedness and, at Secured Party's option, shall be payable by Debtor as provided in this Agreement,

8. **No Waiver by Secured Party.** Secured Party shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver by Secured Party of a provision of this Agreement shall not prejudice or constitute a waiver of Secured Party's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Secured Party, nor any course of dealing between Secured Party and Debtor, shall constitute a waiver of any of Secured Party's rights or of any of Debtor's obligations as to any future transactions. Whenever the consent of Secured Party is required under this Agreement, the granting of such consent by Secured Party in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Secured Party.

9. **Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by email, telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Debtor agrees to keep Secured Party informed at all times of Debtor's current address. Unless otherwise provided or required by law, if there is more than one Debtor, any notice given by Secured Party to any Debtor is deemed to be notice given to all Debtors.

10. **Power of Attorney.** Debtor hereby appoints Secured Party as Debtor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties, who are junior to the Secured Party. Secured Party may at any time, and without further authorization from Debtor, file a carbon photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Debtor will reimburse Secured Party for all expenses for the perfection and the continuation of the perfection of Secured Party's security interest in the Collateral.

11. **Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Debtor irrevocably waives, disclaims and relinquishes all claims against such other person which Debtor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution, subrogation, or exoneration.

12. **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

13. **Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Debtor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Debtor, Secured Party, without notice to Debtor, may deal with Debtor's successors with reference to this Agreement and

the Indebtedness by way of forbearance or extension without releasing Debtor from the obligations of this Agreement or liability under the Indebtedness.

14. **Survival of Representations and Warranties.** All representations, warranties, and agreements made by Debtor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Debtor's Indebtedness shall be paid in full.

15. **Time is of the Essence.** Time is of the essence in the performance of this Agreement.

16. JUDICIAL REFERENCE PROVISION:

(a)   ANY DISPUTE REGARDING THE INTERPRETATION, ENFORCEMENT, OR ENFORCEABILITY OF THIS AGREEMENT OR ANY OTHER DISPUTE REGARDING, RELATING TO, OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREIN SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)   UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(c)   THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(d)   THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(e)   THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND

PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(f) THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

DEBTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGRICULTURAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 3, 2020.

DEBTOR: Valley Farm Supply, Inc.

_____
Name: Peter J. Compton
Title: President

SECURED PARTY: Simplot AB Retail, Inc.

_____
Name:
Title:

PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(f)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

DEBTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGRICULTURAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 3, 2020.

DEBTOR: Valley Farm Supply, Inc.

Name: Peter J. Compton
Title: President

SECURED PARTY: Simplot AB Retail, Inc.

Name: James B. Alderman
Title: Secretary

# EXHIBIT 5

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
UCC DEPARTMENT
8884278713

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
JOHN DEERE FINANCIAL
6400 NW 86TH ST
PO BOX 6630
Johnston, IA 50131
USA

DOCUMENT NUMBER: 70363920002
FILING NUMBER: 18-7650674791
FILING DATE: 05/28/2018 10:00

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| COMPTON | PETER | JAMES | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 850 RIATA LN | NIPOMO | CA / 934449475 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VALLEY FARM SUPPLY, INC. | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1124 TAMA LN | SANTA MARIA | CA / 934551128 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Deere & Company | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 6400 NW 86TH ST PO BOX 6600 | JOHNSTON | IA / 501316630 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
John Deere MX10 Rotary / Flail Cutter S/N: 040702 ; Strathmore SM10 Disk S/N: 1804 ; together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box ☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
3684639

FILING OFFICE COPY

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
UCC DEPARTMENT
8884278713

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
JOHN DEERE FINANCIAL
6400 NW 86TH ST
PO BOX 6630
Johnston, IA 50131
USA

DOCUMENT NUMBER: 58914550002
FILING NUMBER: 16-7563008248
FILING DATE: 12/27/2016 07:59

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME<br>COMPTON | FIRST PERSONAL NAME<br>PETER | ADDITIONAL NAME(S)/INITIAL(S)<br>JAMES | | SUFFIX |
| 1c. MAILING ADDRESS<br>850 RIATA LN | CITY<br>NIPOMO | STATE<br>CA | POSTAL CODE<br>934449475 | COUNTRY<br>USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME<br>VALLEY FARM SUPPLY, INC. | | | | |
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS<br>1124 TAMA LN | CITY<br>SANTA MARIA | STATE<br>CA | POSTAL CODE<br>934551128 | COUNTRY<br>USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>Deere & Company | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>6400 NW 86TH ST PO BOX 6600 | CITY<br>JOHNSTON | STATE<br>IA | POSTAL CODE<br>501316630 | COUNTRY<br>USA |

4. COLLATERAL: This financing statement covers the following collateral:
John Deere 5100 Utility Tractor S/N: 401224 ; together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
3310594

FILING OFFICE COPY

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
UCC DEPARTMENT
8884278713

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
JOHN DEERE FINANCIAL
6400 NW 86TH ST
PO BOX 6630
Johnston, IA 50131
USA

DOCUMENT NUMBER: 57904130002
FILING NUMBER: 16-7553503732
FILING DATE: 10/31/2016 10:01

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| COMPTON | PETER | JAMES | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 850 RIATA LN | NIPOMO | CA / 9344449475 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VALLEY FARM SUPPLY, INC. | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1124 TAMA LN | SANTA MARIA | CA / 934551128 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Deere & Company | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 6400 NW 86TH ST PO BOX 6600 | JOHNSTON | IA / 501316630 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
John Deere 825 Gator S/N: 111523 ; together with (1) all attachments, accessories and components, repairs and improvements, (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, thereto including, without limitation, insurance, sale, lease and rental proceeds, and proceeds of proceeds.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
3275720

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions
800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

DOCUMENT NUMBER: 68506250002
FILING NUMBER: 18-7637797297
FILING DATE: 03/13/2018 10:22

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| VALLEY FARM SUPPLY, INC. | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 1124 TAMA LANE | CITY SANTA MARIA | STATE CA | POSTAL CODE 93455-1128 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC. | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS P.O. Box 9050 | CITY Dallas | STATE TX | POSTAL CODE 75019-9050 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
ONE (1) TAYLOR-DUNN
MODEL # B5-440-48
SERIAL # 203727

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
CA-0-63050201-54807471

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions
800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

DOCUMENT NUMBER: 71437160002
FILING NUMBER: 18-7657943050
FILING DATE: 07/09/2018 10:35

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VALLEY FARM SUPPLY, INC. | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 850 RIATA LANE | NAPOMA | CA | 93444 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC. | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 9050 | Dallas | TX | 75019-9050 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
ONE (1) TOYOTA
MODEL # 8FGU25
SERIAL # 89311

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)   ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
CA-0-65204343-55479294

FILING OFFICE COPY

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company
800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

DOCUMENT NUMBER: 68692500002
FILING NUMBER: 18-7639091327
FILING DATE: 03/20/2018 12:06

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Valley Farm Supply, Inc. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 12590 Huasna River Rd | Arroyo Grande | CA | 93420 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Wells Fargo Bank, N.A. | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 300 Tri-State International Ste 400 | Lincolnshire | IL | 60069 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
The equipment described below and all equipment parts, accessories, substitutions, additions, accessions and replacements thereto and thereof, now or hereafter installed in, affixed to, or used in conjunction therewith and the proceeds thereof, together with all installment payments, insurance proceeds, other proceeds and payments due and to become due arising from or relating to said equipment.

1 new 2018- Manitou Rough Terrain Truck MSI-30T s/n 973195

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    **6b.** Check only if applicable and check only one box ☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[144199396]

FILING OFFICE COPY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company
800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

DOCUMENT NUMBER: 69381310002
FILING NUMBER: 18-76439938
FILING DATE: 04/17/2018 07:43

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
18-7639091327

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes: **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☑ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☑ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:
The equipment described below and all equipment parts, accessories, substitutions, additions, accessions and replacements thereto and thereof, now or hereafter installed in, affixed to, or used in conjunction therewith and the proceeds thereof, together with all installment payments, insurance proceeds, other proceeds and payments due and to become due arising from or relating to said equipment.

1-Manitou Forklift M30-4WD Rough Terrain sn 797692

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Wells Fargo Bank, N.A. | | | |
| OR | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Debtor:Valley Farm Supply, Inc. [145397482]

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Mike Ray, 515-251-2800**

B. E-MAIL CONTACT AT FILER (optional)
**dsmcashsecurity@dllgroup.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ **AGCO Finance LLC** ¬
**P.O. Box 4000**
**Johnston, IA 50131-9854**
⌐ ¬

**16-7510223128**
**02/17/2016 17:00**

**FILED**
CALIFORNIA
SECRETARY OF STATE
**SOS**

**53488080002** UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **VALLEY FARM SUPPLY, INC.** | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS **1124 TAMA LANE** | CITY **NIPOMO** | STATE **CA** / POSTAL CODE **93444** | COUNTRY **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **AGCO FINANCE LLC** | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS **P.O. BOX 2000** | CITY **JOHNSTON** | STATE **IA** / POSTAL CODE **50131-0020** | COUNTRY **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**CATERPILLAR, D5KII, DOZER**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: 6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
001-454724    CA-State   NS/C

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)
International Association of Commercial Administrators (IACA)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Gisella Melendez
800-331-3282

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Lien Solutions
2929 ALLEN PARKWAY, Suite#3300
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 64679470002
FILING NUMBER: 17-7610921973
FILING DATE: 10/16/2017 07:33

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| VALLEY FARM SUPPLY, INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1124 TAMA LANE | SANTA MARIA | CA | 93458 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CATERPILLAR FINANCIAL SERVICES CORPORATION | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2120 WEST END AVE | NASHVILLE | TN | 372030996 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ONE (1) CATERPILLAR 279D COMPACT TRACK LOADER S/N: GTL04641
ONE (1) CATERPILLAR HYDRAULIC QUICK COUPLER
ONE (1) CATERPILLAR PL240 PRODUCT LINK
ONE (1) CATERPILLAR 72" GENERAL PURPOSE BUCKET WITH BOLT-ON CUTTING EDGE
And substitutions, replacements, additions and accessions thereto, now owned or hereafter acquired and proceeds thereof. The above collateral is within the scope of Article 9 of the Uniform Commercial Code (if this statement is filed in New Jersey, specifically Chapter 9 of Title 12A, pursuant to 12A:9-102 and 12A:9-109).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
CA-0-61020314-54095989

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Community Bank of Santa Maria
1421 S. Broadway, P.O. Box 5307
Santa Maria, California 93456

08-7146488733

02/04/2008 17:00

FILED
CALIFORNIA
SECRETARY OF STATE

SOS

15815510002    UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Valley Farm Supply, Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO Box 370 | Nipomo | CA | 93444 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION California | 1g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Community Bank of Santa Maria | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1421 S. Broadway P. O. Box 5307 | Santa Maria | CA | 93456 | USA |

**4.** This FINANCING STATEMENT covers the following collateral: All of the following which Debtor owns now or in the future, together with all parts, accessories, repairs, replacements, improvements, and accessions, and wherever located: INVENTORY: All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business. EQUIPMENT: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create or perfect a valid security interest in all of Debtor's equipment. ACCOUNTS AND OTHER RIGHTS TO PAYMENT: All rights to payments, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor. GENERAL INTANGIBLES: All general intangibles including, but not limited to, tax refunds, patents  (CONTINUED)

| 5. ALTERNATIVE DESIGNATION [if applicable]: □ LESSEE/LESSOR □ CONSIGNEE/CONSIGNOR □ BAILEE/BAILOR □ SELLER/BUYER □ AG. LIEN □ NON-UCC FILING |
|---|
| 6. This FINANCING STATEMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  ☒ All Debtors □ Debtor 1 □ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**

411737600

Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ 5/30/2001

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | 9a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | Valley Farm Supply, Inc. | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| | 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| | 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

and applications for patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

158155*0002

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years

☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

FILING OFFICE COPY -- NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)      Bankers Systems, Inc., St. Cloud, MN  Form UCC-1ADD-LAZ  5/30/2001

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Vanessa Cantu
805-922-2900

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
COMMUNITY BANK OF SANTA MARIA
2739 Santa Maria Way
P.O. BOX 5307
Santa Maria, CA 93456
USA

**DOCUMENT NUMBER:** 63954690002
**FILING NUMBER:** 17-76050846
**FILING DATE:** 09/11/2017 16:30

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 08-7146488733 | |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | a. ORGANIZATION'S NAME COMMUNITY BANK OF SANTA MARIA | | | |
|---|---|---|---|---|
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
411737600 / 412165100

FILING OFFICE COPY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
JUDY ZAVALA
805-922-2900

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
COMMUNITY BANK OF SANTA MARIA
1421 S. BROADWAY
P.O. BOX 5307
Santa Maria, CA 93456
USA

DOCUMENT NUMBER: 34576510003
FILING NUMBER: 12-73287531
FILING DATE: 09/13/2012 10:03
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE #**
08-7146488733

**1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.**

**2. ☐ TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3. ☑ CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4. ☐ ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**

**6a. ORGANIZATION'S NAME**

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

**7a. ORGANIZATION'S NAME**

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|
| | | | | |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

**a. ORGANIZATION'S NAME**
COMMUNITY BANK OF SANTA MARIA

OR

| b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**
Ln 411737600

**FILING OFFICE COPY**

**EXHIBIT D**

SIMPLOT AB RETAIL, INC. – DBA SIMPLOT GROWER SOLUTIONS
*CONTINUING PERSONAL GUARANTY*

## SIMPLOT AB RETAIL, INC.
### (DBA SIMPLOT GROWER SOLUTIONS)

### CONTINUING PERSONAL GUARANTY

1.    In consideration of Simplot AB Retail, Inc., dba Simplot Grower Solutions ("**Simplot**" which, for purposes of this Guaranty, includes each of Simplot's affiliated entities) granting (or continuing to grant) credit to the Applicant named on the signature page below ("**Applicant**") (which is a corporation owned (in whole or in part) by Guarantor) or providing certain accommodations to Applicant or Guarantor including, without limitation, those accommodations set forth in that certain Settlement and Release Agreement by and among Simplot, the Applicant and the Guarantor (the "Settlement Agreement"), the undersigned Guarantor hereby guaranties (as primary obligor and not only as surety) the full and timely payment and performance of all of Applicant's Obligations to Simplot, and promises to pay when due (whether or not suit is brought) all monies Applicant at any time owes to Simplot pursuant to the Settlement Agreement and related security agreements.    Guarantor understands and acknowledges that Simplot is under no obligation to extend further credit to Applicant Valley Farm Supply Inc. or Guarantor.  Guarantor agrees that should any indebtedness arise in the future as a result of any extension of credit by Simplot to Applicant Guarantor will at that time execute an additional guaranty in a form acceptable to Simplot. If for any reason Applicant does not pay any amount it owes to Simplot thereunder, the Guarantor will immediately on demand pay the relevant amount to Simplot without Simplot having to take action against Applicant or Guarantor. The "**Obligations**" covered by this Guaranty are any and all financial and other obligations of the Applicant to Simplot created by the Settlement    Agreement    and    related    security agreements, including all debts, liabilities and obligations of every kind arising therefrom, whether direct or indirect, absolute or contingent, liquidated or unliquidated, whether of the same or a different nature and whether existing now or in the future, including interest thereon and all costs, expenses, fees (including reasonable attorneys' fees and expert witness fees) paid or incurred by Simplot at any time in attempting to collect any of the foregoing, to realize on any collateral securing any of the foregoing or this Guaranty, and to enforce this Guaranty, whether such costs, expenses or fees are paid or incurred before or after starting litigation or at trial, on appeal, after judgment or in any bankruptcy or other proceeding.

2.    Guarantor acknowledges that it will materially benefit from Applicant's relationship with Simplot and the credit Simplot may provide, that Simplot would not extend or continue to extend credit to Applicant without this Guaranty, that Simplot would not provide certain accommodations to Applicant without this Guaranty, and that this Guaranty is Guarantor's valid and binding obligation and is enforceable against Guarantor in accordance with its terms.

3.    This Guaranty is unconditional, continuing, and will remain in full force and effect until all Obligations have been irrevocably paid in full. This Guaranty shall not be revoked by death, dissolution, merger, bankruptcy, incompetency or insolvency of the Guarantor.  This Guaranty shall remain in full force and effect with respect to the Guarantor until the Obligations have been paid in full.

4.    Guarantor waives all rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against the Applicant and shall be subordinate and junior in right of payment to the prior indefeasible payment in full to Simplot of all Obligations.  Guarantor shall refrain from taking any action or commencing any proceeding against the Applicant (or its successors or assigns, whether in connection with a bankruptcy proceeding or otherwise) to recover any amounts in respect of payments made under this Guaranty unless and until the Obligations are indefeasibly paid to Simplot and performed in full.

5.    Guarantor further waives: (i) promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Simplot protect, secure, perfect or insure any property; (ii) any defense based on any right of set-off or recoupment or counterclaim against or in respect of the Obligations; (iii) any requirement of Simplot to assert any claim or demand or to exercise or enforce any right or remedy; (iv) any requirement to continue advancing credit or selling products or services to Applicant; (v) any requirement to resort for payment or to proceed directly or at once against any person, including Applicant or any other guarantor; (vi) any requirement to proceed directly against or exhaust any collateral held by Simplot from Applicant, any other guarantor, or any other person; (vii) any rights or defenses arising by reason of any "one action" or "antideficiency" law or any other law which may prevent Simplot from bringing any action, including a claim for deficiency, against Guarantor, before or after Simplot's commencement or

completion of any foreclosure action, either judicially or by exercise of a power of sale; (viii) any election of remedies by Simplot which adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Applicant for reimbursement, including any loss of rights Guarantor may suffer by reason of any law limiting, qualifying or discharging the Obligations; and (ix) notice of Simplot's acceptance and reliance on this Guaranty, notice that Applicant is incurring obligations to Simplot, any change in those obligations, and notice of default by Applicant.

Guarantor waives all right and defenses that Guarantor may have because the Obligations are secured by real property. This means, among other things: (1) Simplot may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Applicant; and (2) if Simplot forecloses on any real property collateral pledged by Applicant, (a) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (b) Simplot may collect from Guarantor even if Simplot, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Applicant. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are secured by real property.

6.    Guarantor's obligations shall not be affected, excused, modified or impaired by any event or circumstance, or any defense Applicant may have to any of the Obligations to Simplot (including death or disability of the Guarantor, any change in Applicant's or Guarantor's legal structure or organization, changes in control of Applicant or Guarantor, and circumstances of or changes in the nature of or in any terms of the Obligations) other than the full and irrevocable payment to Simplot of all Obligations. This Guaranty is binding on Guarantor (and if more than one Guarantor, on each Guarantor jointly and severally), Guarantor's heirs, successors, assigns, and representatives and survivors, and shall inure to the benefit of Simplot and its successors, assigns and affiliates.

7.    Guarantor authorizes Simplot, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (i) to alter, compromise, renew, extend, accelerate, or otherwise change on one or more occasions the time for payment or other terms of the Obligations or any part of the Obligations, including increases and decreases of the amount of the Obligations and/or rate of finance charges on the Obligations; (ii) to take and hold

security for the payment of this Guaranty or the Obligations, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (iii) to release, substitute, agree not to sue, or deal with any one or more of Applicant's sureties, endorsers, or other guarantors on any terms or in any manner Simplot may choose; (iv) to determine how, when and what application of payments and credits shall be made on the Obligations; (v) to apply such security and direct the order or manner of sale thereof, including any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Simplot in its discretion may determine; (vi) to sell, transfer, assign or grant participations in all or any part of the Obligations; and (vii) to assign or transfer this Guaranty in whole or in part.

8.    If any provision of this Guaranty is held to be illegal, invalid or unenforceable to any extent in any context, that provision shall be modified or restricted however necessary to render it valid, legal, and enforceable in that context. Modification or restriction may be accomplished by mutual agreement between Simplot and Guarantor; or, alternatively, by disposition of a court of competent jurisdiction. If the provision cannot be modified or restricted, then: that provision will be fully severable, this Guaranty will be construed and enforced as if the illegal, invalid or unenforceable provision was never a part of this Guaranty, and the remaining provisions of this Guaranty will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty. The undersigned parties agree that this Guaranty was the product of bilateral, arms' length negotiation between parties who are (or have been given the opportunity to be) represented by competent counsel.  As such, the undersigned parties waive any statutory or common law presumption that ambiguities shall be construed against the drafter and agree that ambiguities in this Guaranty (if any are deemed to exist) shall not be construed for or against any party. A signed copy of this Guaranty delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Guaranty.  The word "including" (and its variants) in this Guaranty will be deemed to be followed by "without limitation." The words "execution," "signed," "signature," and words of similar import in the Guaranty shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as

- 2 -

the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) and any similar state laws including those based on the Uniform Electronic Transactions Act.

9.      This Guaranty will be governed by California law without regard to its conflict of laws provisions. Simplot's rights and remedies are cumulative and non-exclusive.

**JUDICIAL REFERENCE:**_

ANY DISPUTE REGARDING THE INTERPRETATION, ENFORCEMENT, OR ENFORCEABILITY OF THIS AGREEMENT OR ANY OTHER DISPUTE REGARDING, RELATING TO, OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREIN SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)      UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(c)      THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(d)      THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(e)      THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

2485270v2 / 21397.0002 6523389.2                    - 3 -

(f)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

10.    This Guaranty (and any additional document related to financial assurances provided by Guarantor) contains all of the terms and agreements governing Guarantor's guaranty of Applicant's Obligations, and supersedes all prior understandings, statements, or agreements about that subject (none of which are binding or may be relied on), including, without limitation, any and all prior guaranties executed by Guarantor in favor of Simplot.    To be effective, a waiver of any provision of this Guaranty must be specifically stated in a signed document. No waiver will result from course of dealing, estoppel, waiver, or implied amendment (including Simplot's acceptance of any late or partial payment or our delay in exercising any right or remedy under this Guaranty). This provision may NOT be orally modified.

11.    Guarantor authorizes Simplot, at Simplot's sole expense, to obtain at any time before or during the time this Guaranty is in effect consumer and/or business credit reports from consumer and/or commercial credit reporting agencies and other financial information from Guarantor's references, banks and past or present creditors.    Guarantor agrees to sign any other documents necessary for Simplot to obtain credit reports or financial information. Guarantor also agrees to provide personal and/or business financial information and consents (if required by law) to Simplot's collection, use and disclosure of this information to enable Simplot to determine Guarantor's creditworthiness and to establish, maintain and manage a relationship with Guarantor.

12.

| Guarantor name: Peter J. Compton | Guarantor name: |
|---|---|
| Guarantor signature: | Guarantor signature: |
| Date:  January 3, 2020 | Date: |
| Guarantor address:  1124 Tama Lane, Santa Maria, California 93455 | Guarantor address: |
| Name of **Applicant** whose Obligations are being guaranteed: Valley Farm Supply, Inc. | |

**EXHIBIT E**

DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING

COPY of Document Recorded
27-Feb-2020 2020-0010148
Has not been compared with
original
SANTA BARBARA COUNTY RECORDER

**RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:**

J. R. Simplot Company
Attn: Beth Coonts
P.O. Box 27
Boise, ID 83707

---

(Space above this line for Recorder's use)

**THIS INSTRUMENT SECURES OBLIGATIONS WHICH MAY CONTAIN PROVISIONS FOR ADJUSTMENTS IN THE INTEREST RATE AND PAYMENT AMOUNTS AND/OR A BALLOON PAYMENT.**

**THIS INSTRUMENT CONSTITUTES A SECURITY AGREEMENT AS THAT TERM IS DEFINED IN THE CALIFORNIA UNIFORM COMMERCIAL CODE. PORTIONS OF THE COLLATERAL ARE GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE LAND DESCRIBED IN <u>EXHIBIT A</u> HERETO. THIS INSTRUMENT IS INTENDED TO SERVE AS A FIXTURE FILING AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED AND INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING. TRUSTOR (DEFINED BELOW) IS THE OWNER OF A RECORD INTEREST IN THE LAND DESCRIBED IN <u>EXHIBIT A</u> HERETO. THE ADDRESS OF TRUSTOR (DEBTOR) AND BENEFICIARY (DEFINED BELOW), AS BENEFICIARY (SECURED PARTY) ARE SET FORTH ON THE FIRST PAGE OF THIS DEED OF TRUST.**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "<u>Deed of Trust</u>") is made as of January 3, 2020 by Peter J. Compton , an individual ("<u>Trustor</u>"), as trustor, whose address is 1124 Tama Lane, Santa Maria, California, 93455, to CHICAGO TITLE INSURANCE COMPANY ("<u>Trustee</u>"), as trustee, whose address is 7330 N. Palm Avenue, #101, Fresno, California 93711, for the benefit of SIMPLOT AB RETAIL, INC. ("<u>Beneficiary</u>"), as beneficiary, whose address is 1099 W. Front Street, Boise, Idaho 83707.

### PRELIMINARY STATEMENT:

Trustor has executed and delivered to Beneficiary that certain Continuing Personal Guaranty dated January 3, 2020, (as amended from time to time, the "<u>Guaranty</u>"), pursuant to which the Trustor has guaranteed the payment by <u>Valley Farm Supply, Inc.</u> ("<u>Customer</u>") to the Beneficiary of the indebtedness and obligations described therein.

2485269v2 / 21397.0002

NOW, THEREFORE, in consideration of Beneficiary agreeing to extend credit to Customer or providing certain accommodations to Customer, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

## ARTICLE I
## GRANT

I.1    <u>Grant</u>.    Trustor hereby irrevocably grants, bargains, sells, conveys, mortgages, transfers and assigns to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession as provided below, for the benefit of Beneficiary, all of its present and future fee estate, including all right, title and interest of Trustor in and to the following described property, whether such property is now or hereafter in existence (the "<u>Mortgaged Property</u>"):

(a) the real estate and any interest in the real estate located in Santa Barbara County, California, and described in <u>EXHIBIT A</u> (the "<u>Land</u>"); (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "<u>Improvements</u>", together with the Land, the "<u>Real Property</u>"); (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto; (d) the ground water on, under, pumped from or otherwise available to the Real Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any governmental authority and any rights granted or created by any easement, covenant, agreement or contract with any person; and any rights to which the Real Property or Trustor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Real Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Real Property by virtue of the Real Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity (collectively, "<u>Water Rights</u>"); (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "<u>Mineral Rights</u>"); (g) timber now or hereafter standing or cut; (h) leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Real Property (collectively, the "<u>Leases</u>"); (i) all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to

the operation and maintenance of the Real Property; (j) all bushes, groves, trees, plants, crops, vines or other plantings, upon or under the Land ("Plantings"); (k) any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Real Property may receive water (collectively, the "Water Stock"); (l) working drawings, instructional manuals, and rights in processes directly related to the operation of the Real Property; (m) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment or which is in all cases (i) directly related to the operation of the Real Property or acquired in connection with any construction or maintenance of the Land or the Improvements (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements; (n) all permits and licenses relating or pertaining to the use or enjoyment of the Real Property; (o) proceeds of and any unearned premiums on any insurance policies covering the Real Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property (the "Insurance Claims"); (p) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Real Property (the "Condemnation Awards"); (q) money or other personal property of Trustor in addition to the foregoing deposited with or otherwise in Beneficiary's possession; (r) all accounts, deposit accounts, and general intangibles, including payment intangibles; (s) the right, in the name and on behalf of Trustor, upon notice to Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property and to commence any action or proceeding to protect the interest of Beneficiary in the Real Property; and (t) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

TO HAVE AND TO HOLD the Mortgaged Property unto Trustee forever and Trustor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Trustee against every person whomsoever lawfully claiming or to claim the same or any part thereof or against parties claiming by, through, or under Trustor and not otherwise.

I.2    Obligations Secured.   This Deed of Trust secures all of Trustor's obligations owing to Beneficiary from time to time under the Guaranty (the "Guaranteed Obligations"), including, but not limited to:

(a)    the payment and performance of Customer's indebtedness under that certain Settlement and Release Agreement among Beneficiary, Trustor and Customer (the "Settlement Agreement");

(a)    any and all amounts, debts, liabilities, and obligations of every type and description, which Customer may now or at any time owe to Beneficiary, whether now existing or hereafter arising, direct or indirect, due or to become due, absolute or contingent, arising from, the Settlement Agreement, or related security document;

      (b)    any and all modifications, extensions and renewals of the indebtedness secured hereby; and

      (c)    the payment of all sums advanced or paid out by Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

**ARTICLE II**
**COVENANTS OF TRUSTOR**

To protect the security of this Deed of Trust, Trustor covenants for the benefit of Beneficiary as follows:

II.1    <u>Payment of Indebtedness</u>.  Trustor shall pay and perform or cause Customer to pay and perform, all Guaranteed Obligations that are secured by this Deed of Trust in accordance with the terms of any of the agreements evidencing such Guaranteed Obligations.

II.2    <u>Insurance</u>.  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Beneficiary.  Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Beneficiary may request with Trustee and Beneficiary being named as additional insureds in such liability insurance policies.  Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Beneficiary may reasonably require.  Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Beneficiary and issued by a company or companies reasonably acceptable to Beneficiary.  Trustor, upon request of Beneficiary, will deliver to Beneficiary from time to time the policies or certificates of insurance in form satisfactory to Beneficiary, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Beneficiary.  Each insurance policy also shall include an endorsement providing that coverage in favor of Beneficiary will not be impaired in any way by any act, omission or default of Trustor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Beneficiary that the Real Property is located in a special flood hazard area, for the full unpaid principal balance of the Guaranteed Obligations and any prior liens on the property securing the Guaranteed Obligations, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Beneficiary, and to maintain such insurance for the term of the Guaranty.

Unless Trustor provides Beneficiary with evidence of the insurance coverage as required by the Deed of Trust, Beneficiary may purchase insurance at Trustor's expense to protect Beneficiary's interest.  This insurance may, but need not, also protect Trustor's interest.  If the collateral becomes damaged, the coverage Beneficiary purchases may not pay any claim Trustor makes or any claim made against Trustor.  Trustor may later cancel this coverage by providing evidence that Trustor has obtained property coverage elsewhere.  Trustor is responsible for the cost of any insurance purchased by Beneficiary.  The cost of this insurance may be added to

Trustor or Customer's obligations owed to Beneficiary. If the cost is added to Trustor or Customer's obligations, the interest rate on the Guaranteed Obligations will apply to this added amount. The effective date of coverage may be the date Trustor failed to provide proof of coverage.

II.3    Payment of Taxes; Claims.    Trustor shall pay prior to delinquency all taxes and assessments which are or may become a lien on the Mortgaged Property or which are assessed against the Mortgaged Property or its rents, royalties, profits and income. Trustor shall pay when due all lawful claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered for the Mortgaged Property.

II.4    Waste; Maintenance and Repair.    Trustor shall not commit any waste on the Mortgaged Property or take any actions that result in the insurance carried on the Mortgaged Property being cancelled. No Improvements may be removed, demolished or altered without the prior written consent of Beneficiary. Trustor shall keep the Mortgaged Property in good condition and repair; operate the Mortgaged Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary; complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Trustor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights.

II.5    Change in Use; Compliance with Laws.    Without the prior written consent of Beneficiary, Trustor shall not seek, make or consent to any change in the zoning or conditions of use of the Land which impair the ability of Trustor to construct Improvements on the Land. Trustor shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions that are recorded against title to the Mortgaged Property. Trustor shall comply with all existing and future requirements of all governmental authorities having jurisdiction over the Mortgaged Property.

II.6    Actions Affecting Beneficiary's Security.    Trustor shall, at its own expense, appear in and defend any action or proceeding (i) that might adversely affect Beneficiary's lien on the Mortgaged Property, or (ii) that might adversely affect the priority of the security interest of Beneficiary, or (iii) that might adversely affect Beneficiary's right to enforce its security or (iv) that would adversely affect Trustor's right, title or interest in or to the Mortgaged Property. If there is an Event of Default under this Deed of Trust, then Beneficiary and/or Trustee may, at their option, make any appearances, disburse any sums and take any actions as may be necessary or desirable to protect or enforce the security of this Deed of Trust or to remedy the failure of Trustor to perform its covenants (without, however, waiving any default of Trustor). Trustor agrees to pay all costs and expenses of Beneficiary and Trustee thus incurred (including but not limited to reasonable fees and disbursements of counsel). Any sums disbursed or advanced by Beneficiary or Trustee pursuant to this Section 2.6 will be additional indebtedness of Trustor

2485269v2 / 21397.0002

5

secured by this Deed of Trust, and will be payable by Trustor upon demand. Any such sums so disbursed or advanced by Beneficiary pursuant to this Section 2.6 will bear interest at a default rate equal to 7%,] provided that the interest rate applicable to such sums so disbursed or advanced by Trustee will not bear interest at a rate that would exceed the maximum rate permitted to be charged by Trustee under applicable law. This paragraph will not be construed to require Beneficiary or Trustee to incur any expenses, make any appearances, or take any actions.

II.7   Prohibited Transfers.  Trustor shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer, Beneficiary may declare all Guaranteed Obligations to be due and payable immediately. "Prohibited Transfer" means: (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Trustor under this instrument, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Trustor is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Trustor; (c) if Trustor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of the partnership interests; (d) if Trustor is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Trustor; or (e) if Trustor is a trust, withdrawal or removal of any trustee or revocation of the trust.

### ARTICLE III
### CASUALTY AND CONDEMNATION

III.1   Trustor's Obligation to Restore.  If the Improvements shall be damaged or destroyed, in whole or in part, by fire or other casualty and the cost to repair such damage or destruction exceeds $5,000.00 (a "Casualty"), Trustor shall give prompt notice thereof to Beneficiary. Following the occurrence of a Casualty, regardless of whether insurance proceeds are available, unless otherwise agreed to by Beneficiary, Trustor shall promptly proceed to restore, repair, replace or rebuild the Improvements to be of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable laws. The expenses incurred by Beneficiary in the adjustment and collection of insurance proceeds shall become part of the amounts owing in connection with the Guaranteed Obligations and shall be secured by this Deed of Trust and shall be reimbursed to Beneficiary upon demand.

III.2   Insured Losses; Condemnation Proceeds.  In case of loss or damages covered by any insurance policy required to be maintained by Trustor or a condemnation or taking under power of eminent domain of any portion of or interest in the Real Property, the following provisions shall apply:

III.2.1   Settlement by Trustor.  If there is a Casualty and no Event of Default exists, then Trustor may settle and adjust any claim without the consent of Beneficiary and agree with the insurance company or companies or the condemning authority on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In

such case, Trustor is hereby authorized to collect and retain any such condemnation or insurance proceeds.

III.2.2 Settlement by Beneficiary. If an Event of Default then exists and is continuing, then, subject to the duly perfected rights of Senior Secured Creditors, Beneficiary may settle and adjust any claim without the consent of Trustor and agree with the insurance company or companies or the condemning authority on the amount to be paid on the loss and the proceeds of any such policy shall be due and payable solely to Beneficiary and held in escrow by Beneficiary in accordance with the terms of this Deed of Trust.

III.2.3 Application of Proceeds Absent Rebuilding. Except as provided in Section 3.2.1, the proceeds collected upon any Casualty or condemnation shall, at the option of Beneficiary in its sole discretion, be applied to the payment of the Guaranteed Obligations or applied to reimburse Trustor for the cost of restoring, repairing, replacing or rebuilding the Improvements or part thereof subject to the Casualty or condemnation, in the manner set forth below. Any such application to the payment of the Guaranteed Obligations shall be applied to the installments of principal in the inverse order of maturity.

I.1.2 Conditions to Disbursement of Proceeds to Reimburse Trustor. If Trustor is entitled to reimbursement out of insurance or condemnation proceeds held by Beneficiary, then such proceeds shall be disbursed from time to time upon Beneficiary being furnished with (a) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (b) assurances satisfactory to Beneficiary that such funds are available, sufficient in addition to the insurance or condemnation proceeds to complete the proposed restoration, repair, replacement and rebuilding, and (c) such architect's certificates, conditional waivers of lien (subject only to payment), contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Beneficiary may reasonably require and approve. Beneficiary may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Beneficiary prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed 90% of the value of the work performed from time to time. If Trustor is required to advance funds for such restoration work as set forth above, then Trustor shall have advanced all such funds prior to disbursement by Beneficiary to Trustor of such insurance or condemnation proceeds. Beneficiary shall not be obligated to disburse insurance or condemnation proceeds to Trustor until Trustor shall provide reasonable evidence to Beneficiary that the undisbursed balance of such insurance or condemnation proceeds remaining in the hands of Beneficiary, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Beneficiary by or on behalf of Trustor for that purpose, shall be at least sufficient in the reasonable judgment of Beneficiary to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of insurance or condemnation proceeds held by Beneficiary after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto provided no Event of Default then exists.

<div align="center">

**ARTICLE IV**
**ASSIGNMENT OF LEASES AND RENTS**

</div>

IV.1    <u>Assignment</u>.  As additional security for the payment and performance by Trustor of the Guaranteed Obligations, and subject to the duly perfected rights of any senior secured creditors, Trustor hereby absolutely, presently, unconditionally and irrevocably assigns to Beneficiary all of the existing and future leases, licenses and other use or occupancy agreements and all existing and future rents, royalties, income, profits and other benefits derived from or produced by the Mortgaged Property, including but not limited to, any monies, proceeds, damages, judgments or payments in lieu thereof, received by or due to Trustor occasioned by any mineral or geothermal exploration, wind energy or drilling activity on or under the Real Property, all prepaid rents, security deposits and other supporting obligations.

IV.2    <u>Revocable License</u>.  Subject to the duly perfected rights of any senior secured creditors, Beneficiary hereby grants to Trustor a license to collect and receive all rents, royalties, income and profits produced by or related to the use and occupancy ofthe Mortgaged Property. Upon the occurrence and during the continuance of an Event of Default, Beneficiary may, in its discretion, deliver written notice to Trustor and terminate such license and, subject to the duly perfected rights of any senior secured creditors, Beneficiary may thereafter collect the rents, royalties, income and profits itself or by an agent or receiver.  If and when an Event of Default is cured by Trustor, Beneficiary shall again grant to Trustor a license to collect and receive all rents, royalties, income and profits related to the use and occupancy of the Mortgaged Property. No action taken by Beneficiary to collect any rents, royalties, income or profits will make Beneficiary a "mortgagee-in-possession" of the Mortgaged Property, unless Beneficiary personally or by agent enters into actual possession of the Mortgaged Property.  Possession by a court appointed receiver will not be considered possession by Beneficiary.  All rents, royalties, income and profits collected by Beneficiary or a receiver will be applied to pay all expenses of collection, and to the payment of all costs of operation and management of the Mortgaged Property, and to the payment of the Guaranteed Obligations in whatever order Beneficiary directs in its absolute discretion and without regard to the adequacy of its security.  Beneficiary's right to a receiver shall be absolute and unconditional, and a receiver may be obtained in an independent action, regardless of whether Beneficiary seeks any relief other than the appointment of a receiver; Trustor expressly waives any express or implied legal requirement that might otherwise require the initiation or pendency of an action or proceeding seeking other relief as a condition to the appointment of a receiver.  The receiver may be appointed without regard to the adequacy of any security for the Guaranteed Obligations and Trustor shall immediately surrender possession of the Mortgaged Property to the receiver upon his appointment.

IV.3    <u>Leases</u>.  All new leases of the Mortgaged Property shall be subject to approval by the Beneficiary which approval will not be unreasonably withheld.  All leases of the Mortgaged Property shall be at market terms.  Trustor shall provide Beneficiary, promptly after execution thereof, copies of any and all new tenant leases as to any portion of the Mortgaged Property.

**ARTICLE V**
**OBLIGATIONS UNCONDITIONAL**

V.1    <u>Arrangements with Customer or Customer's Indebtedness</u>.  Trustor authorizes Beneficiary to perform any of the following acts at any time, all without notice to Trustor and without affecting the rights of Beneficiary or the obligations of Trustor under this Deed of Trust:

(i) alter any terms of the Guaranteed Obligations, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Guaranteed Obligations; (ii) take and hold security for the Guaranteed Obligations, accept additional or substituted security for the Guaranteed Obligations, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security; (iii) apply any security now or later held for the Guaranteed Obligations in any order that Beneficiary may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Customer of its liability for all or any portion of the Guaranteed Obligations; and (v) substitute, add or release any one or more guarantors or endorsers of the Guaranteed Obligations.

V.2    Waivers.  Trustor waives:  (i) any right to require Beneficiary to proceed against Customer, proceed against or exhaust any security held from Customer, or pursue any other remedy in Beneficiary's power to pursue; (ii) any defense based on any legal disability of Customer, any discharge or limitation of the liability of Customer to Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtorrelief proceeding, or from any other cause, or any claim that the obligations of Trustor exceed or are more burdensome than those of Customer; (iii) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Customer, and demands and notices of every kind; (iv) any defense based on or arising out of any defense that Customer may have to the payment or performance of the Guaranteed Obligations; and (v) until the Guaranteed Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Beneficiary may have against Customer, and all rights to participate in any security now or later to be held by Beneficiary for the Guaranteed Obligations.

V.3    Further Waivers.  Trustor waives all rights and defenses that Trustor may have because the Guaranteed Obligations may be secured by real property other than the Real Property hereby encumbered.  This means, among other things: (i) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) without first foreclosing on any other real or personal property collateral securing the Guaranteed Obligations; and (ii) if Beneficiary forecloses on any real property collateral securing the Guaranteed Obligations: (A) the amount of the Guaranteed Obligations may be reduced only by the price for which such collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) even if Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Customer.  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Guaranteed Obligations may be secured by real property other than the Real Property.

V.4    Determination of Deficiency.  Trustor waives any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Real Property hereby encumbered.

2485269v2 / 21397.0002

9

V.5    Customer Information. Trustor is solely responsible for keeping informed of the financial condition and business operations of Customer and all other circumstances affecting the ability of Customer to pay and perform Customer's obligations to Beneficiary, and agrees that Beneficiary will have no duty to disclose to Trustor any information which Beneficiary may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Customer to perform.

V.6    Waivers Not Limited. No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust or the Guaranty.

## ARTICLE VI
## PERSONAL PROPERTY SECURITY PROVISIONS

VI.1    Security Interest. This Deed of Trust is also intended to encumber and create a security interest in, and Trustor hereby grants to Beneficiary a security interest in, all portions of the Mortgaged Property constituting personal property and all other fixtures, chattel paper, deposit accounts, equipment, goods, inventory, contract rights, documents, instruments, investment property, general intangibles, and all other personal property of every type or description owned by Trustor and used in connection with the Real Property, all renewals, replacements, additions to, or substitutions of the foregoing and the proceeds thereof, whether or not the same shall be attached or related to the Real Property in any manner (all such personal property being referred to collectively as the "Personal Property Collateral"). All of the Personal Property Collateral shall be owned by Trustor and no leasing or installment sales or other financing or title retention agreement in connection therewith shall be permitted without the prior written approval of Beneficiary.    Trustor shall, from time to time upon the request of Beneficiary, supply Beneficiary with a current inventory of all of the Personal Property Collateral in which Beneficiary is granted a security interest hereunder, in such detail as Beneficiary may reasonably require. Trustor shall promptly replace all of the Personal Property Collateral when worn or obsolete with an article comparable to the worn out or obsolete Personal Property Collateral when new and will not, without the prior written consent of Beneficiary, remove from the Property any of the Personal Property Collateral subject to this Deed of Trust except such as is replaced by an article of equal suitability and value as above provided, owned by Trustor free and clear of any lien or security interest except that created by this Deed of Trust.

VI.2    Security Agreement. This Deed of Trust constitutes a security agreement between Trustor and Beneficiary with respect to the Personal Property Collateral in which Beneficiary is granted a security interest hereunder, and, cumulative of all other rights and remedies of Beneficiary hereunder, Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code (the "UCC"). Trustor hereby authorizes Beneficiary to prepare and file with the appropriate filing officer or office financing statements, amendments thereto, and continuation statements, and to file any such financing statement, amendment thereto or continuation statement electronically in all jurisdictions the Beneficiary deems necessary or desirable in order to perfect or continue the perfection of the lien or security interest created hereby. Such financing statements may describe the collateral as "all personal property" or "all assets" or similar language. Trustor shall have possession of the Personal Property Collateral, except where Beneficiary chooses to perfect its security interest by

possession in addition to the filing of a financing statement. Where Personal Property Collateral is in the possession of a third party, Trustor will join with Beneficiary in notifying such third party of Beneficiary's security interest and obtaining an acknowledgment from the third party that it is holding the Personal Property Collateral for the benefit of Beneficiary. Trustor agrees to furnish Beneficiary in writing with notice of any change in the name, organizational structure, or principal place of business or mailing address of Trustor thirty (30) days prior to the effective date of any such change.

VI.3    UCC Remedies. Upon the occurrence and during the continuance of any Event of Default hereunder, subject to the duly perfected rights of any senior secured creditors,. Beneficiary shall have the right to cause any of the Personal Property Collateral to be sold at any one or more public or private sales as permitted by applicable law, and Beneficiary shall further have all other rights and remedies, whether at law, in equity, or by statute, as are available to secured creditors under applicable law. Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee. Any person, including Trustor and Beneficiary, shall be eligible to purchase any part or all of such property at any such disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Trustor and shall include Beneficiary's and Trustee's reasonable attorneys' fees and legal expenses. Subject to the duly perfected rights of any senior secured creditors, Trustor, upon demand of Beneficiary, shall assemble such personal property and make it available to Beneficiary at the Real Property, a place which is hereby deemed to be reasonably convenient to Beneficiary and Trustor. Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property or of the time of or after which any private sale or any other intended disposition is to be made, and if such notice is sent to Trustor, as the same is provided for the mailing of notices herein, it is hereby deemed that such notice shall be and is reasonable notice to Trustor.

VI.4    Parties. The name and principal place of business of Trustor, as "Debtor", and Beneficiary, as "Secured Party", under the UCC are as set forth in the first paragraph of this Deed of Trust.

<div align="center">

**ARTICLE VII**
**EVENTS OF DEFAULT**

</div>

An "Event of Default" hereunder shall mean any of the following: (a) failure of Trustor to pay any of the Guaranteed Obligations when due; (b) a Prohibited Transfer; (c) any representation in this Deed of Trust is materially incorrect or materially misleading when made; (d) for more than ten days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Article VII which can be cured by the payment of a sum of money; or (e) for 30 days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Article VII; provided that if (i) it is reasonably certain that the default can be cured by Trustor within that 30 day period and (ii) Trustor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default then that 30 day period shall be extended for so long as reasonably required by Trustor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Trustor of the Event of Default.

<div align="center">

**ARTICLE VIII**
**REMEDIES**

</div>

VIII.1  <u>Remedies</u>.  Upon the occurrence of any Event of Default, Beneficiary may, at its option, and without notice to or demand upon Trustor:

VIII.1.1    Declare any or all Guaranteed Obligations to be due and payable immediately;

VIII.1.2    Subject to the duly perfected rights of any senior secured creditors, Enter onto the Mortgaged Property, in person or by agent or by court-appointed receiver, and take any and all steps which may be desirable in Beneficiary's judgment to complete any unfinished construction and to manage and operate the Mortgaged Property and to collect any and all rents, issues and profits of the Mortgaged Property, and Beneficiary may apply any rents, royalties, income or profits collected against the indebtedness secured by this Deed of Trust without in any way curing or waiving any default of Trustor;

I.1.3    Bring a court action to foreclose this Deed of Trust under any applicable provision of law or to enforce its provisions or any of the Guaranteed Obligations secured by this Deed of Trust;

VIII.1.3    Cause any or all of the Mortgaged Property to be sold under the power of sale granted by this Deed of Trust in any manner permitted by applicable law; and/or

VIII.1.4    Exercise any other right or remedy available under law or in equity.

VIII.2  <u>Power of Sale</u>.  For any sale under the power of sale granted by this Deed of Trust, Beneficiary or Trustee must record and give all notices required by law and then, upon the expiration of such time as is required by law, and subject to the duly perfected rights of any senior secured creditors, Trustee may sell the Mortgaged Property upon any terms and conditions specified by Beneficiary and permitted by applicable law.  Trustee may postpone any sale by public announcement at the time and place noticed for the sale.  If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may, in its sole discretion: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales or in any other manner Beneficiary deems in its best interest.  Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured.  Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all Guaranteed Obligations secured hereby have been fully paid.  In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial

proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee with regard to such sale or sales, together with interest on all such advances made by Trustee at the maximum rate permitted by law to be charged by Trustee. Upon any sale hereunder, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the property so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession; and the recitals in any such deed or deeds of fact, such as default, the giving of notice of default and notice of sale, and other facts affecting the regularity or validity of such sale or disposition shall be conclusive proof of the truth of such facts and any such deed or deeds shall be conclusive against all persons as to such facts recited therein.

VIII.3  Application of Proceeds.  Subject to the duly perfected rights of any senior secured creditors, the proceeds of any sale under this Deed of Trust will be applied to the following in any order Beneficiary chooses:

VIII.3.1  Payment of the costs and expenses of the sale, including but not limited to Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee at the maximum rate permitted to be charged by Trustee under applicable law.

VIII.3.2  Payment of all sums expended by Beneficiary under the terms of this Deed of Trust and not yet repaid, together with interest on such sums at the rate of 7.00% per annum.

VIII.3.3  Payment of the Guaranteed Obligations in any order that Beneficiary chooses.

VIII.3.4  The remainder, if any, to the person or persons legally entitled to it.

VIII.4  Waivers by Trustor.  Trustor waives all rights to direct the order in which any of the Mortgaged Property will be sold in the event of any sale under this Deed of Trust, and also any right to have any of the Mortgaged Property marshaled upon any sale.

VIII.5  No Waiver by Beneficiary.  All remedies contained in this Deed of Trust are cumulative, and Beneficiary also has all other remedies provided by law or in any other agreement between Trustor and Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust will be construed to be a waiver of that right or remedy of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

VIII.6  Enforcement Costs.  Trustor will pay all of Beneficiary's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any lawsuit is filed, including but not limited to reasonable legal fees and disbursements, foreclosure costs and title charges.

2485269v2 / 21397.0002

13

## ARTICLE IX
### MISCELLANEOUS

IX.1    Fixture Filing.  This Deed of Trust constitutes a financing statement filed as a Fixture Filing in the Official Public Records of real property of the county in which the Mortgaged Property is located with respect to any and all fixtures included within the term "Mortgaged Property" as used herein and with respect to any goods or other personal property that may now be or hereafter become such fixtures.

IX.2    Invalidity.  The invalidity or unenforceability of any one or more provisions of this Deed of Trust will not affect any other provisions of this Deed of Trust.

IX.3    Statement of Status.  Trustor agrees to pay Beneficiary a reasonable charge, not to exceed the maximum allowed by law, for giving any statement of the status of the obligations secured by this Deed of Trust.

IX.4    Notices.  The service of any notice of default or notice of sale under this Deed of Trust as required by law will, if mailed, be effective on the date of mailing.

IX.5    Actions by Beneficiary.  Without affecting Trustor's liability for the payment of any of the indebtedness secured by this Deed of Trust, Beneficiary may from time to time and without notice to Trustor (a) release any person liable for the payment of that indebtedness, (b) accept additional real or personal property of any kind as security, or alter, substitute or release any property securing that indebtedness, or (c) cause Trustee to consent to the making of any map or plot of the Mortgaged Property, or to reconvey any part of the Mortgaged Property, or to join in granting any easement or creating any restriction on the Mortgaged Property, or to join in any subordination or other agreement affecting this Deed of Trust.

IX.6    **Indemnification.  Trustor shall indemnify Trustee and Beneficiary against and shall hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and claims therefor together with all other legal expenses, costs of evidence of title, costs of evidence of value, and other costs and expenses which either Trustee or Beneficiary may suffer or incur:  (1.) In performing any act required or permitted by this deed of trust or by law or any other agreement between Beneficiary and Trustor or between Beneficiary and Valley Farm Supply, Inc., Peter J. Compton, any successor of the foregoing, or any person affiliated with the foregoing-listed individuals and entities ;  (2.) Because of any failure of Trustor to pay or perform any obligation owed by Trustor to Beneficiary; (3.) Because of any alleged obligation of or undertaking by Beneficiary to perform or discharge any of the representations, warranties, conditions, covenants, or other obligations in any document or agreement relating to the property.  This agreement by Trustor to indemnify, defend, and hold harmless Beneficiary survives the release and cancellation of any or all of the other obligations by and between Beneficiary or Trustor as well as the full or partial release and/or reconveyance of this Deed of Trust.**

IX.7    Reconveyance.  Upon the payment in full of all Guaranteed Obligations, Beneficiary agrees to request Trustee to reconvey the Mortgaged Property, and upon payment of

its fees and all other sums owing to it under this Deed of Trust, Trustee will reconvey the Mortgaged Property without warranty to the person or persons legally entitled to it. Such person or persons must pay all costs of recordation. The recitals in the reconveyance of any facts will be conclusive on all persons. The grantee in the reconveyance may be described as "the person or persons legally entitled thereto." Trustee and Beneficiary will have no duty to determine the rights of persons claiming to be rightful grantees of any reconveyance of the Property.

IX.8    Statute of Limitations.    Trustor waives all present and future statutes of limitations as a defense to any action to enforce the provisions of this Deed of Trust or to collect any indebtedness secured by this Deed of Trust to the fullest extent permitted by law.

IX.9    Definitions.    The term "Trustor" includes both the original Trustor and any subsequent owner or owners of any of the Mortgaged Property and/or any successor-in-interest of Trustor under the Guaranteed Obligations, and the term "Beneficiary" includes the original Beneficiary and also any future owner or holder, including pledgees and participants, of the Guaranteed Obligations or any interest therein. Whenever the context requires, the singular includes the plural and vice versa and each gender includes each other gender. The headings of the articles of this Deed of Trust are for convenience only and do not limit its provisions.

IX.10    No Waiver.    Beneficiary's consent to any act or omission by Trustor will not be a consent to any other or subsequent act or omission or a waiver of the need for such consent in any future or other instance.

IX.11    Successors and Assigns.    The terms of this Deed of Trust will bind and benefit the heirs, legal representatives, successors and assigns of Trustor and Beneficiary and the successors-in-interest of Trustee.

IX.12    Governing Law.    In all respects, including, without limitation, matters of construction and performance of this Deed of Trust and the obligations arising hereunder, this Deed of Trust shall be governed by, and construed in accordance with, the internal laws of the State of California applicable to contracts made and to be performed in such state without regard to principles of conflicts of laws.

IX.13    The Trustee.    Beneficiary may remove Trustee or any successor Trustee at any time or times and appoint a successor Trustee by: (i) recording a written substitution in the county where the real property covered by this Deed of Trust is located, or in any other manner permitted by law; and (ii) promptly providing written notice of such appointment of the successor Trustee and contact information for the successor Trustee to Trustor. Upon that appointment, all of the powers, rights and authority of Trustee will immediately become vested in its successor. Such substitution and appointment shall be at Beneficiary's expense unless an Event of Default has occurred, in which case, Trustor shall pay such expenses.

JUDICIAL REFERENCE PROVISION: IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CLAIM AND THE WAIVER SET FORTH IN SECTION 28.2 ABOVE IS NOT ENFORCEABLE IN SUCH PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

2485269v2 / 21397.0002                                                  15

(a)    WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBCLAUSE (b) BELOW, ANY CLAIM SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (i) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (ii) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF OR RECOUPMENT), (iii) APPOINTMENT OF A RECEIVER, AND (iv) TEMPORARY, PROVISIONAL, OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS, OR PRELIMINARY INJUNCTIONS). THIS AMENDMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (I) - (iv) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO PARTICIPATE IN A REFERENCE PROCEEDING PURSUANT TO THIS AMENDMENT WITH RESPECT TO ANY OTHER MATTER.

(c)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(d)    EXCEPT AS EXPRESSLY SET FORTH IN THIS AMENDMENT, THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(e)    THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(f)    THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL

BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(g)  THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

IX.14  Requests for Notices.  Trustor requests that a copy of any notice of default and notice of sale required by law be mailed to it at the address(es) specified in Section 9.4 above.

IX.15  Attorneys' Fees.  In the event of any action at law or equity brought to enforce or interpret the terms of this agreement, including any activity in any proceeding brought under Title 11 of the United States Code, the prevailing party shall be entitled to recover its reasonable attorneys' fees, expert witness fees, and court costs.  A party asserting a proof of claim in any proceeding under Title 11 of the United States Court shall, provided that proof of claim is not successfully objected to, be deemed a "prevailing party" for purposes of this provision.

## ARTICLE X
## ADDITIONAL STATE SPECIFIC PROVISIONS

X.1  Principles Of Construction.  In the event of any inconsistencies between the terms and conditions of this Article X and the other terms and conditions of this Deed of Trust, the terms and conditions of this Article X shall control and be binding.

X.2  Environmental Provisions.

(a)  Beneficiary may waive its lien against the Mortgaged Property or any portion thereof, whether fixtures or personal property, to the extent such property is found to be "environmentally impaired" or an "affected parcel" in accordance with California Code of Civil Procedure Section 726.5 and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and Environmental Costs (as hereafter defined), including, but not limited to, seeking an attachment order under California Code of Civil Procedure Section 483.010.  The term "Environmental Costs" shall mean any costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action required under applicable law or which Beneficiary reasonably believes necessary to protect the Mortgaged Property.  As between Beneficiary and Trustor, for purposes of California Code of Civil Procedure Section 726.5, Trustor shall have the burden of proving that Trustor or any related party (or any Affiliate or agent of Trustor or any related party) was not in any way negligent in permitting the release or threatened release of the hazardous materials. Trustor acknowledges and agrees that, if this clause (a) applies, then notwithstanding any term or provision contained herein, all judgments and awards entered against Trustor shall be exceptions

to any nonrecourse or exculpatory provision herein or in the Guaranty, and Trustor shall be fully and personally liable for all judgments and awards entered against Trustor relating to Environmental Costs and such liability shall not be limited to the original principal amount of the obligations secured by this Deed of Trust and Trustor's obligations shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Mortgaged Property or this Deed of Trust.  For the purposes of any action brought by or on behalf of Beneficiary under this Section 10.2, Trustor hereby waives the defense of laches and any applicable statute of limitations.

(b)      In the event Beneficiary elects, in accordance with California Code of Civil Procedure Section 726.5, to waive all or part of the security of this Deed of Trust and proceed against Trustor on an unsecured basis, the valuation of the Mortgaged Property, the determination of the environmentally impaired status of such security and any cause of action for a money judgment shall, at the request of Beneficiary, be referred to a referee in accordance with California Code of Civil Procedure Sections 638 et seq.  Such referee shall be an impartial M.A.I. appraiser selected by Beneficiary and approved by Trustor, which approval shall not be unreasonably withheld or delayed.  If the parties cannot agree on an M.A.I. appraiser approved by Trustor, either party may apply to the presiding judge of the Superior Court in which the Mortgaged Property is located to make such appointment.  The decision of such referee shall be binding upon both Trustor and Beneficiary, and judgment upon the award rendered by such referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645.  Trustor shall pay all reasonable costs and expenses incurred by Beneficiary in connection with any proceeding under California Code of Civil Procedure 726.5, as such Section may be amended from time to time.

(c)      Beneficiary or its agents, acting by themselves or through a court appointed receiver, may upon reasonable advance notice to Trustor, enter upon the Mortgaged Property or any part thereof and may perform such acts and things as Beneficiary deems reasonably necessary or desirable to inspect, investigate, assess, and protect the security hereof, including without limitation of any of its other rights:  (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Real Property under California Civil Code Section 2929.5, to which the decision of Beneficiary as to whether there exists a release or threatened release of any hazardous material shall be deemed reasonable and conclusive as between the parties hereto; and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Real Property and/or the Improvements for hazardous substances.  All reasonable costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations which Beneficiary or its agents or employees may reasonably conduct, including the reasonable fees of the engineers, laboratories, contractors, consultants and attorneys, shall become part of the indebtedness secured hereby and shall be paid by Trustor upon demand with interest at 7.00% per annum from the date when paid by Beneficiary.

(d)      Beneficiary may seek a judgment that Trustor has breached its covenants, representations, warranties and/or other provisions with respect to this Deed of Trust or the Guaranty by commencing and maintaining an action or actions in any court of competent jurisdiction for breach of contract pursuant to California Code of Civil Procedure Section 736, whether commenced prior to or after foreclosure of the Mortgaged Property, and may seek the

recovery of Environmental Costs (as such costs are described in Section 736), it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action of or to the Mortgaged Property were made by Beneficiary in good faith and are such costs as described in Section 736, Trustor acknowledges that such an action shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d or 726(b) of the California Code of Civil Procedure. All Environmental Costs incurred by Beneficiary (including court costs, consultant fees and reasonable attorneys' fees and disbursements, whether incurred in litigation or not and whether before or after judgment) shall bear interest 7.00% per annum from the date of expenditure until said sums have been paid. Beneficiary shall be entitled to bid, at the sale of the Mortgaged Property held under any provision of this Deed of Trust, the amount of said costs, expenses and interest in addition to the amount of the other obligations hereby secured as a credit bid, the equivalent of cash.

(e)     Without limiting any of the remedies provided herein, Trustor acknowledges and agrees that the provisions of this Section 10.2 and any environmental indemnity executed in connection herewith are "environmental provisions" (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Trustor relating to the Real Property (the "Environmental Provisions"). Trustor's breach of or failure to comply with the Environmental Provisions shall constitute a breach of contract entitling Beneficiary to all remedies provided under Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions. Pursuant to Section 736 of the California Code of Civil Procedure, Beneficiary's action for recovery of damages or enforcement of the Environmental Provisions shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d and 726(b) of the California Code of Civil Procedure. The rights and remedies provided for herein are separate and distinct causes of action that shall not be abrogated, modified, limited or otherwise affected by the remedies provided under Section 736(a) of the California Code of Civil Procedure.

(f)     Nothing herein shall be deemed to limit the right of Beneficiary to recover, in accordance with California Code of Civil Procedure Section 736 (as such Section may be amended from time to time), any reasonable costs, expenses, liabilities or damages, including reasonable attorneys' fees and costs, incurred by Beneficiary and arising from any covenant, obligation, liability, representation or warranty given to Beneficiary, or any order, consent decree or settlement relating to the cleanup of hazardous materials or any other "environmental provision" (as defined in such Section 736 of the California Code of Civil Procedure) relating to the Mortgaged Property or any portion thereof or the right of Beneficiary to waive, in accordance with the California Code of Civil Procedure Section 726.5 (as such Section may be amended from time to time), the security of this Deed of Trust as to any parcel of the Mortgaged Property that is "environmentally impaired" or is an "affected parcel" (as such terms are defined in such Section 726.5), and as to any personal property attached to such parcel, and thereafter to exercise against Trustor, to the extent permitted by such Section 726.5, the rights and remedies of any unsecured creditor, including reduction of Beneficiary's claim against Trustor to judgment, and any other rights and remedies permitted by law.

X.3    <u>Trustee's Deed Recitals</u>.  The recitals of facts in any instrument delivered upon completion of any sales, as described in <u>Section 8.2</u> above, such as the existence of a default, the giving of written notice of default and notice of sale, and other facts affecting the regularity or validity of such sale or disposition, shall be conclusive proof of the trust of such facts and any such instruments shall be conclusive against all persons as to such fact recited therein.

X.4    <u>Right Of Entry</u>.  In addition to any other rights or remedies granted under this Deed of Trust but subject to the rights of lessees and any senior secured creditors, Beneficiary and its agents, acting by themselves or through a court appointed receiver, upon reasonable advance notice to Trustor and an opportunity to be present, shall have the right to enter upon the Mortgaged Property or any part thereof during regular business hours and perform such acts and things as Beneficiary deems necessary or desirable to inspect, investigate, assess, and protect the security thereof.  Without limitation of any of its other rights and subject to the provisions of this Deed of Trust, Beneficiary shall have the right to:  (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Mortgaged Property under California Civil Code Section 2929.5 to which the decision of Beneficiary as to whether there exists a release or threatened release of hazardous substances onto the Mortgaged Property shall be deemed reasonable and conclusive as between the parties hereto and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Mortgaged Property for hazardous substances.  All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations that Beneficiary or its agents or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants, and attorneys, shall be paid by Trustor five (5) business days following demand with interest at the rate of 7.00% per annum from the date paid by Beneficiary.  Such costs, if not paid for by Trustor following demand, may be added to the principal balance of the sums due under the Guaranteed Obligations and this Deed of Trust and shall bear interest thereafter until paid at the rate of 7.00% per annum.

X.5    <u>Border Zone Property</u>.  To Trustor's actual knowledge, Trustor represents and warrants that no portion of the Real Property and/or the Improvements has been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining the Real Property that is reasonably likely to cause the Real Property or any part thereof to be designated as Border Zone Property.

X.6    <u>Insurance Notice</u>.  Beneficiary hereby notifies Trustor of the provisions of Section 2955.5(a) of the California Civil Code, which reads as follows:

> "No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

This disclosure is being made by Beneficiary to Trustor pursuant to Section 2955.5(b) of the California Civil Code.  Trustor hereby acknowledges receipt of this disclosure and acknowledges

Exhibit "2"
Page 128

that this disclosure has been made by Beneficiary before execution of any note or security document evidencing or securing the Guaranteed Obligations.

*X.7*    <u>Commercial Indebtedness</u>.  Trustor represents and warrants that the Guaranteed Obligations incurred and to be incurred are for commercial purposes, and not for personal, household or consumer purposes.

*[Signature appears on the following page.]*

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing the day and year first hereinabove written.

**TRUSTOR:**

Peter J. Compton

By: _____

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA               )
                                  )
COUNTY OF _Santa Barbara County_  )

On _01/10/2020_ before me, _A. Noriega, Notary Public_, a Notary Public, personally appeared _Peter J. Compton_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SIGNATURE _____

A. Noriega, Notary Public

SEAL

A. NORIEGA
Notary Public – California
Santa Barbara County
Commission # 2224120
My Comm. Expires Dec 31, 2021

2485269v2 / 21397.0002

22

Exhibit "A"

The Land situated in the County of Santa Barbara, City of Santa Maria, State of California, and is described as follows:

PARCEL ONE:

Being a portion of Lot 14 of Furukawa Industrial Park II, Tract 5268 in the City of Santa Maria, County of Santa Barbara, State of California, as per Map recorded in Book 120, Pages 27, 28 and 29 of Maps, in the Office of the County Recorder of Santa Barbara County, being more particularly described as follows:

Beginning at the Northwest corner of said Lot 14; thence along the Northerly line of said Lot 14 South 88° 54' 45" East 121.00 feet; thence leaving said line South 01° 01' 44" West 329.34 feet to a point on the Southerly line of said Lot 14; thence along the Southerly line of said Lot 14 North 88° 58' 16" West 121.00 feet to a point being the Southwest corner of said Lot 14; thence along the Westerly line of said Lot 14 North 01° 01' 44" East 329.47 feet to the point of beginning.

Said land also shown as Lot 1 of Hayes Tract No. 5792 Lot Line Adjustment recorded on June 14, 2001 as Instrument No. 01-48057 of Official Records of said County.

Excepting therefrom all oil, gas and other hydrocarbon substances in and under said land, together with the right of ingress and egress at all times for the propose of mining, drilling and exploring for said substances in and under said land.

PARCEL TWO:

An easement for drainage purposes over a portion of Lot 2 of Tract 5792 in the City of Santa Maria, County of Santa Barbara, State of California, as per Document recorded as Instrument No. 01-48057 of Official Records of Santa Barbara County being more particularly described as follows:

Being at the Northwest corner of said Lot 2; thence along the Northerly line of said Lot 2 South 88° 54' 45" East 60.00 feet; thence leaving said line South 01° 01' 44" West 50.00 feet; thence North 88° 54' 45" West 60.00 feet to a point on the West line of said Lot 2; thence along said West line of Lot 2 North 01° 04' 44" East 50.00 feet to the point of beginning.

Excepting therefrom all oil, gas and other hydrocarbon substances in and under said land, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring for said substances in and under said land.

APN: 111-440-31

```
                Recorder's Office
                    County of
                  Santa Barbara

              Joseph E. Holland
              County Clerk Recorder

2020-0010148          02/27/2020 3:29PM
   REC FEE                       90.00
   CONFORMED COPY-WALK IN         2.00
   SB2 HOUSING                   75.00
2020-0010148-001      02/27/2020 3:29PM
   REC FEE                       24.00
   SB2 HOUSING                   75.00
2020-0010148-002      02/27/2020 3:29PM
   REC FEE                       14.00
   SB2 HOUSING                   75.00
2020-0010148-003      02/27/2020 3:29PM
   REC FEE                       14.00
----------------------------------------
TOTAL                          369.00

CHECK 2348                     369.00
----------------------------------------
CHANGE                           0.00
----------------------------------------
02/27/2020 3:30PM        2020022700272
MFS                        MXL9285T2X

                  Thank You
              Have a Nice Day!
----------------------------------------
Requested By:
Public
```

## EXHIBIT F

BROKER OPINION OF VALUE
*APPRAISAL*

099930-001418 7506380.1

# Broker Opinion of Value

1124 Tama Lane | Santa Maria, CA 93455

## May 21, 2019

### Price: $2,450,000

### PROPERTY HIGHLIGHTS

**Mark Burnes, CCIM - ALC**
Broker/Owner
+18055560900
mb.ccim@gmail.com

**BURNES**
COMMERCIAL GROUP

www.bcgcentralcoast.com

## BPO

Page 2

**Valley Farm Supply**
1124 Tama Lane | Santa Maria, CA 93455



### <u>Broker Opinion of Value</u>
### 1124 Tama Lane
### Santa Maria, Ca.

·

Compton Family Trust
**May 21, 2019**
**Broker Opinion of Value:**

**As is - Where is**
**$2,450,000.00**
**Estimated days on market: 90 – 180 days.**

**Purpose and intended use:**
The purpose of this report is to estimate the current market value of the subject property
as well as an estimate of "days on market" in the event the property was listed for sale at
the given value in the current market.

**Subject property:**
An industrial zoned 40,076 sf parcel with two buildings each at 50' wide x 100' deep x
35' high; 5000 sf each – 175,000 cubic ft each – totaling 10,000 sf and 350,000 cubic
feet. The ceiling height of 35' is higher than most other building in this class and the
additional cubic feet are of solid value.

There is ample parking and easy street to alley ingress and egress and this flat and level
site.

The site is owner occupied and a long-term family-run and successful farm supply
business is in place.

**Market conditions;** 2018 was a very strong year for industrial properties in the area, and
2019 is even stronger. Net real property investments of any kind, in this area, are a sought
after asset for investors driving cap rates to near historic lows and rents at historic highs –

# BPO

Page 3

## Valley Farm Supply
1124 Tama Lane | Santa Maria, CA 93455

e.g. prices to historic highs. There is a lot of activity in the area of 1031 Exchanges with capital coming in to this area.

**Highest & Best Use ("H&BU"):**
Construction of another 50' wide x 100' long x 35' high building would bring the value up another $1m or so while still leaving plenty of usable land and excellent ingress and egress.

**Income Approach:** Current lease rates of $10. per sf-mo  - $14.00 per sf annual base rent plus NNN. The higher number applies with taller buildings (more cubic feet) and parcels of at or near an acre and larger. The subject property meets these criteria and is very well located. A fair market lease rate of $12.50 annual and net to the owner is being assigned.

Direct Capitalization rates on these type industrial properties between 5.5% for class A properties such as the subject on up to 7% for class C. A 6% cap rate is being assigned.

$13.00 x 10,000 sf = $130,000 = 5% vacancy factor ($6,500) = $123,500 Pro Forma NOI / 5% = $2,470,000.00

**Sales Comparison:** There is only one recently closed sales comparison, and that was in 2017 - as well as one that is pending at the time of this report. The price per sf of improvements are between $130.00 per sf and $182.00 per sf. A value of $180 per sf is being assigned with consideration for the additional height provided in this taller than average building.

There is also value in the additional 20,000 sf of land on this parcel -$20 per sf is being assigned.

$180 per sf x 10,000 sf = $1,800,000 for the improvements

20,000 sf of additional land x $30 per sf = $600,000.00 for the additional land

Total sales comparison value $2,400,000.00

**Title Limitations:** No title report was furnished to Burnes Commercial Group for this report. It is assumed that there are no title defects, which *could* render the property less valuable.

**Survey:** No survey or boundary report was furnished. Site plans and construction estimates were provided and reviewed.

**Environmental Hazards:** The existence of hazardous material and/or underground contamination, which may or may not be present on the property was not observed or made known to the broker. The broker is *not an expert in environmental hazards.*

# BPO

Page 4

## Valley Farm Supply
## 1124 Tama Lane | Santa Maria, CA 93455

Comments contained should not be construed as an environmental assessment. It is advisable to obtain a Phase One environmental report if there are any concerns in these matters.

**Natural Hazards:** The broker was not furnished with a Natural Hazard Report (NHD) for this report.

**Disclaimer:** The "value" given is an opinion reached by this broker with information deemed to be reliable but not guaranteed to be accurate, and with traditional methods for assessing real estate value; income approach and/or cost approach and or sales comparison approach. Additional and/or amended information would likely result in a different opinion of "value." The actual value is only established when a willing buyer and a willing seller reach a meeting of the minds and consummate a sale wherein title transfers from seller to buyer.

Effective Date: May 22, 2019

Mark Burnes CCIM ALC
DRE #10361305
Burnes Commercial Group
P.O Box 3195 Pismo Beach, Ca. 93448
805.556.0900 – mb.ccim@gmail.com

# EXECUTIVE SUMMARY

Page 5

## Valley Farm Supply
1124 Tama Lane | Santa Maria, CA 93455

### ACQUISITION COSTS

| | |
|---|---|
| Purchase Price, Points and Closing Costs | $2,450,000 |
| Investment - Cash | $2,450,000 |

### INVESTMENT INFORMATION

| | |
|---|---|
| Purchase Price | $2,450,000 |
| Price per Tenant | $2,450,000 |
| Price per Sq. Ft. | $245.00 |

### INCOME, EXPENSES & CASH FLOW

| | |
|---|---|
| Gross Scheduled Income | $154,992 |
| Total Vacancy and Credits | ($6,500) |
| Operating Expenses | ($25,000) |
| Net Operating Income | $123,492 |
| Debt Service | $0 |
| Cash Flow Before Taxes | $123,492 |

### FINANCIAL INDICATORS

| | |
|---|---|
| Cash on Cash Return Before Taxes | 5.04% |
| Optimal Internal Rate of Return  (yr 10) | 7.19% |
| Debt Coverage Ratio | N/A |
| Capitalization Rate | 5.04% |
| Gross Income / Square Feet | $15.50 |
| Gross Expenses / Square Feet | ($2.50) |
| Operating Expense Ratio | 16.84% |

**Mark Burnes, CCIM - ALC**
Broker/Owner
+18055560900
mb.ccim@gmail.com



# LOCATION MAP

Page 6

Valley Farm Supply
1124 Tama Lane | Santa Maria, CA 93455



Mark Burnes, CCIM - ALC
Broker/Owner
+18055560900
mb.ccim@gmail.com



# AERIAL MAP

Page 7

Valley Farm Supply
1124 Tama Lane | Santa Maria, CA 93455



**Mark Burnes, CCIM - ALC**
Broker/Owner
+18055560900
mb.ccim@gmail.com



# CASH FLOW ANALYSIS

Valley Farm Supply
1124 Tama Lane | Santa Maria, CA 93455

Page 8

| Description | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 | Year 9 | Year 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| GROSS SCHEDULED INCOME | $154,992 | $158,742 | $162,583 | $166,517 | $170,548 | $174,676 | $178,905 | $183,237 | $187,674 | $192,220 |
| Turnover Vacancy | ($6,500) | ($6,662) | ($6,829) | ($7,000) | ($7,175) | ($7,354) | ($7,538) | ($7,726) | ($7,919) | ($8,117) |
| Total Operating Expenses | ($25,000) | ($25,500) | ($26,010) | ($26,530) | ($27,061) | ($27,602) | ($28,154) | ($28,717) | ($29,291) | ($29,877) |
| NET OPERATING INCOME | $123,492 | $126,580 | $129,744 | $132,988 | $136,312 | $139,720 | $143,213 | $146,794 | $150,463 | $154,225 |
| Loan Payment | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| NET CASH FLOW (b/t) | $123,492 | $126,580 | $129,744 | $132,988 | $136,312 | $139,720 | $143,213 | $146,794 | $150,463 | $154,225 |
| Cash On Cash Return b/t | 5.04% | 5.17% | 5.30% | 5.43% | 5.56% | 5.70% | 5.85% | 5.99% | 6.14% | 6.29% |

* b/t = before taxes;a/t = after taxes

Mark Burnes, CCIM - ALC
Broker/Owner
+1(805)550900
mb.ccim@gmail.com


BURNES
COMMERCIAL GROUP

CMA Prepared by Mark Burnes

## Comparable Properties

|  | 18002305 | 18000041 | 18000015 |
|---|---|---|---|
|  |  |  |  |
|  | 914 W Betteravia Road<br>Santa Maria CA | 1021 S Blosser Road<br>Santa Maria CA | 2311 Westgate Road<br>Santa Maria CA |
| List Price | $2,410,000 | $1,500,000 | $4,900,000 |
| Original List Price | $2,410,000 | $1,700,000 | $6,500,000 |
| Sold Price |  | $1,350,000 |  |
| Status | Active | Closed | Pending |
| Status Date | 08/06/2018 | 09/25/2018 | 08/17/2018 |
| Days on Market | 93 | 140 | 226 |
| Cumulative Days on Market | 93 | 775 | 226 |
|  |  |  |  |
| Total Baths | 0 | 0 | 0 |
| Approx SqFt | 24,086 | 45,302 | 30,600 |
| Lot Desc/Dimensions |  |  |  |
| Acres | 1.76 | 1.04 | 2.97 |
| Approx Yr Blt | 1980 | 1995 | 1992 |
| Zip + 4 | 93455 |  | 93455 |
| **Price** | **$2,410,000** | **$1,350,000** | **$4,900,000** |

CMA Prepared by Mark Burnes

# Price Analysis



### List, Sold and Adjusted Prices
**Closed Listings**



### Low, Average, Median, and High Sold Prices
**Closed Listings**

Mark Burnes  |  805-441-3363  |  mb.ccim@gmail.com                Page 2 of 3

CMA Prepared by Mark Burnes

## Summary of Closed Listings

| MLS # | Address | List Price | DOM | CDOM | Sold Date | Sold Price | Total Adjustments | Adjusted Price |
|-------|---------|-----------|-----|------|-----------|-----------|------------------|----------------|
| 18000041 | 1021 S Blosser Road, Santa Maria CA | $1,500,000 | 140 | 775 | 09/18/2018 | $1,350,000 | - | $1,350,000 |

## Summary of Pending Listings

| MLS # | Address | Orig. List Price | DOM | CDOM | List Price | Total Adjustments | Adjusted Price |
|-------|---------|-----------------|-----|------|-----------|------------------|----------------|
| 18000015 | 2311 Westgate Road, Santa Maria CA | $6,500,000 | 226 | 226 | $4,900,000 | - | $4,900,000 |

## Summary of Active Listings

| MLS # | Address | Orig. List Price | DOM | CDOM | List Price | Total Adjustments | Adjusted Price |
|-------|---------|-----------------|-----|------|-----------|------------------|----------------|
| 18002305 | 914 W Betteravia Road, Santa Maria CA | $2,410,000 | 93 | 93 | $2,410,000 | - | $2,410,000 |

## Low, Average, Median, and High Comparisons

| | Closed | Pending | Active | Overall |
|---|--------|---------|--------|---------|
| Low | $1,350,000 | $4,900,000 | $2,410,000 | $1,350,000 |
| Average | $1,350,000 | $4,900,000 | $2,410,000 | $2,886,667 |
| Median | $1,350,000 | $4,900,000 | $2,410,000 | $2,410,000 |
| High | $1,350,000 | $4,900,000 | $2,410,000 | $4,900,000 |

## Overall Market Analysis (Unadjusted)

| Status | # | List Vol. | Avg. List Price | Sold Vol. | Avg. Sold Price | Avg. Sale/List Price | Avg. Approx SqFt | Avg. List $/Approx SqFt | Avg. Sold $/Approx SqFt | Avg. Dom | Avg. CDOM |
|--------|---|-----------|-----------------|-----------|-----------------|---------------------|------------------|------------------------|------------------------|----------|-----------|
| Closed | 1 | 1,500,000 | 1,500,000 | 1,350,000 | 1,350,000 | 0.90 | 45,302 | 33.11 | 29.80 | 140 | 775 |
| Pending | 1 | 4,900,000 | 4,900,000 | 0 | 0 | 0.00 | 30,600 | 160.13 | 0.00 | 226 | 226 |
| Active | 1 | 2,410,000 | 2,410,000 | 0 | 0 | 0.00 | 24,086 | 100.06 | 0.00 | 93 | 93 |
| Overall | 3 | 8,810,000 | 2,936,667 | 1,350,000 | 1,350,000 | 0.90 | 33,329 | 97.77 | 29.80 | 153 | 365 |

CMA Prepared by Mark Burnes

## Comparable Properties

| | 1702480 | 18000284 | 18002310 |
|---|---|---|---|
| |  |  |  |
| | **2325 Skyway Drive**<br>**Santa Maria CA** | **1300 E Cypress H Street**<br>**Santa Maria CA** | **1267 Furukawa Way NA Way**<br>**Santa Maria CA** |
| List Price | $1.15 | $5,250 | $0.65 |
| Original List Price | $1.15 | $5,250 | $0.65 |
| Sold Price | | | |
| Status | Active | Active | Active |
| Status Date | 12/26/2017 | 10/04/2018 | 08/06/2018 |
| Days on Market | 335 | 279 | 205 |
| Cumulative Days on Market | 316 | 280 | 93 |
| | | | |
| Total Baths | 0 | 0 | 0 |
| Approx SqFt | 22,913 | 2,614 | 25,562 |
| Lot Desc/Dimensions | | | |
| Acres | 1.26 | 0.06 | 4.86 |
| Approx Yr Blt | 1980 | 1982 | 2018 |
| Zip + 4 | | | |
| **Price** | **$1** | **$5,250** | **$1** |

CMA Prepared by Mark Burnes

**18002309**



**3042 Industrial Parkway**
**Santa Maria CA**

| | | | |
|---|---|---|---|
| List Price | $0.65 | | |
| Original List Price | $0.65 | | |
| Sold Price | | | |
| Status | Active | | |
| Status Date | 08/06/2018 | | |
| Days on Market | 93 | | |
| Cumulative Days on Market | 93 | | |
| | | | |
| Total Baths | 0 | | |
| Approx SqFt | 20,162 | | |
| Lot Desc/Dimensions | | | |
| Acres | 5.8 | | |
| Approx Yr Blt | 1990 | | |
| Zip + 4 | | | |
| Price | $1 | | |

Mark Burnes  |  805-441-3363  |  mb.ccim@gmail.com



CMA Prepared by Mark Burnes

## Price Analysis



CMA Prepared by Mark Burnes

## Summary of Active Listings

| MLS # | Address | Orig. List Price | DOM | CDOM | List Price | Total Adjustments | Adjusted Price |
|-------|---------|------------------|-----|------|------------|-------------------|----------------|
| 18002310 | 1267 Furukawa Way Way NA, Santa Maria CA | $0.65 | 205 | 93 | $0.65 | - | $0.65 |
| 18002309 | 3042 Industrial Parkway, Santa Maria CA | $0.65 | 93 | 93 | $0.65 | - | $0.65 |
| 1702480 | 2325 Skyway Drive, Santa Maria CA | $1.15 | 335 | 316 | $1.15 | - | $1.15 |
| 18000284 | 1300 E Cypress Street H, Santa Maria CA | $5,250 | 279 | 280 | $5,250 | - | $5,250 |

## Low, Average, Median, and High Comparisons

| | Active | Overall |
|---|--------|---------|
| Low | $0.65 | $0.65 |
| Average | $1,313 | $1,313 |
| Median | $ | $ |
| High | $5,250 | $5,250 |

## Overall Market Analysis (Unadjusted)

| Status | # | List Vol. | Avg. List Price | Sold Vol. | Avg. Sold Price | Avg. Sale/List Price | Avg. Approx SqFt | Avg. List $/Approx SqFt | Avg. Sold $/Approx SqFt | Avg. Dom | Avg. CDOM |
|--------|---|-----------|-----------------|-----------|-----------------|----------------------|------------------|-------------------------|-------------------------|----------|-----------|
| Active | 4 | 5,253 | 1,313 | 0 | 0 | 0.00 | 17,813 | 0.50 | 0.00 | 228 | 196 |
| Overall | 4 | 5,253 | 1,313 | 0 | 0 | 0.00 | 17,813 | 0.50 | 0.00 | 228 | 196 |



**Property Details**

**Compton Family Trust (4/17/06)**
**1124 Tama Ln, Santa Maria, CA 93455**

APN: 111-440-031
Santa Barbara County

## Owner Information

Primary Owner: **COMPTON FAMILY TRUST (4/17/06)**

Secondary Owner:

Mail Address: **850 RIATA LN NIPOMO CA 93444**

Site Address: **1124 TAMA LN SANTA MARIA CA 93455**

Assessor Parcel Number: **111-440-031**

Census Tract: **0020.11**

Housing Tract Number:

Lot Number: **1**

Legal description: **Lot: 1  Abbreviated Description: LOT:1 SUBD:HAYES**

## Sale Information

Sale Date: **10/03/2007**

Document #: **2007-0070571**

Sale Amount: **N/A**

Seller: **DEMCHAK JR, ROGER; DEMCHAK, STEPHANIE**

Sale Type:

Cost/SF:

## Assessment & Tax Information

Assessed Value: **$1,962,486**

Land Value: **$369,406**

Imp. Value: **$1,593,080**

Homeowner Exemption:

% Improvement: **81.18%**

Tax Amount: **$22,403.40**

Tax Status: **Current**

Tax Year: **2018**

Tax Rate Area: **3-011**

Tax Account ID:

## Property Characteristics

Bedrooms:

Year Built:

Pool:

Bathrooms:

Square Feet:

Lot Size: **40,075 SF**

Partial Baths:

Number of Units: **0**

No of Stories:

Total Rooms:

Garage:

Fire Place:

Property Type: **Industrial**

Building Style:

Owner Exclusions:

Use Code: **Warehouse (Industrial)**

Zoning:



## Transaction History

**Compton Family Trust (4/17/06)**
**1124 Tama Ln, Santa Maria, CA 93455**

APN: 111-440-031
Santa Barbara County

### Mortgage Release

| | |
|---|---|
| Recording Date: **12/27/2007** | Document #: **2007-0087482 BK-PG -** |
| Loan Amount: **$680,000** | Document Type: **Substitution Of Trustee And Full Reconveyance** |
| Original Lender: **COMMUNITY BANK OF SANTA MARIA** | Origination Doc #: **2007-0070573 BK-PG -** |
| Borrowers Name: **COMPTON PETER&LYNN** | |
| Origination Recording Date: **10/03/2007** | Effective Date: |
| Current Lender: **COMMUNITY BANK OF SANTA MARIA , AS TRUSTEE** | |

### Mortgage Assignment

| | |
|---|---|
| Recording Date: **10/22/2007** | Document #: **2007-0074220 BK-PG -** |
| Loan Amount: **N/A** | Document Type: **Assignment Of Mortgage** |
| Original Lender: **NOT PROVIDED** | Origination Doc #: **2007-0074096 BK-PG -** |
| Borrowers Name: **COMPTON FAM TR** | |
| Origination Recording Date: **10/18/2007** | Effective Date: |
| Assignor Name: **COAST HILLS FEDERAL CREDIT UNION** | Assignee Name: **INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNS** |

### Mortgage Assignment

| | |
|---|---|
| Recording Date: **10/22/2007** | Document #: **2007-0074219 BK-PG -** |
| Loan Amount: **N/A** | Document Type: **Assignment Of Mortgage** |
| Original Lender: **NOT PROVIDED** | Origination Doc #: **2007-0074096 BK-PG -** |
| Borrowers Name: **COMPTON FAM TR** | |
| Origination Recording Date: **10/18/2007** | Effective Date: |
| Assignor Name: **COAST HILLS FEDERAL CREDIT UNION** | Assignee Name: **INDYMAC BANK, F.S.B. ITS SUCCESSOR AND/OR ASSIGNS** |

### Mortgage Assignment

| | |
|---|---|
| Recording Date: **10/19/2007** | Document #: **2007-0074097 BK-PG -** |
| Loan Amount: **N/A** | Document Type: **Assignment Of Mortgage** |
| Original Lender: **NOT PROVIDED** | Origination Doc #: **2007-0074096 BK-PG -** |
| Borrowers Name: **COMPTON FAM TR** | |
| Origination Recording Date: **10/18/2007** | Effective Date: |
| Assignor Name: **COASTAL BUSINESS FINANCE** | Assignee Name: **UNITED STATES SMALL BUSINESS ADMINISTRATION** |

### Mortgage Record

Recording Date: **10/19/2007**  Document #: **2007-0074096 BK-PG -**
Loan Amount: **$700,000**  Loan Type: **Commercial Loan**
TD Due Date:  Type of Financing:
Interest Rate:
Lender Name: **COASTAL BUSINESS FINANCE**
Lender Type: **Not Known**
Borrowers Name: **COMPTON SR, PETER JAMES; SMALLMAN COMPTON, LYNN**
Vesting: **Family Trust**

## Mortgage Record

Recording Date: **10/03/2007**  Document #: **2007-0070573 BK-PG -**
Loan Amount: **$680,000**  Loan Type: **Commercial Loan**
TD Due Date:  Type of Financing:
Interest Rate:
Lender Name: **COMMUNITY BANK OF SANTA MARIA**
Lender Type: **Not Known**
Borrowers Name: **COMPTON SR, PETER JAMES; SMALLMAN COMPTON, LYNN**
Vesting: **Family Trust**

## Mortgage Record

Recording Date: **10/03/2007**  Document #: **2007-0070572 BK-PG -**
Loan Amount: **$850,000**  Loan Type: **Commercial Loan**
TD Due Date:  Type of Financing:
Interest Rate:
Lender Name: **COMMUNITY BANK OF SANTA MARIA**
Lender Type: **Not Known**
Borrowers Name: **COMPTON SR, PETER JAMES; SMALLMAN COMPTON, LYNN**
Vesting: **Family Trust**

## Prior Transfer

Recording Date: **10/03/2007**  Document #: **2007-0070571 BK-PG -**
Price: **N/A**  Document Type: **Grant Deed**
First TD: **$850,000**  Type of Sale: **Price Not Disclosed**
Mortgage Doc #: **2007-0070572**  Interest Rate:
Lender Name: **COMMUNITY BANK OF SANTA MARIA**
Buyer Name: **COMPTON SR, PETER JAMES; SMALLMAN COMPTON, LYNN**
Buyer Vesting: **Family Trust**
Seller Name: **DEMCHAK JR, ROGER; DEMCHAK, STEPHANIE; DEMCHAK FAMILY TRUST**
Legal description: **Lot: 14 Tract No: 5268 Map Ref: MB120 PG27-29**
City/Muni/Twp: **SANTA MARIA**

## Prior Transfer

Recording Date: **06/13/2006**  Document #: **2006-0047065 BK-PG -**
Price: **N/A**  Document Type: **Intra-family Transfer Or
Dissolution**
  Type of Sale: **Non-Arms Length Transfer**
First TD: **N/A**  Interest Rate:
Mortgage Doc #:

Lender Name:
Buyer Name: **DEMCHAK JR, ROGER; DEMCHAK, STEPHANIE**
Buyer Vesting: **Family Trust**
Seller Name: **DEMCHAK JR, ROGER; DEMCHAK, STEPHANIE**
Legal description: **Lot: 14 Tract No: 5268 Map Ref: MB120 PG27-29**
City/Muni/Twp: **SANTA MARIA**



## Assessor Map

Click here to get the map in PDF
Click here to get the map in TIF

Case 9:20-bk-11123-DS Claim 2-2 Part 7 Filed 03/19/21 Desc Exhibit Exhibit F
Page 21 of 21



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SUBORDINATION AGREEMENT WITH SIMPLOT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JERRY NAMBA IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 16, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **November 16, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 16, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE'S COPIES:** Judge Saltzman does not follow the Judge's Copy requirements of Amended General Order 20-12. Until further notice, no judge's copy of any document is required unless a copy is requested by chambers.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 16, 2021 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **ATTORNEY FOR CREDITOR J.R. SIMPLOT COMPANY:** Hagop T Bedoyan
  hagop.bedoyan@mccormickbarstow.com, terry.douty@mccormickbarstow.com
- **INTERESTED PARTY COURTESY NEF:** Shraddha Bharatia notices@becket-lee.com
- **ATTORNEY FOR CREDITOR LYNN COMPTON:** Richard W Brunette rbrunette@sheppardmullin.com,
  vlamonica@sheppardmullin.com
- **INTERESTED PARTY:** Claudia Coleman    ccoleman@marshackhays.com, ccoleman@ecf.courtdrive.com
- **ATTORNEY FOR THE U.S. TRUSTEE:** Brian D Fittipaldi brian.fittipaldi@usdoj.gov
- **ATTORNEY FOR TRUSTEE:** D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;
  kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR TRUSTEE:** Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;
  kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR COMMUNITY BANK OF SANTA MARIA:** Sandra McBeth
  donna@mcbethlegal.com
- **TRUSTEE JERRY NAMBA (TR):** Jerry Namba (TR) jnambaepiq@earthlink.net, jnamba@iq7technology.com;
  jn01@trustesolutions.net
- **ATTORNEY FOR DEBTOR PETER JAMES COMPTON:** Reed H Olmstead reed@olmstead.law,
  olmstead.ecf@gmail.com; r41602@notify.bestcase.com
- **ATTORNEY FOR CREDITOR NUTRIEN AG:** Steven R Stoker sstoker@pascuzzi.net, kphaphon@pascuzzi.net
- **U.S. TRUSTEE:** United States Trustee (ND) ustpregion16.nd.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR BANK OF AMERICA, N.A.:** Robert P Zahradka caecf@tblaw.com

2. **SERVED BY UNITED STATES MAIL**:  CONTINUED:

**DEBTOR**
PETER JAMES COMPTON
P.O. BOX 299
NIPOMO, CA 93444-0299

**SECURED CREDITOR / POC ADDRESS**
COMMUNITY BANK OF SANTA MARIA
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
2739 SANTA MARIA WAY
PO BOX 5307
SANTA MARIA, CA 93456-5307

**SECURED CREDITOR / POC ADDRESS**
COMMUNITY BANK OF SANTA MARIA
SANDRA K MCBETH, APLC
7343 EL CAMINO REAL, #185
ATASCADERO, CA 93422

**SECURED CREDITOR / POC ADDRESS**
SIMPLOT AB RETAIL
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
PO BOX 9296
BOISE, ID 83707-3296

**SECURED CREDITOR / POC ADDRESS**
SIMPLOT AB RETAIL
HAGOP BEDOYAN / MCCORMICK
BARSTOW LLP
7647 N FRESNO ST
FRESNO, CA 96720

**SECURED CREDITOR**
SMALL BUSINESS
ADMINISTRATION
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
10737 GATEWAY WEST #300
EL PASO, TX 79935-4910

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR**
WELLS FARGO BANK
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
PO BOX 10335
DES MOINES, IA 50306-0335

**RTD 11/19/20 UTF
CREDITOR**
VALLEY FARM SUPPLY, INC.
~~ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
1124 TAMA LN
NIPOMO, CA 93444~~

**NEW ADDR 10/26/21 CA SOS
CREDITOR**
VALLEY FARM SUPPLY, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1124 TAMA LANE
SANTA MARIA, CA 93455

**INTERESTED PARTY**
JEREMY W. FAITH (TR)
TRUSTEE OF THE BANKRUPTCY
ESTATE OF VALLEY FARM
SUPPLY, INC.
16030 VENTURA BLVD, SUITE 470
ENCINO, CA 91436

**U.S. TRUSTEE**
UNITED STATES TRUSTEE (ND)
915 WILSHIRE BLVD, SUITE 1850
LOS ANGELES, CA 90017-3560

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**